UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| UA LOCAL 13 PENSION FUND, UA LOCAL 13 & EMPLOYERS GROUP INSURANCE FUND, PLUMBERS & STEAMFITTERS LOCAL 267 PENSION FUND, and PLUMBERS & STEAMFITTERS LOCAL NO. 7 PENSION AND WELFARE FUNDS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br>          v.<br><br>SEALED AIR CORPORATION and WILLIAM G. STIEHL,<br><br>                    Defendants. | Case No. 1:19-cv-10161-LLS<br><br><br>HON. LOUIS L. STANTON |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT SEALED AIR CORPORATION'S MOTION TO DISMISS</u>**

HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, New York  10017
(646) 837-5120
*Attorneys for Defendant Sealed Air*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 3

    A.    Parties and Procedural Background .......................................................... 3

    B.    The Alleged Misstatements ......................................................................... 3

        1.    Statements About EY's Retention ............................................... 3

        2.    Statements About Corporate Policies ........................................ 4

    C.    "Corrective" Disclosures .......................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.    Plaintiffs Do Not Allege Falsity With Particularity .............................................. 6

    A.    Statements About EY's Retention Are Not Actionable .......................................... 7

    B.    Statements About Sealed Air's
        Corporate Procedures Are Not Actionable ............................................ 11

    C.    Plaintiffs' Item 303, 503, And 307 Allegations Also Fail ................................... 13

II.    Plaintiffs Do Not Adequately Plead Scienter ....................................................... 16

    A.    Plaintiffs Entirely Fail To Allege Scienter
        As To The November 2014 And April 2015 Statements
        About The EY-Retention Process .............................................................. 16

    B.    Plaintiffs Also Fail To Allege Scienter
        As To The Statements For Which Stiehl Could Bear Responsibility ................... 17

        1.    Plaintiffs Do Not Meet The Motive-And-Opportunity Test .................... 17

        2.    Plaintiffs Do Not Meet The Circumstantial-Evidence Test ..................... 20

III.    Plaintiffs Have Not Adequately Alleged Materiality ........................................... 23

CONCLUSION ................................................................................................................... 26

i

# TABLE OF AUTHORITIES

**Cases**

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ........................................................................................ 19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ...............................................................................*passim*

*Avon Pension Fund v. GlaxoSmithKline PLC*,
   343 F. App'x 671 (2d Cir. 2009) .............................................................................. 19

*Beck v. Mfrs Hanover Tr. Co.*,
   820 F.2d 46 (2d Cir. 1987) ........................................................................................ 20

*C.D.T.S. No. 1 v. UBS AG*,
   2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013) ..................................................... 12, 21, 22

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
   388 F. Supp. 2d 932 (S.D. Ind. 2005) ........................................................................ 10

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) ...................................................................................... 14

*City of Roseville Employees' Retirement System v. EnergySolutions, Inc.*,
   814 F. Supp. 2d 395 (S.D.N.Y. 2011) ...................................................................... 17

*City of Warren Police & Fire Retirement System v. Foot Locker, Inc.*,
   412 F. Supp. 3d 206 (E.D.N.Y. 2019) ........................................................................ 19

*City of Warwick Municipal Employees Pension Fund et al. v. Rackspace Hosting, Inc.*,
   2019 WL 452051 (S.D.N.Y. 2019) ............................................................................ 15

*Cohen v. Stevanovich*,
   722 F. Supp. 2d 416 (S.D.N.Y. 2010) ...................................................................... 21

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018) ...................................................................... 12

*Decker v. Massey-Ferguson*,
   681 F.2d 111 (2d Cir. 1982) ...................................................................................... 22

*Diehl v. Omega Protein Corp.*,
   339 F. Supp. 3d 153 (S.D.N.Y. 2018) ...................................................................... 15

*ECA v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .............................................................................. 16, 18

ii

*Ernst & Ernst v. Hochfelder*,
　425 U.S. 185 (1976)..................................................................................................... 16

*Gagnon v. Alkermes PLC*,
　368 F. Supp. 3d 750 (S.D.N.Y. 2019) ...................................................................... 18

*Gamm v. Sanderson Farms, Inc.*,
　944 F.3d 455 (2d Cir. 2019) ............................................................................ 8, 9, 11

*Ganino v. Citizens Utilities Co.*,
　228 F.3d 154 (2d Cir. 2000) ................................................................................ 16, 23

*Godinez v. Alere Inc.*,
　272 F. Supp. 3d 201 (D. Mass 2017) ....................................................................... 23

*Greenhouse v. MCG Capital Corp.*,
　392 F.3d 650 (4th Cir. 2004) ................................................................................... 24

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entmt. Holdings, Inc.*,
　422 F. Supp. 3d 821 (S.D.N.Y. 2019) ..................................................................... 15

*Holbrook v. Trivago N.V.*,
　2019 WL 948809 (S.D.N.Y. Feb. 26, 2019).............................................................. 22

*Hutchison v. Deutsche Bank Sec. Inc.*,
　647 F.3d 479 (2d Cir. 2011) .............................................................................. 14, 15

*In re Alliance Pharm. Corp. Sec. Litig.*,
　279 F. Supp. 2d 171 (S.D.N.Y. 2003) ..................................................................... 24

*In re AT&T/DirecTV Now Sec. Litig.*,
　2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020)........................................................... 14

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
　456 F. Supp. 2d 576 (S.D.N.Y. 2006) ....................................................................... 8

*In re Banco Bradesco S.A. Sec. Litig.*,
　277 F. Supp. 3d 600 (S.D.N.Y. 2017) ..................................................................... 12

*In re Bausch & Lomb, Inc. Sec. Litig.*,
　592 F. Supp. 2d 323 (W.D.N.Y. 2008)...................................................................... 18

*In re Bristol-Myers Squibb Sec. Litig.*,
　312 F. Supp. 2d 549 (S.D.N.Y. 2004) ..................................................................... 19

*In re eSpeed, Inc. Sec. Litig.*,
　457 F. Supp. 2d 266 (S.D.N.Y. 2006) ..................................................................... 19

iii

*In re FBR Inc. Sec. Litig.*,
  544 F. Supp. 2d 346 (S.D.N.Y. 2008) ...................................................................... 8

*In re Hutchinson Tech., Inc. Sec. Litig.*,
  536 F.3d 952 (8th Cir. 2008) ......................................................................... 23, 25

*In re IBM Sec. Litig.*,
  163 F.3d 102 (2d Cir. 1998) ................................................................................ 7

*In re Interpool, Inc. Sec. Litig.*,
  2005 WL 2000237 (D.N.J. Aug. 17, 2005) ............................................................. 21

*In re JP Morgan Chase Securities Litigation*,
  363 F. Supp. 2d 595, 632 (S.D.N.Y. 2005) ................................................... 9, 21, 22

*In re Landry's Seafood Rest., Inc.*,
  2001 WL 34115784 (S.D. Tex. Feb. 20, 2001) ...................................................... 21

*In re Mylan N.V. Sec. Litig.*,
  2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018) ........................................................ 20

*In re Newell Brands, Inc. Sec. Litig.*,
  2019 WL 6715055 (D.N.J. Dec. 10, 2019) ............................................................ 15

*In re Philips Servs. Corp. Sec. Litig.*,
  383 F. Supp. 2d 463 (S.D.N.Y. 2004) ................................................................... 17

*In re Proshares Tr. II Sec. Litig.*,
  2020 WL 71007 (S.D.N.Y. Jan. 3, 2020) ............................................................... 15

*In re Tempur Sealy Int'l, Inc. Sec. Litig.*,
  2019 WL 1368787 (S.D.N.Y. Mar. 26, 2019) .................................................... 13, 15

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011) ............................................................... 19, 20

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2019) ................................................................................. 14

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020) ..................................................................... 16, 17, 23

*Janbay v. Can. Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................................................ 12

*Janus Capital Group v. First Derivative Traders*,
  564 U.S. 135 (2011) ......................................................................................... 17

*Jeanette Coquette Co., Inc. v. Hartford Fire Ins. Co.*,
  1995 WL 363864 (S.D.N.Y. 1995)....................................................................... 7

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ............................................................................ 20

*Konkol v. Diebold, Inc.*,
  590 F.3d 390 (6th Cir. 2009) .......................................................................... 23

*Lopez v. Ctpartners Exec. Search Inc.*,
  173 F. Supp. 3d 12 (S.D.N.Y. 2016) ................................................................ 14

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)........................................................................................ 23

*Menaldi v. Och-Ziff Capital Management Group, LLC*,
  164 F. Supp. 3d 568 (S.D.N.Y. 2016) .............................................................. 10

*Micholle v. Ophthotech Corp.*,
  2019 WL 4464802 (S.D.N.Y. Sept. 17, 2019)................................................... 19

*Nguyen v. New Link Genetics Corp.*,
  297 F. Supp. 3d 472 (S.D.N.Y. 2018) .............................................................. 18

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ..................................................................*passim*

*Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*,
  595 F.3d 86 (2d Cir. 2010) ............................................................................ 23

*PetEdge, Inc. v. Garg*,
  234 F. Supp. 3d 477 (S.D.N.Y. 2017) .............................................................. 21

*Sanchez v. ASA Coll., Inc.*,
  2015 WL 3540836 (S.D.N.Y. June 5, 2015) ..................................................... 22

*Schiro v. Cemex, S.A.B. de C.V.*,
  438 F. Supp. 3d 194 (S.D.N.Y. 2020) ..................................................... 8, 9, 10

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996)........................................................................... 18

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) ..................................................................... 17, 22

*Singh v. Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019) ....................................................................... 11, 23

*Smith ex rel. Zion Oil & Gas, Inc. v. Carrillo*,
    2019 WL 6328033 (D. Del. Nov. 26, 2019) ................................................................ 7

*Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ..................................................................................................... 6

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) ................................................................................... 13, 14

*Tabak v. Canadian Solar, Inc.*,
    549 F. App'x 24 (2d Cir. 2013) ................................................................................... 9

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008) ...................................................................................... 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................................... 1, 16, 23

*Tung v. Bristol-Myers Squibb Co.*,
    412 F. Supp. 3d 453 (S.D.N.Y. 2019) ....................................................................... 19

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    2015 WL 1311073 (S.D.N.Y. Mar. 23, 2015) ........................................................... 25

*Wollgar v. Kingstone Cos., Inc.*,
    2020 WL 4586792 (S.D.N.Y. Aug. 10, 2020) ........................................................... 16

*Y-GAR Capital LLC v. Credit Suisse Grp. AG*,
    2020 WL 71163 (S.D.N.Y. Jan. 2, 2020) ................................................................. 13

**Rules**

15 U.S.C. § 78u–4(b) ............................................................................................... 6, 10

17 C.F.R. § 229.303 ..................................................................................................... 14

17 C.F.R. § 229.307 ..................................................................................................... 15

17 C.F.R. § 229.503 ..................................................................................................... 14

## PRELIMINARY STATEMENT

It is black-letter law that, to state a securities-fraud claim under Section 10(b) and Rule 10b-5, a plaintiff must plead falsity and scienter with *particularity*—that is, it must (1) detail what statements were false and explain why, and (2) plead specific facts leading to a "strong inference" of scienter. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). These "[e]xacting pleading requirements are among the control measures Congress included in the PSLRA." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Congress imposed these thresholds "to deter strike suits wherein opportunistic private plaintiffs file securities fraud claims of dubious merit in order to exact large settlement recoveries." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000). These pleading thresholds *must* be met pre-discovery.

Plaintiffs' complaint runs into the applicable pleading requirements like a brick wall. Plaintiffs filed their case after Sealed Air disclosed that the SEC and DOJ were investigating various matters and after the company fired its CFO, William Stiehl. Plaintiffs point out that one of the issues investigated by federal authorities was the process by which Sealed Air selected its auditors, Ernst & Young ("EY"). Based on the fact that federal authorities are investigating the EY retention process and on the CFO's eventual termination, and *nothing else*, Plaintiffs level the conclusory allegation that Sealed Air's former CFO engaged in illegal conduct during EY's retention process (which they vaguely describe as "illegal bid-rigging") to ensure EY would be hired. Because Sealed Air did not publicly disclose that purportedly illegal conduct (never mind the absence of any logical connection between that purported omission and Sealed Air's public financial reports), Plaintiffs accuse the company of *securities fraud*.

But Plaintiffs' complaint does not state a securities-fraud case. To begin, the Second Circuit has expressly held that when a securities-fraud plaintiff seeks to hold a company liable for failing to disclose illegal conduct, it is not enough to slap labels of illegality on high-level

1

descriptions of undisclosed acts.  Instead, the Second Circuit has instructed, the PSLRA's specificity requirements mean the plaintiff must allege the particulars of the conduct itself—the who, what, where, when, how, and why of the wrongdoing—and also explain why the omission rendered some other statement false or was required to be disclosed.  Plaintiffs flunk this test.

If that was not enough to justify dismissal (and it is), Plaintiffs' complaint also does not allege with particularity facts leading to a "strong inference" that the company made any false statement with scienter—the intent to *mislead investors*.  Indeed, all Plaintiffs can point to is the fact that two federal investigations were initiated—one of which has now concluded without the government taking any form of enforcement action—and the firing of a senior executive.  That is patently deficient under the PSLRA.  Thus, the executive whose purported misconduct was not disclosed never said anything to investors about EY's retention.  And there is no plausible allegation that he or anyone else stood to gain by reason of the alleged disclosure failures, and no logical connection between the alleged wrongdoing and the company's securities price.  Meanwhile, it obviously does not follow from the fact that a senior executive was terminated "for cause" that the executive or the company intentionally *misled investors*.

Beyond that, Plaintiffs' liability theory fails because the company's purported omissions are obviously immaterial.  Again, Plaintiffs' theory is that the company committed securities fraud by failing to disclose that the *process* by which it retained EY was supposedly tainted.  But Plaintiffs do not allege that this purported process failure affected EY's work or the company's financial reports in any way.  EY, one of the Big Four, is internationally recognized.  Plaintiffs do not allege that EY failed to perform its work with objectivity.  The company's results have not been restated.  And they are not alleged to be in need of restatement.  As a result, there is no legitimate basis to conclude that reasonable investors cared about how the firm was hired.

2

## BACKGROUND[1]

### A.    Parties and Procedural Background

Sealed Air is a packaging company, based in Charlotte, North Carolina, that makes products including Bubble Wrap® and Cryovac®.  Compl. ¶ 2.  During the period relevant to this suit, William Stiehl was Sealed Air's Chief Accounting Officer and Controller (until October 31, 2017), Acting CFO (October 31, 2017 – June 6, 2018), and CFO (June 7, 2018 – June 19, 2019).  Compl. ¶ 24.  Stiehl was fired for cause on June 19, 2019.  Compl. ¶ 93.

Plaintiffs, purported shareholders of Sealed Air, seek to bring a class action on behalf of persons who bought stock between November 17, 2014 and June 20, 2019.  Compl. ¶¶ 1, 19-22.

Although Plaintiffs' complaint spans fifty pages, their theories of liability depend on a single incident.  Plaintiffs allege that, at the end of 2014, after a dispute arose between Sealed Air and the IRS regarding the tax treatment of a settlement payment resolving earlier asbestos litigation, Sealed Air replaced its auditors, KPMG, with Ernst & Young.[2]  Compl. ¶¶ 42-44.  Plaintiffs contend that the EY retention process was tainted, and that Sealed Air committed securities fraud by failing to disclose the details of this supposed taint in its SEC filings.

### B.    The Alleged Misstatements

Plaintiffs' complaint centers on two categories of public statements made by Sealed Air: (1) statements describing EY's retention, and (2) generic statements about Sealed Air's policies.

#### 1.    Statements About EY's Retention

Although Sealed Air's relationship with EY is at the heart of this case, Plaintiffs do not allege or even suggest that Sealed Air made false statements about its financial results; that the

---

[1] For purposes of this motion only, the allegations in the complaint are assumed to be true.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[2] The process by which Sealed Air entered into the Settlement Agreement, and the dispute over the tax treatment for the payment, is detailed in paragraphs 32-44.

company's financial results have been restated or are in need of restatement; or that EY failed to adequately and objectively perform its auditing work.  Instead, as noted, the complaint alleges that Sealed Air's SEC filings incorrectly described the **process** that led to EY's retention.

Plaintiffs thus attack a company claim that EY was hired "following a competitive search process" that "involved several international registered public accounting firms."  Compl. ¶ 44. Plaintiffs contend this is actionable because, according to them, EY was retained through "an illegally manipulated process through which bids were rigged by Stiehl and EY"—the conduct Plaintiffs describe as "bid rigging."  *Id.* ¶¶ 45(a)-(b).  Notably, however, Plaintiffs neither identify a law that was violated nor allege that, in the end, EY did not submit the best (and most "competitive") bid; Plaintiffs also do not say it was unreasonable for Sealed Air to retain EY.[3] Moreover, the complaint does not allege Stiehl had anything to do with making this claim.

### 2.    Statements About Corporate Policies

With the balance of their complaint, Plaintiffs attempt to transmogrify the same theory (namely, that Sealed Air committed securities fraud by failing to note that EY's retention involved so-called "bid rigging") into a second basis for relief by focusing on generic statements about the company's ethics and compliance programs.  Plaintiffs point out that, in various filings, Sealed Air described its ethics and compliance policies as generally effective.  For example, in its 2014 Form 10-K, Sealed Air stated (a) it had "disclosure controls and procedures . . . that are designed to ensure that information required to be disclosed . . . is reported"; (b) these policies "were effective at the 'reasonable assurance' level," Compl. ¶ 47, and (c) it "has a reputation for conducting its business on a highly ethical level," *id.* ¶ 49.  Plaintiffs

---

[3] Plaintiffs' allegations regarding the repetition of this statement are at paragraphs 43-44 (2014 Form 8-K); 52 (2015 Proxy Statement); 75-76 (Q3 2017 Form 10-Q); 78, 81 (2017 Form 10-K); 83, 84 (2018 Q1 Form 10-Q); and 87, 88 (2018 Q2 Form 10-Q).

4

contend these generic statements were false (and actionable under the securities laws) because the policies failed to catch the alleged "bid rigging" surrounding EY's hiring. *Id.* ¶ 51.[4]

### C. "Corrective" Disclosures

Plaintiffs allege that Sealed Air's supposedly false statements caused its stock price to remain artificially elevated until, on August 6, 2018, the company filed an SEC Form 10-Q disclosing, along with its quarterly results, that it had "received from . . . the SEC a subpoena for documents . . . including requests concerning the Company's accounting for income taxes, its financial reporting and disclosures and other matters." *Id.* ¶ 89. Following that quarterly report—which did *not* mention the EY retention—Sealed Air's stock declined 5%. Compl. ¶ 90.

Then, on June 20, 2019—the last day of the class period—Sealed Air filed a Form 8-K announcing it had terminated Stiehl "for cause" following an internal investigation. Compl. ¶ 93. The company also disclosed that the SEC was continuing its investigation on several subjects, and that the SEC had now extended its investigation to include the process of EY's retention. After that disclosure, Sealed Air's stock price again fell 5%. Compl. ¶ 94.

Finally, after the end of the class period, the company disclosed that the U.S. Attorney's Office for the Western District of North Carolina had issued a subpoena to the company regarding Stiehl's firing and EY's hiring, and that EY had ceased to be Sealed Air's accounting firm. *Id.* ¶¶ 95-96. More recently, after the complaint was filed, the company disclosed publicly that this U.S. Attorney's Office "completed its investigation" and "will not be taking any action" regarding the matter. *See* Ex. A (excerpt of Sealed Air Q2 2020 Form 10-Q).[5] According to a

---

[4] Plaintiffs' allegations regarding the repetition of these statements are at paragraphs 46-48 (2014 Form 10-K); 49-50 (Code of Conduct and Code of Ethics); 52-53 (2015 Proxy Statement); 55-57 (2015 Forms 10-Q); 59-61 (2015 Form 10-K); 63-65 (2016 Forms 10-Q); 67-69 (2016 Form 10-K); 71-72 (Q1 and Q2 2017 Forms 10-Q); 75-76 (Q3 2017 Form 10-Q); 78-80 (2017 Form 10-K); 83-84 (Q1 2018 Form 10-Q); and 87-88 (Q2 2018 Form 10-Q).

[5] All exhibits cited in this brief refer to the exhibits to the Declaration of Vincent Levy, filed herewith.

spokesperson for that office, "the U.S. Attorney's Office does not anticipate further action and the matter is closed." Ex. B (Charlotte Business Journal Article, dated 8/6/2020).

**ARGUMENT**

To state a Section 10(b) claim, a plaintiff must allege the defendant (1) made a material misrepresentation of fact (or failed to make a required disclosure), (2) with scienter, (3) in connection with the purchase or sale of a security, (4) upon which the plaintiff justifiably relied, and (5) that caused the plaintiff's damages. *Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Moreover, under Rule 9(b) and the PSLRA, the plaintiff must allege falsity and scienter with particularity. *ATSI Comm'cns v. Shaar Fund*, 493 F.3d 87, 99 (2d Cir. 2007); 15 U.S.C. § 78u–4(b)(1). This means the plaintiff must identify "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed"; the plaintiff must also state "facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(1)-(2). As to the remaining elements, the plaintiff must satisfy Rule 12's plausibility standard. *ATSI*, 493 F.3d at 98. Here, the complaint should be dismissed because it fails to plead falsity and scienter with particularity, and it also fails to plausibly plead materiality.

**I.     Plaintiffs Do Not Allege Falsity With Particularity**

To plead the first element of a Section 10(b) claim—falsity—"[a] securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 99. The particularity requirement "serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." *Id.*

6

In light of the demanding standard for pleading falsity, it is important to focus on what this case is about.  Although Plaintiffs spend pages of their complaint reciting the history of a disallowed tax deduction, Sealed Air's transaction with Grace, and the asbestos settlement, none of these events has anything to do with Plaintiffs' theories of securities fraud.[6]  Plaintiffs' fraud allegations focus exclusively on Sealed Air's statements about the process of EY's retention and Sealed Air's corporate policies.  These narrow allegations do not support a securities claim.

### A.      Statements About EY's Retention Are Not Actionable

In articulating their first theory of liability, Plaintiffs allege that the company's statements to the effect that EY was selected "following a competitive search process" that "involved several international registered public accounting firms," Compl. ¶ 44, were false because, according to them, Stiehl engaged in conduct that was "unlawful," "fraudulent," or otherwise constituted "illegal bid-rigging."  *See* n.3, *supra* (collecting statements).[7]

But what, exactly, did Stiehl do?  Plaintiffs do not say.  Adjectives aside, Plaintiffs ***never*** explain how the "bid rigging" worked, what was supposedly illegal about it, what the company should have done differently, or how the company was harmed.[8]  They do ***not*** contend that the

---

[6] These extraneous allegations should be discarded.  *See Smith ex rel. Zion Oil & Gas, Inc. v. Carrillo*, 2019 WL 6328033, at *6 n.4 (D. Del. Nov. 26, 2019) ("My impression in securities cases is that once a certain minimum length is exceeded . . . excess length represents an attempt by a plaintiff to overwhelm the Court with verbiage, so that the Court's conclusion on a motion to dismiss is that there's a lot of smoke so there must also be a fire.").

[7] In paragraphs 44 and 45, Plaintiffs challenge statements made in Sealed Air's November 2014 Form 8-K.  In addition to being insufficiently pleaded as noted in the text, the statements cannot support Plaintiffs' complaint because they were made before the class period.  *In re IBM Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (defendant is "liable only for those statements made during the class period").  Plaintiffs allege that Sealed Air's November 2014 Form 8-K was filed on November 14, 2014.  Compl. ¶ 43.  The Class Period starts on November 17, 2014.

[8] Plaintiffs describe the alleged "bid rigging" as a "fraud" in an attempt to invoke the Sarbanes-Oxley Act.  *See* Compl. ¶¶ 76(d), 77, 81, 82(b).  But they cannot transform Stiehl's supposed "bid rigging" into a "fraud" by simply slapping the adjective "fraudulent" onto their allegations.  *See Jeanette Coquette Co., Inc. v. Hartford Fire Ins. Co.*, 1995 WL 363864, at *4 (S.D.N.Y. June 19, 1995)  (complaint did not survive Rule 9(b) inquiry where party "simply labels particular activities as fraudulent, without providing any explanation for why [it] deems them so").  They *must* describe what was fraudulent.

company should have hired another accounting firm.  They do *not* identify a single step that Stiehl, Sealed Air, or EY actually took to supposedly "rig" the accountant-hiring process, let alone one that broke any law.  They also do *not* identify what law was supposedly broken.

Plaintiffs also do *not* explain *why* the statements they challenge were false, despite their obligation to do so with specificity.  Thus, they do *not* allege that (1) the company failed to engage in a "search process" that "involved several international registered public accounting firms"; (2) the company did not receive bids from multiple such accountancies; or (3) somebody other than EY submitted a better, or more "competitive," bid.  To the contrary, Plaintiffs' allegations implicitly assume both that the company received bids from multiple firms *and* that EY eventually submitted the best, and most "competitive," bid.

Plaintiffs' pleading deficiencies are fatal.  As the Second Circuit instructs, "when a complaint claims that statements were rendered false or misleading through the non-disclosure of illegal activity, the facts underlying the illegal acts must be pleaded with particularity, in accordance with the heightened pleading requirement of Rule 9(b) and the PSLRA."  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 465 (2d Cir. 2019).  Thus, "[i]n order adequately to allege an underlying illegal act . . . Plaintiffs must plead the 'who, what, when, where, and how' of the alleged improper transaction."  *Schiro v. Cemex, S.A.B. de C.V.*, 438 F. Supp. 3d 194, 198, (S.D.N.Y. 2020); *see also In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006) ("If the complaint fails to allege facts which would establish . . . an illegal scheme, then the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed."); *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 354-55 (S.D.N.Y. 2008) ("Securities plaintiffs cannot meet the heightened pleading standards imposed by Rule 9 and the

PSLRA with such conclusory claims of undisclosed wrongdoing.").  Plaintiffs must also "explain why the statements [they challenge] were fraudulent" and false.  *ATSI*, 493 F.3d at 99.

Ample authority demonstrates Plaintiffs' pleading failure.  In *Gamm*, the Second Circuit affirmed the dismissal of a Section 10(b) complaint based on the failure to disclose supposed antitrust violations because the complaint did not set out particular allegations about the underlying antitrust conspiracy or why the omission rendered the company's statements false; although the plaintiffs "allege[d] that Sanderson engaged in 'anticompetitive' conduct, there [was] virtually no explanation as to how that collusive conduct occurred, and whether and how it affected trade."  944 F.3d at 464-65.  Similarly, in *Tabak v. Canadian Solar, Inc.*, the Circuit dismissed a claim based on the assertion that defendants engaged in "sham transactions" because the plaintiffs "d[id] not state with particularity any facts about those transactions to support a conclusion that they were sham transactions."  549 F. App'x 24, 28 (2d Cir. 2013).

Cases in accord abound in this District.  In *Schiro*, Judge Caproni recently rejected a plaintiff's theory that the defendant failed to disclose bribery in Colombia, noting that the plaintiff "include[d] no factual allegations of exactly who made the payments, to whom the payments were made, when the payments were made, or how the payments were made," and therefore reasoning that "[b]ecause Plaintiffs have failed to plead with particularity the existence of an underlying bribery scheme, they cannot plead that Cemex committed fraud by failing to disclose the payment of bribes."  438 F. Supp. 3d at 199.  Similarly, in *In re JP Morgan Chase Securities Litigation*, Judge Stein dismissed a claim that broadly identified the form of wrongdoing (kickbacks), but contained "no particular factual allegations" to substantiate that the challenged payments actually *were* kickbacks.  363 F. Supp. 2d 595, 632 (S.D.N.Y. 2005).  And, in *Menaldi v. Och-Ziff Capital Management Group, LLC*, Judge Oetken dismissed a claim

9

founded on the plaintiffs' belief that Och-Ziff violated U.S. sanctions against dealing with Robert Mugabe where the plaintiffs could only allege that Mugabe "received [a loan] through a series of related transactions originating with Och-Ziff."  164 F. Supp. 3d 568, 578-79 (S.D.N.Y. 2016) (noting plaintiffs' failure to explain "how" the law "applies to the facts of this case").

This case is no different.  Although Plaintiffs allege that some sort of unlawful scheme took place, their failure to provide the details of the scheme—and to explain why the company's supposed omission rendered its statements false—dooms their complaint.  At best, Plaintiffs have identified a "who" (Stiehl), but not the "what, when, where, and how" of the supposed "bid rigging" scheme.  *Schiro*, 438 F. Supp. 3d at 198.  Because adjectives are no substitute for facts—let alone for specific allegations detailing why the company's affirmative statements about EY's retention are false—Plaintiffs' EY-retention theory must fail.

It is also telling that, despite their duty to state with particularity all facts forming the basis of their information-and-belief regarding the assertions of illegality, the only ***facts*** Plaintiffs can point to are that (1) the government investigated and (2) Stiehl was fired "for cause."  *Cf.* 15 U.S.C. § 78u-4(b)(1) (PSLRA requirement that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed").  These data points do not allow Plaintiffs to end-run *Gamm*, and do not sufficiently support either the claim that illegal conduct took place or the corollary that the failure to disclose it constituted securities fraud.  The existence of an SEC investigation and Stiehl's firing may be "smoke," but Plaintiffs' responsibility was to allege specific facts—the who, what, where, when, and how—of a "fire."  *See, e.g.*, *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 942 (S.D. Ind. 2005) (Hamilton,

10

J.) (dismissing a complaint where the plaintiff could only "rel[y] on the existence of the investigations as smoke showing there must be a fraudulent fire burning").  They have not.

*     *     *     *

As *Gamm* explains, a securities issuer "cannot be required, whenever accused of illegal activity, to simultaneously defend itself in an accompanying securities fraud suit based on facts not alleged with the level of particularity required by the statute."  944 F.3d at 464-65.  Plaintiffs' complete failure to fill in the details here, or to explain with specificity what was supposedly false about the company's description of EY's retention, is fatal to their theory.

**B.      Statements About Sealed Air's Corporate Procedures Are Not Actionable**

Plaintiffs' second theory of liability centers on the company's statements about its Disclosure Controls and Procedures, Code of Conduct, and Code of Ethics.  *See* n.**Error! Bookmark not defined.**, *supra* (collecting statements).  Plaintiffs' theory is that these statements were false and actionable because the company's policies and controls were allegedly "circumvented by one of the Company's most senior financial officers, who engaged in illegal bid-rigging to ensure that EY would be retained as the Company's auditors."  *See* Compl. ¶¶ 51(a), 62(a), and 70(a).

Plaintiffs' theory, which at bottom is an attempt to transform the EY-retention theory into a second path to liability, does not to pass muster under the PSLRA.  *First*, Plaintiffs' second theory fails for the same reasons as their first theory:  If a statement is alleged to be false for failure to disclose illegal conduct, the Second Circuit's cases instruct, the illegal acts must be alleged with particularity.  Plaintiffs have not done this, which is dispositive.

*Second*, Plaintiffs also do not adequately explain *why* the company's statements about its policies and procedures were rendered false by omission – even beyond the fact that many of the statements Plaintiffs challenge are "inactionable 'puffery'" incapable of being fraudulent or

11

materially false. *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) ("[G]eneral statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are too general to cause a reasonable investor to rely upon them.").[9]

Indeed, Plaintiffs' allegation that a policy or procedure was circumvented in one instance does not show that the company's statements about its procedures were false, or that the underlying procedures were faulty. *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 811-12 (S.D.N.Y. 2018) ("[A]n unlawful payment is not necessarily the result of faulty internal controls."); *C.D.T.S. No. 1 v. UBS AG*, 2013 WL 6576031, at *4 (S.D.N.Y. Dec. 13, 2013) (falsity not properly pleaded even in view of *ex post* reports showing that "risk controls were not catching certain conduct and could be improved upon"). And putting aside Stiehl's alleged misconduct, there is no other allegation to support Plaintiffs' claim that, contrary to the company's statements, its procedures were not adequately ***designed***. *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 648 (S.D.N.Y. 2017) (rejecting the allegation that "controls were not 'designed' to provide reasonable assurance"; "Plaintiff alleges nothing about the design of the Company's . . . processes at all.").

At bottom, then, Plaintiffs set out "no facts as to what internal controls were insufficient or not followed . . . or what actions could or should have been taken to avoid the alleged violation." *Das*, 332 F. Supp. 3d at 811-12 (rejecting allegation that disclosure controls were not "effective at a reasonable assurance level" because of an alleged illegal payment); *see also, e.g.*, *Janbay v. Can. Solar, Inc.*, 2012 WL 1080306, at *9 (S.D.N.Y. Mar. 30, 2012) ("Plaintiffs have failed to allege specific facts concerning the purportedly deficient internal controls, including how they were deficient, when and why."); *Bradesco*, 277 F. Supp. 3d at 648 ("Thus, allegations

---

[9] For example, Sealed Air's policy statement that "No Sealed Air employee may put his or her personal interests ahead of the interests of the Company" cannot ground a securities case under controlling law.

that [defendant's] controls must have been deficient because they may have failed to detect some weaknesses in its financial reports or disclosures in some instances, are not sufficient."). Plaintiffs' generic allegations cannot support a claim.

### C.    Plaintiffs' Item 303, 503, And 307 Allegations Also Fail

Perhaps recognizing the weakness of their misstatement claims, Plaintiffs fall back on a grab bag of SEC regulations that, they say, required Sealed Air to disclose the supposed "bid rigging."  None of these regulations can salvage their complaint.

To begin, even when relying on a specific SEC regulation requiring disclosure of certain information, a securities plaintiff must *still* plead all the other elements of a Section 10(b) claim, including by pleading facts with particularity concerning the matters that were allegedly required to be disclosed.  *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) ("failure to make a required Item 303 disclosure" may "serve as the basis for a Section 10(b) securities fraud claim" but, "such an omission is actionable only if . . . all the other requirements to sustain an action under Section 10(b) are fulfilled"); *Y-GAR Capital LLC v. Credit Suisse Grp. AG*, 2020 WL 71163, at *9 (S.D.N.Y. Jan. 2, 2020) (same for Item 503).

As set forth above, however, Plaintiffs do not sufficiently plead what information was required to be disclosed.  Thus, although Plaintiffs allege that Sealed Air violated Items 303 and 503 by failing to disclose that Sealed Air "did *not* follow a competitive search process" when retaining EY, Compl. ¶ 103(a) (emphasis added), Plaintiffs have not pleaded with particularity what information was omitted from the disclosures, so their Item 303 and 503 claims fail. Indeed, the law's specificity requirements apply to *all* omission claims, including those based on Items 303 and 503, and Plaintiffs' failure to plead the details of the undisclosed conduct is fatal. *In re Tempur Sealy Int'l, Inc. Sec. Litig.*, 2019 WL 1368787, at *11 (S.D.N.Y. Mar. 26, 2019).

Regardless, no disclosure was required under the regulations Plaintiffs identify:

13

**Item 303**.  Item 303 of Regulation S-K, 17 C.F.R. § 229.303, the first regulation Plaintiffs invoke, Compl. ¶¶ 97-103, requires disclosure of information "the registrant believes to be necessary to an understanding of its financial condition," and applies to facts "reasonably likely to have material effects on the registrant's financial conditions or results of operations." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015).  But a company need ***not*** disclose all conduct that may be deemed illegal.  *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 n.8 (2d Cir. 2019).  Thus, "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (cleaned up).

As a result, no disclosure was required under Item 303 (even assuming that there was "bid rigging").  *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12 (S.D.N.Y. 2016), proves the point.  There, Judge Engelmayer concluded that a company did not have an Item 303 duty to disclose that it maintained a workplace environment that "could potentially have qualified as hostile under federal, state, and/or local anti-discrimination laws" because those circumstances, even though known to management (indeed, the executives were the ones alleged to have created the hostile environment), were not sufficiently likely to affect the company's financial conditions as to trigger Item 303.  173 F. Supp. 3d at 33-34.  So too here.

**Item 503**.  Item 503, 17 C.F.R. § 229.503 (now Item 105, *see In re AT&T/DirecTV Now Sec. Litig.*, 2020 WL 4909718, at *19 n.29 (S.D.N.Y. Aug. 18, 2020)), imposes similar disclosure obligations as Item 303, and does not apply for much the same reason.

Item 503 required (and Item 105 requires) a company to provide "a discussion of the most significant factors that make the offering speculative or risky." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 n.4 (2d Cir. 2011) (quoting the former Item 503(c)).  If

14

anything, this is a more demanding standard than Item 303: "Events that are not 'reasonably likely to be material under Item 303' are not among the 'most significant factors' rendering an offering speculative or risky under Item [503]." *In re Proshares Tr. II Sec. Litig.*, 2020 WL 71007, at *9 (S.D.N.Y. Jan. 3, 2020) (quoting *Hutchison*, 647 F.3d at 484 n.4); *see also Tempur Sealy*, 2019 WL 1368787, at *11. And so, like Item 303, Item 503 does not require a company "to admit to uncharged, unadjudicated wrongdoing." *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 169 (S.D.N.Y. 2018). Item 503 is thus no more applicable than Item 303. *See City of Warwick Municipal Empls. Pension Fund v. Rackspace Hosting, Inc.*, 2019 WL 452051, at *8 (S.D.N.Y. 2019) (no Item 503 violation where complaint lacked "any allegations from which the Court could conclude that [underlying wrongdoing] necessarily put [Defendant's] revenue or profits at risk or made the stock more 'speculative and risky.'").

**Item 307**. Plaintiffs allege that Item 307, 17 C.F.R. § 229.307, required the company to "disclose Stiehl's conclusions about the effectiveness of the Company's disclosure controls and procedures." Compl. ¶ 102. Plaintiffs' theory fails on its own terms: Plaintiffs never allege that Stiehl made any conclusions about the effectiveness of the company's disclosure controls.[10]

\*      \*      \*      \*

In short: Plaintiffs' Section 10(b) claims must be dismissed because Plaintiffs fail to adequately plead the details of the supposedly undisclosed conduct, fail to explain why the omission of this information rendered any statement false or misleading, and fail to show that the company omitted information required to be disclosed by regulation.

---

[10] Research revealed only two cases citing Item 307, neither on point. *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entmt. Holdings, Inc.*, 422 F. Supp. 3d 821, 853 (S.D.N.Y. 2019); *In re Newell Brands, Inc. Sec. Litig.*, 2019 WL 6715055, at *5 (D.N.J. Dec. 10, 2019).

## II.    Plaintiffs Do Not Adequately Plead Scienter

As noted above, a Section 10(b) plaintiff must plead that the defendant acted with the "intent to deceive, manipulate or defraud" investors.  *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168 (2d Cir. 2000) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). The plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).  The inference of scienter "must be cogent and at least as compelling as any opposing inference of non[-]fraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  A plaintiff can try to pass the test with facts showing "either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Moreover, "[w]here a defendant is a corporation, this requires pleading facts giving rise to 'a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.'"  *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008)). Plaintiffs do not meet the *Tellabs* standards.  Their complaint focuses exclusively on Stiehl's state of mind, but they do not allege he ever made any statement with scienter.

### A.    Plaintiffs Entirely Fail To Allege Scienter As To The November 2014 And April 2015 Statements About The EY-Retention Process

To state a claim against Sealed Air, Plaintiffs must plead that the employees who made the statements they challenge had the requisite state of mind.  *Id.*  Differently stated, the "maker" of the statement in issue must have acted with scienter.  *Wollgar v. Kingstone Cos., Inc.*, 2020 WL 4586792, at *21 (S.D.N.Y. Aug. 10, 2020).  As explained in *Janus Capital Group v. First Derivative Traders*, "the maker of a statement is the person or entity with ultimate authority over

16

the statement, including its content and whether and how to communicate it." 564 U.S. 135, 142 (2011). For example, in *City of Roseville Employees' Retirement System v. EnergySolutions, Inc.*, Judge Koeltl recognized that the directors who signed the statements in issue could be liable under *Janus*, but that individual defendants who had no " authority" over the "contents" of the statements could not be responsible. 814 F. Supp. 2d 395, 416-17 (S.D.N.Y. 2011).

Under this line of cases, Plaintiffs have entirely failed to show scienter as to the November 2014 and April 2015 statements—the only statements in which the company described the EY-retention process. That is because Plaintiffs place **only** Stiehl's state of mind at issue, but Stiehl signed neither the November 2014 nor the April 2015 filings, *see* Exs. C and D, and Plaintiffs identify no facts tending to suggest that Stiehl had anything to do with the crafting or publication of these statements, let alone that he had any "authority" over them. The Circuit, meanwhile, has rejected efforts to hold corporations liable unless the particular employee who spoke for the corporation acted with the requisite state of mind. *Jackson*, 960 F.3d at 98. Plaintiffs' failure to plead with particularity facts tying anyone with knowledge of the purported bid-rigging scheme to the company's statements about EY's retention is fatal to that claim.

**B.    Plaintiffs Also Fail To Allege Scienter As To The Statements For Which Stiehl Could Bear Responsibility**

**1.    Plaintiffs Do Not Meet The Motive-And-Opportunity Test**

"Motive is properly alleged by stating 'concrete benefits that could be realized by one or more of the false statements' identified in the complaint." *In re Philips Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 469 (S.D.N.Y. 2004) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)). Here, Plaintiffs set out only one motive: Stiehl's supposed desire "to allow Company insiders, including himself, to sell shares of their personally-held Sealed Air common stock at inflated prices." Compl. ¶ 120. This allegation simply doesn't cut it.

17

To be sure, in some circumstances, an insider's stock sales may support a finding of scienter.  *See ECA*, 553 F.3d at 198.  But, "[t]he mere fact that insider stock sales occurred does not suffice to establish scienter."  *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 344 (W.D.N.Y. 2008) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1224 (1st Cir. 1996)).  Instead, a plaintiff relying on insider stock sales to establish motive "bears the burden of establishing that [stock] sales were ***unusual or suspicious***."  *Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 772 (S.D.N.Y. 2019) (cleaned up; emphasis added).  Relevant considerations include "(1) the amount of net profits realized from the sales; (2) the percentage of holdings sold; (3) the change in volume of insider defendant's sales; (4) the number of insider defendants selling; (5) whether sales occurred soon after the statements defendants are alleged to have known were misleading; (6) whether the sales occurred shortly before the corrective disclosures . . . and (7) whether sales were made pursuant to trading plans."  *Id.* at 772-73 (quoting *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 493 (S.D.N.Y. 2018)).

Plaintiffs do not address these factors head-on, and rather than pleading facts leading to a "strong inference" of scienter under this test, the complaint alleges facts that ***undermine*** their scienter assertions.  Thus, of the three sales by Stiehl that Plaintiffs identify, only one came within even two weeks of a statement Plaintiffs challenge.  And, in each case, the closest statement was about the company's policies—the company said nothing about EY's retention:

| Date of Sale | Date Of Nearest Preceding Challenged Statement | Relevant Company Statement | Distance in Time |
|---|---|---|---|
| 5/19/2017 | May 10, 2017 (Compl. ¶ 71) | Corporate policies (Compl. ¶ 73) | 9 days |
| 12/15/2017 | November 9, 2017 (Compl. ¶ 75) | Corporate policies (Compl. ¶ 77) | 36 days |
| 6/19/2018 | May 7, 2018 (Compl. ¶ 83) | Corporate policies (Compl. ¶ 85) | 43 days |

18

Thus, the sales were not close in time to any statement having anything to do with EY's retention.[11]  They were also not close in time to any corrective disclosure—the last of the challenged sales came **48 days before** the first allegedly-corrective statement.  Compl. ¶ 87.  And there is also nothing allegedly "'unusual' or suspicious" about the sales.  *Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 460 (S.D.N.Y. 2019) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (stock sales "can establish fraudulent motive only if Plaintiffs first demonstrate that the stock sales were 'unusual' or suspicious.").[12]

What's more, Stiehl ended the class period with more stock than he had when it began.  *See* Ex. C (Stiehl had 15,000 shares in January 2013, about 10,000 in January 2016, and 49,306 on June 7, 2019).  As the Second Circuit instructs, this "signals only confidence in the future of the[] company."  *Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009) (no scienter; "[t]hree of the four individual defendants increased their net holdings . . . during the class period"); *Tung*, 412 F. Supp. 3d at 460 ("The fact that the Defendants '*increased* their [stock] holdings during the Class Period [is] wholly inconsistent with fraudulent intent'" (quoting *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004)).

And if this weren't enough, "the complaint lists only stock sales," while saying nothing about profits; of course, "proceeds alone say nothing about a seller's motive."  *Id.* at 459; *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 290 (S.D.N.Y. 2006) (plaintiff relying on stock

---

[11] In *City of Warren Police & Fire Retirement System v. Foot Locker, Inc.*, the court concluded that a plaintiff's claim that "the majority of sales were made 'within days of the Company's positive announcements'" was "not accurate" when sales were made eleven days or two weeks after the challenged public statements.  412 F. Supp. 3d 206, 227 n.15 (E.D.N.Y. 2019).

[12] Courts in this district have referred to departures from a defendant's trading history as relevant to the scienter inquiry.  *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 350 (S.D.N.Y. 2011) (Sullivan, J.) ("declin[ing] to consider" an alleged transaction where plaintiffs failed to plead the seller's "trading history"); *see also Micholle v. Ophthotech Corp.*, 2019 WL 4464802, at *15 n.18 (S.D.N.Y. Sept. 17, 2019).

sales was required to plead whether defendant "made any *profit*").

In sum, Stiehl's stock sales tend to ***negate*** the conclusory assertion that he acted with scienter when Sealed Air made the statements at issue.

### 2.    Plaintiffs Do Not Meet The Circumstantial-Evidence Test

Under the circumstantial-evidence test, a plaintiff may plead scienter by alleging that "the defendants: (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information that they had a duty to monitor." *Novak*, 216 F.3d at 311.[13]  Without evidence of motive—which is here lacking—"the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (quoting *Beck v. Mfrs Hanover Tr. Co.*, 820 F.2d 46, 50 (2d Cir. 1987)).  This test is plainly not satisfied, let alone under the PSLRA standard.

**a.**    To begin, for the reasons just explained, Plaintiffs' effort to meet the first *Novak* factor—whether defendant "benefitted in a concrete and personal way"—fails to get off the ground.  Plaintiffs cannot connect any stock sale to any false or corrective statement, and they identify no suspicious activity or personal benefit.  Thus, the first *Novak* factor runs ***against*** Plaintiffs, which requires the balance of their evidence to be correspondingly stronger.  *See id.*

**b.**    Next, Plaintiffs' effort to meet the second factor—that a defendant "engaged in deliberately illegal behavior," *Novak*, 216 F.3d at 311—fails because their "illegal bid rigging" allegations are conclusory and not pleaded with the requisite particularity (as explained in

---

[13] As Judge Sullivan noted in *Wachovia*, there is some "tension" between the two-factor *Ganino* test (repeated in *ATSI*) and the four-factor *Novak* framework.  753 F. Supp. 2d at 348.  Nevertheless, the *Novak* Court also recognized that the two-factor test was viable after the adoption of the PSLRA.  216 F.3d at 310; *see also In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *11 (S.D.N.Y. Mar. 28, 2018) (noting that a plaintiff can establish scienter under either test).  At any rate, any distinction between the two tests is academic in this case, because Plaintiffs cannot meet either formulation.

Section I.A.); the alleged omissions fail the materiality test (as further explained in Section III); the underlying conduct is utterly unrelated to the securities price; and there is no allegation tying the purported bid-rigging to any statement made by Stiehl on the company's behalf.

Just as conclusory allegations of illegality are insufficient to plead falsity, they also cannot support a strong inference—or, really, **any** inference—of scienter. *See PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 495 (S.D.N.Y. 2017) ("PetEdge's unsupported allegations that Garg 'directed' the alleged scheme . . . are too conclusory and speculative to support its claim.").[14] Thus, although Stiehl was fired "for cause," and although the Government launched investigations, these facts do not lead to a "strong inference" that Stiehl ever intended to commit **securities fraud**. "[A] corporation may choose to terminate employees for making errors due to negligence, oversights, etc., or simply for incompetence," or for violating corporate policies, but there can be no inference of scienter "unless [the Court] is satisfied that the Defendants acted with recklessness or conscious misbehavior" in making public statements directed at investors. *In re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *17 (D.N.J. Aug. 17, 2005). "Section 10(b) claims are not supported if the crux of the allegations is that a company was mismanaged; the allegations must allege 'manipulation or deception.'" *C.D.T.S.*, 2013 WL 6576031, at *7 (rejecting effort to draw "inference of scienter" from employees' demotion and resignation). And here, there are **no** allegations of **securities manipulation or deception** by Stiehl.

  **c.**  Plaintiffs also make allegations that sound in the third *Novak* factor—namely, that

---

[14] *See also Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 430 (S.D.N.Y. 2010) (no scienter where "Plaintiffs' assertions are not supported by any particularized factual allegations that might establish intentional wrongdoing"); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595 (S.D.N.Y. 2005) (allegations did not support scienter where "first asserted legal violation . . . [was] conclusory," because "[p]laintiffs offer no specific allegations that defendants acted corruptly"); *In re Landry's Seafood Rest., Inc.*, 2001 WL 34115784, at *23 (S.D. Tex. Feb. 20, 2001) (no scienter where "Plaintiffs have conclusorily alleged . . . an illegal agreement").

Stiehl supposedly "knew facts" suggesting that Sealed Air's public statements were inaccurate. 216 F.3d at 311.  But, again, there is nothing tying this purported knowledge to a supposedly fraudulent statement Stiehl participated in crafting on the corporation's behalf.  Moreover, the "fact" that Stiehl supposedly "knew" about was his purported "illegal bid rigging"—which, as explained herein, (a) is not pleaded with particularity, and (b) is not shown to have rendered any company statement (let alone a material one) false.  That means Plaintiffs have also not met this factor of the test.  Indeed, as the Second Circuit instructs, allegations "that defendants 'knew but concealed'" information "do not satisfy the requirements of Rule 9(b)" if "such allegations are 'so broad and conclusory as to be meaningless.'"  *Shields*, 25 F.3d at 1129 (quoting *Decker v. Massey-Ferguson*, 681 F.2d 111, 119-20 (2d Cir. 1982)); *cf. C.D.T.S.*, 2013 WL 6576031, at *6 ("There are a number of cases in which plaintiffs have sought to base claims of fraud on statements regarding risk and internal control systems that later prove not to deter or catch trading losses; courts often dismiss such actions for a failure adequately to plead scienter.").[15]

    **d.**        Finally, the complaint contains nothing bearing on the fourth *Novak* factor.

*     *     *     *

Plaintiffs' scienter allegations, like their falsity allegations, appear to rely on the existence of the government's investigations and Stiehl's firing.  But neither of these facts establishes the requisite "***strong inference***" of scienter—*i.e.*, a "cogent" inference that Stiehl ***made public statements*** with the intent ***to mislead investors***, an "inference" that is "***at least as***

---

[15] *See also, e.g.*, *Holbrook v. Trivago N.V.*, 2019 WL 948809, at *21 (S.D.N.Y. Feb. 26, 2019) (dismissing complaint on scienter grounds; "plaintiffs failed to establish what the defendants knew and when they knew it" (internal citation omitted)); *Sanchez v. ASA Coll., Inc.*, 2015 WL 3540836, at *9 (S.D.N.Y. June 5, 2015) (no allegations of "specific facts indicating that [Defendants] were aware of the falsity of the representations"); *JP Morgan Chase*, 363 F. Supp. 2d at 624 (scienter depends on defendant's "knowledge that their misrepresentations were materially misleading, a fact that . . . plaintiffs have failed to plead with requisite particularity" (internal citation omitted)).

22

***compelling as any opposing inference of non-fraudulent intent***." *Tellabs*, 551 U.S. at 314 (2007) (emphasis added).  The investigations are not "strongly" probative of fraud, and, beyond that, at this point the U.S. Attorney's investigation has ended.  Exs. A, B.[16]  Meanwhile, the fact that Stiehl was fired does not show he committed securities fraud.  Plaintiffs do not show he benefitted personally or ever made statements with the intent to inflate Sealed Air's stock price—indeed, he is not alleged to have said anything at all about the EY retention process.  And in the absence of facts strongly suggesting that Stiehl misstated facts on the company's behalf with scienter, there can be no claim against the company.  *Jackson*, 960 F.3d at 98.

## III.    Plaintiffs Have Not Adequately Alleged Materiality

"An alleged misrepresentation is material if 'there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares of stock.'"  *Singh*, 918 F.3d at 63 (quoting *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92-93 (2d Cir. 2010)).  Materiality is measured at the time the statement was made.  *Ganino*, 228 F.3d at 165.

Although Plaintiffs challenge Sealed Air's disclosures about the EY retention process (and allege that Sealed Air was required to say more about it), it is worth noting that there is no allegation that Sealed Air was required to run a competitive process when it selected EY (nor could there be, because the law imposes no such requirement), and that when Sealed Air

---

[16] *See Godinez v. Alere Inc.*, 272 F. Supp. 3d 201, 219 (D. Mass 2017) ("[T]he existence of a subpoena does not, without more, give rise to a strong inference of scienter on the part of senior management."); *Konkol v. Diebold, Inc.*, 590 F.3d 390, 401-02 (6th Cir. 2009) (noting that "a decision by government agencies to investigate a company is not sufficient to meet the heightened *Tellabs* standard on its own," because, after all "[g]overnment investigations can result from any number of causes"), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011); *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 962 (8th Cir. 2008) ("[T]he mere existence of an SEC investigation does not suggest that any of the allegedly false statements were actually false . . . nor does it add an inference of scienter.").

replaced its prior auditors at KPMG with EY, there were only three other internationally recognized first-tier accountancies, one of which was EY.[17]  Sealed Air did not hire some fly-by-night shop; it picked a top-of-the-market firm.  Moreover, Plaintiffs do not allege that anyone submitted a better bid than EY or that the company should have hired another firm.

Equally significant, Plaintiffs do not allege that EY made any errors in its work for Sealed Air or lacked the requisite expertise or objectivity.  Plaintiffs also do not allege that Sealed Air's audited financial results were misstated, or are in need of correction.

So how, then, can an alleged omission about the EY retention *process* plausibly have been material *to investors*?  If EY has the requisite expertise and objectivity—and did its work well, such that the accounting results are not in need of correction (and there is no contrary allegation)—how could it plausibly matter to an investor how EY was selected?

Plaintiffs' only assertion in support of their claim is the contention that, after two company statements disclosing the facts of the SEC investigation and Stiehl's firing, Sealed Air's stock price fell.  That might establish that investors care an SEC investigation has been initiated, or it might show that a change in corporate leadership is important, or it might show concern that bad news may be disclosed in the future, but it cannot be enough to plausibly plead that the company's past statements about EY's hiring were material.

The Court should not allow Plaintiffs to subject Sealed Air to invasive discovery on a theory that boils down to a claim that because Sealed Air's statements turned out to (allegedly) be false, they must have been material when made.  *See, e.g.*, *In re Alliance Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 191 (S.D.N.Y. 2003) (a plaintiff "will not prevail in establishing materiality with arguments based in hindsight."); *see also Greenhouse v. MCG Capital Corp.*,

---

[17] When Sealed Air retained EY, the four internationally renowned accountancies, known as the Big Four, were KPMG, EY, Deloitte, and PwC.

392 F.3d 650, 656 (4th Cir. 2004) ("[The securities laws] decidedly do *not* prohibit *any* misrepresentation . . . of *im*material facts, even if it induces reactions from investors that, in hindsight or otherwise, might make the misrepresentation appear material.").

Beyond that, the first "corrective disclosure" at issue was a quarterly report that disclosed a range of information, and noted, within the report, that the company "received from the staff of the SEC a subpoena for documents, including requests concerning the Company's accounting for income taxes, its financial reporting and disclosures and other matters." Compl. ¶ 89. Because the company did not even reference EY's retention, the resulting stock price movements are irrelevant to Plaintiffs' theories of liability, which turn on the EY retention. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2015 WL 1311073, at *6-7 (S.D.N.Y. Mar. 23, 2015).

Nor does the second corrective disclosure establish materiality. In 2018, Sealed Air announced in a Form 8-K that the SEC investigation was ongoing, that it had terminated its CFO, and that the scope of the SEC investigation had broadened. But, as noted, "[t]he mere existence of an SEC investigation does not" establish "material[ity]." *Hutchinson Tech.*, 536 F.3d at 962. What's more, the allegation that a company's stock fell in response to *all* this news (which was disclosed simultaneously) does not show that the limited omission at issue here was material to investors. Again, investors may have been concerned that questions could be raised regarding the company's previously reported financial results, or about the risk that Sealed Air would experience business disruptions. But none of this has come to pass.

In sum: it does not follow from any of the Plaintiffs' factual allegations that investors cared about the purported omissions in issue here when the statements were made, and the Plaintiffs do not allege that the company's financial results were misstated. The details of the

25

EY retention process were utterly immaterial, and Plaintiffs have articulated no theory explaining why investors would have cared about the purportedly omitted information.

## CONCLUSION

Plaintiffs' claims against Sealed Air should be dismissed with prejudice.  Plaintiffs have already taken multiple months to conduct an investigation to try to substantiate their claims.  And their corrected, amended complaint comes far short of complying with the law's pleading standards.

DATED:    New York, New York
          September 4, 2020

By:  /s/ Vincent Levy
    Michael S. Shuster
    Vincent Levy
    Peter J. Brody
    HOLWELL SHUSTER & GOLDBERG LLP
    425 Lexington Avenue, 14th Floor
    New York, New York  10017
    (646) 837-5120
    vlevy@hsgllp.com
    *Attorneys for Defendant Sealed Air*

26