UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                        :

UA LOCAL 13 & EMPLOYERS GROUP    :   Civil Action No. 1:19-cv-10161-LLS-RWL
INSURANCE FUND, Individually and on   :
Behalf of All Others Similarly Situated,   :
                        :
              Plaintiff,     :
                        :
        vs.             :
                        :
SEALED AIR CORPORATION, and      :
WILLIAM G. STIEHL,           :
                        :
            Defendants.   :
                        :
-------------------------------------------------------- X

 

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT WILLIAM STIEHL'S MOTION TO DISMISS
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

FACTUAL BACKGROUND ............................................................................................. 1

ARGUMENT ...................................................................................................................... 3

COUNT I OF THE COMPLAINT SHOUD BE DISMISSED BECAUSE STIEHL DID NOT
    MAKE TWO OF THE ALLEGED MISSTATEMENTS, AND BECAUSE OTHER
    ALLEGED MISSTATEMENTS ARE NON-ACTIONABLE PUFFERY ......................... 3

    A.    Stiehl did not "Make" the Statements in the 2014 Form 8-K or 2015 Proxy
        Statement for Purposes of Rule 10b-5 .................................................................... 3

    B.    The Alleged Misstatements Concerning the Company's Code of Conduct and
        Code of Ethics are Non-Actionable "Puffery" ...................................................... 4

COUNT II OF THE COMPLAINT SHOUD BE DISMISSED BECAUSE PLAINTIFFS HAVE
    FAILED TO ADEQUATELY ALLEGE CONTROL LIABILITY .................................... 6

    A.    The Complaint Fails to Allege That Stiehl was a Controlling Person Over the
        Statements in the 2014 Form 8-K and the 2015 Proxy Statement .......................... 7

    B.    The Complaint Fails to Allege Stiehl's Culpable Participation in the
        Misstatements ....................................................................................................... 10

CONCLUSION .................................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017)................................................................4

*Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*,
  No. 11 Civ. 0505, 2011 WL 2610661 (S.D.N.Y. June 27, 2011).............................................2

*In re Braskem S.A. Sec. Litig.*,
  246 F. Supp. 3d 731 (S.D.N.Y. 2017)................................................ *passim*

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)................................................................10

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
  No. 11 Civ. 4665, 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014)................................5

*City of Roseville Emp. Ret. Sys. v. EnergySolutions, Inc.*,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011)................................................................3

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)................................................................2

*In re Deutsche Telekom AG Sec. Litig.*,
  No. 00 Civ. 9475, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)..........................................8, 9

*ECA and Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)................................................................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  308 F. Supp. 2d 249 (S.D.N.Y. 2004)..............................................................8, 9

*Floyd v. Liechtung*,
  No. 10 Civ. 4254, 2013 WL 1195114 (S.D.N.Y. Mar. 25, 2013)..........................................8

*Fries v. N. Oil & Gas, Inc.*,
  354 F. Supp. 3d 384 (S.D.N.Y. 2018)................................................................6

*In re Glob. Crossing, Ltd. Sec. Litig.*,
  No. 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)................................10

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
  No. 15 Civ. 6369, 2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018)....................................10, 11

**TABLE OF AUTHORITIES**
(cont'd)

**Page(s)**

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)................................................................................................3

*In re Lihua Int'l, Inc. Sec. Litig.*,
No. 14 Civ. 5037, 2016 WL 1312104 (S.D.N.Y. Mar. 31, 2016) ....................................10, 11

*In re Livent, Inc. Sec. Litig.*,
78 F. Supp. 2d 194 (S.D.N.Y. 1999)................................................................................8

*Lopez v. Ctpartners Exec. Search Inc.*,
173 F. Supp. 3d 12 (S.D.N.Y. 2016)................................................................................4, 5, 6

*In re NQ Mobile, Inc. Sec. Litig.*,
No. 13 Civ. 7608, 2015 WL 1501461 (S.D.N.Y. Mar. 27, 2015) ............................................7

*Primavera Familienstiftung v. Askin*,
No. 95 Civ. 8905, 1996 WL 494904 (S.D.N.Y. Aug. 30, 1996) ............................................11

*Rose v. Rahfco Mgmt. Grp., LLC*,
No. 13 Civ. 5804, 2014 WL 7389900 (S.D.N.Y. Dec. 15, 2014)............................................3

*In re Sanofi Sec. Litig.*,
155 F. Supp. 3d 386 (S.D.N.Y. 2016)................................................................................5

*SEC v. First Jersey Sec., Inc.*,
101 F.3d 1450 (2d Cir. 1996)................................................................................7

*In re ShengdaTech, Inc. Sec. Litig.*,
No. 11 Civ. 1918, 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ............................................10

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012)................................................................................3, 7, 8

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) ................................................................................4

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014)................................................................................10

*Sudarsan v. Seventy Seven Energy Inc.*,
No. 17 Civ. 2342, 2018 WL 1088004 (S.D.N.Y. Feb. 6, 2018) ............................................9

*In re UBS AG Sec. Litig.*,
No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd*, 752
F.3d 173 (2d Cir. 2014)................................................................................6

# TABLE OF AUTHORITIES
(cont'd)

**Page(s)**

*Washington State Inv. Bd. v. Odebrecht*,
    No. 17 Civ. 8118, 2020 WL 2555431 (S.D.N.Y May 20, 2020)................................................3

**Statutes**

15 U.S.C. § 78(t)(a)...............................................................................................................7

Exchange Act
    Section 10(b)..............................................................................................................1, 11
    Section 20(a) .............................................................................................. *passim*

PSLRA .................................................................................................................................11

**Other Authorities**

Rule 10b-5....................................................................................................................3, 6, 7

On July 13, 2020, Plaintiffs filed the Corrected Amended Complaint ("Complaint"). ECF No. 32.  Defendant Sealed Air Corporation ("Sealed Air" or "the Company") has moved to dismiss the Complaint.  Defendant William Stiehl ("Stiehl") joins the Company's motion to dismiss Count I of the Complaint, which sets forth a claim arising under Section 10(b) of the Exchange Act.  In addition to the reasons set forth in the Company's brief, Count I should be dismissed as against Stiehl because it fails to allege that he "made" certain statements at issue, and because certain statements are non-actionable puffery.  Count II of the Complaint, which alleges control person liability against Stiehl alone under Section 20(a) of the Exchange Act should also be dismissed because, among other reasons, the Complaint does not adequately allege a primary violation of the securities laws that would support control person liability.

## FACTUAL BACKGROUND

The Complaint alleges that a series of statements contained in Sealed Air's public filings were false in light of certain conduct relating to the selection of Sealed Air's auditor, which took place in 2014.

The Complaint alleges that a Form 8-K filed by Sealed Air on November 14, 2014 (the "2014 Form 8-K") falsely stated that the Company's retention of Ernst & Young LLP ("EY") as its new auditor "follow[ed] a competitive search process," when, according to the Complaint, the process was not competitive.  ¶¶ 44–45.[1]  The Complaint further alleges that the Company's April 2, 2015 definitive proxy statement (the "2015 Proxy Statement") also falsely represented that the Company's retention of EY "follow[ed] a competitive search process" and falsely stated that "[f]ollowing a comprehensive request for proposal process, the Audit Committee considered EY to be well qualified."  ¶ 52.

---

[1]  Paragraphs cited are to the Complaint.

Stiehl did not sign either the 2014 Form 8-K or the 2015 Proxy Statement.  The 2014 Form 8-K was signed by Sealed Air's then-Senior Vice President and Chief Financial Officer, Carol Lowe.  *See* Declaration of Michael J. Berkovits, dated September 4, 2020 ("Berkovits Decl."), Ex. 1, at 4.  The 2015 Proxy Statement, filed in connection with a solicitation by Sealed Air's Board of Directors, also was not signed by Stiehl.  *See id.*, Ex. 2, at 4, 93.  Stiehl is not mentioned anywhere in either document.  The Complaint is silent as to these facts.[2]

The Complaint also alleges that certain other statements in the Company's SEC Forms 10-K, which do not directly refer to the selection of the company's auditor and instead relate to the Company's ethics and compliance policies, are false.  *See* ¶¶ 48–50.  The Complaint recites the Company's statement in a Form 10-K that it "adopted a Code of Conduct" that is available on the Company's website.  ¶ 48.  The Complaint further alleges that the Code of Conduct states that Sealed Air has a "reputation" for ethical behavior, and that its employees are "expected to comply with the law" and with rules of business ethics.  ¶ 49.  Finally, the Complaint alleges that a Code of Ethics, also available on the Company's website, sets out procedures for ethical conduct by senior financial executives.  ¶ 50.

The Complaint alleges that these statements are false, because the Company violated its policies by permitting a non-competitive auditor selection process.

---

[2]  This Court may take judicial notice of Exhibits 1 and 2 because they are public documents filed with the SEC, and because they are referenced in the Complaint.  *See Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, No. 11 Civ. 0505, 2011 WL 2610661, at *3 (S.D.N.Y. June 27, 2011); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

## ARGUMENT

**COUNT I OF THE COMPLAINT SHOUD BE DISMISSED BECAUSE STIEHL DID NOT MAKE TWO OF THE ALLEGED MISSTATEMENTS, AND BECAUSE OTHER ALLEGED MISSTATEMENTS ARE NON-ACTIONABLE PUFFERY**

### A. Stiehl did not "Make" the Statements in the 2014 Form 8-K or 2015 Proxy Statement for Purposes of Rule 10b-5

Because of the "narrow scope" of Rule 10b-5 liability, only the "maker" of a statement can be held liable under Rule 10b-5. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 143–44 (2011); *Rose v. Rahfco Mgmt. Grp., LLC*, No. 13 Civ. 5804, 2014 WL 7389900, at *4–5 (S.D.N.Y. Dec. 15, 2014) (citing *Janus*). Thus, a plaintiff must adequately allege that the defendant is "the person or entity with ultimate authority" over the alleged misstatement. *See Janus*, 564 U.S. at 142.

Stiehl was not the "maker" of the alleged misstatements in either the 2014 Form 8-K or the 2015 Proxy Statement, and he did not have "ultimate authority" over either statement. *See Janus*, 564 U.S. at 142; *Rose*, 2014 WL 7389900, at *4–5. First, Stiehl did not sign the SEC filings containing the alleged misstatements. *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012) ("[O]nly those officers whose signatures appear on misleading statements may be liable as the 'makers' of those statements."). The 2014 Form 8-K was signed by Sealed Air's then-CFO Carol Lowe alone. Berkovits Decl., Ex. 1, at 4. *See Washington State Inv. Bd. v. Odebrecht*, No. 17 Civ. 8118, 2020 WL 2555431, at *10 (S.D.N.Y May 20, 2020) (citing *Janus*, 564 U.S. at 142–43) ("[A]ttribution within a statement . . . is strong evidence that a statement was made by—*and only by*—the party to whom it is attributed.") (emphasis added). Stiehl also did not sign the 2015 Proxy Statement. Berkovits Decl., Ex. 2. Indeed, Stiehl was not mentioned in either the 2014 Form 8-K or the 2015 Proxy Statement. *See City of Roseville Emp. Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 417 (S.D.N.Y.

3

2011) (defendants were not "makers" of statements within SEC filing where they did not sign the filing and there was "no indication anywhere within the [filing] that [defendants] had any authority over its contents, aside from consenting to being listed" in the document).

Second, the Complaint asserts that the alleged misstatements "are attributable to Stiehl" because he was "involved" in the Company's management and in "drafting, producing, reviewing, and/or disseminating" the alleged misstatements. ¶ 26. But even if a defendant could "make" a statement in a corporate filing without signing it, these nonspecific, boilerplate allegations would be insufficient. Since "undeniable proof that an individual worked on a statement does not meet *Janus*'s requirement that the individual have ultimate authority over the statement . . . a mere presumption that a person worked on a statement by virtue of his or role within the company must also fall short." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 640 (S.D.N.Y. 2017) (internal quotations and citations omitted); *see also Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("[C]orporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded.").

Accordingly, Plaintiffs' claims under Count I against Stiehl relating to the statements in the 2014 Form 8-K and the 2015 Proxy Statement must be dismissed.

**B.      The Alleged Misstatements Concerning the Company's Code of Conduct and Code of Ethics are Non-Actionable "Puffery"**

Courts regularly reject attempts to impose liability for statements that a company has a code of conduct or that a company expects and requires that its employees behave ethically. Codes of conduct and codes of ethics are "inherently aspirational" documents. *See Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 29 (S.D.N.Y. 2016); *see also In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 755 (S.D.N.Y. 2017) ("As the Second Circuit has noted,

4

statements within such codes tend to be 'explicitly aspirational, with qualifiers such as . . . 'should.''"); *City of Brockton Ret. Sys. v. Avon Prod., Inc.*, No. 11 Civ. 4665, 2014 WL 4832321, at \*16 (S.D.N.Y. Sept. 29, 2014) (dismissing claims when the "statements merely set forth standards in generalized terms that [the company] hoped its employees would adhere to"); *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 401 (S.D.N.Y. 2016).  A code of conduct is not a warranty that all of a company's employees will always comply with that code:  "[I]t simply cannot be that every time a violation of that code occurs, a company is liable under federal law for having chosen to adopt the code at all." *Lopez*, 173 F. Supp. 3d at 29.

As at most companies, Sealed Air's Code of Conduct and Code of Ethics are aspirational documents that reflect the company's policies concerning what employees "should" do.  They do not constitute guarantees that no employees will violate the securities laws.  *See, e.g.*, *Braskem*, 246 F. Supp. 3d at 754 ("'It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery' . . . '") (internal citations omitted); *see also ECA and Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) ("No investor would take such statements seriously in assessing a potential investment, for the simple fact that almost every investment bank makes these statements . . . [w]e decline to broaden the scope of securities laws in that manner").  For example, Sealed Air's Code of Conduct states that its employees are "expected" to comply with the law.  ¶ 49.  It states that "No Sealed Air employee may put his or her personal interests ahead of the interests of the Company.  Even the appearance of a conflict can damage the reputation of an employee or the Company." *Id.*  Sealed Air's Code of Ethics states that financial executives "should be scrupulous in avoiding a conflict of interest" and "should" discuss potential conflicts with senior management.  ¶ 50.  It also states that employees are "encouraged to submit"

5

concerns related to accounting or auditing matters to the Audit Committee of the Board of Directors. ¶ 50.  These statements do not amount to a "'guarantee of some concrete fact or outcome'" and thus do not support liability under Rule 10b-5.  *Lopez*, 173 F. Supp. 3d at 29.

Sealed Air's Code of Conduct and Code of Ethics do not represent that all Sealed Air employees comply with their terms.  *See Fries v. N. Oil & Gas, Inc.*, 354 F. Supp. 3d 384, 390 (S.D.N.Y. 2018) ("Breaches of a corporate code of ethics do not render that code misleading unless the company assures investors that individuals do in fact comply with the code.").  And while the Code of Conduct states that "Sealed Air requires its employees to comply fully with anti-corruption laws," ¶ 49, "[t]here is an important difference between a company's announcing rules forbidding bribery and its factually representing that *no officer* has engaged in such forbidden conduct."  *Braskem*, 246 F. Supp. 3d at 756 (emphasis added).

Moreover, the Complaint does not allege that Sealed Air represented that its adherence to its Code of Conduct gave it an advantage over competitors.  *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *36 (S.D.N.Y. Sept. 28, 2012), *aff'd*, 752 F.3d 173 (2d Cir. 2014) (dismissing as puffery statements related to a company's ethical and legal compliance when there was "no indication that [the company] asserted that its financial success was attributable to its adherence to laws or to a particular advantage it had over its peer institutions [in ethical compliance]").  Accordingly, Plaintiffs' claims under Count I against Stiehl relating to Sealed Air's Code of Conduct and Code of Ethics must be dismissed.  *See* ¶¶ 48–51, 60, 62, 69–70, 80, 82.

### COUNT II OF THE COMPLAINT SHOUD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ADEQUATELY ALLEGE CONTROL LIABILITY

Under Section 20(a) of the Exchange Act, a defendant who "controls" any person, such as a corporation, that has violated the securities laws is liable "to the same extent as such

6

controlled person." 15 U.S.C. § 78(t)(a). A plaintiff must adequately plead three elements to establish a Section 20(a) claim: (1) that there was a "primary violation" of federal securities law, (2) that the defendant was a controlling person over the transaction at issue, and (3) that the defendant was a culpable participant in the fraud. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996); *Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d at 166–67.

For the reasons stated in Sealed Air's motion to dismiss, the Complaint fails to allege a primary violation under Rule 10b-5. Accordingly, Plaintiffs' Section 20(a) claims must be dismissed because they fail to meet even the first element of Section 20(a) liability. *See First Jersey*, 101 F.3d at 1472 ("In order to establish a prima facie case of controlling person liability, a plaintiff must show a primary violation by the controlled person.").

As described below, Plaintiffs also fail to meet the second element for Section 20(a) liability, at least with respect to the statements in the 2014 Form 8-K and the 2015 Proxy Statement, and fail to meet the third element for Section 20(a) liability for all of the alleged misstatements.

A.    **The Complaint Fails to Allege That Stiehl was a Controlling Person Over the Statements in the 2014 Form 8-K and the 2015 Proxy Statement**

Fundamentally, "'officer or director status alone does not constitute control.'" *Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d at 167 (quoting *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) (Lynch, J.)). A plaintiff must provide "concrete allegations" that the defendant had "actual control over the transaction" at issue. *Braskem*, 246 F. Supp. 3d at 771–72; *see also Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d at 166–67 (plaintiff must allege "'*actual* control over *the matters at issue*'") (emphasis altered); *In re NQ Mobile, Inc. Sec. Litig.*, No. 13 Civ. 7608, 2015 WL 1501461, at *2 (S.D.N.Y. Mar. 27, 2015).

7

The Complaint fails to make "concrete allegations" concerning whether Stiehl had actual control over the specific statements in the 2014 Form 8-K and the 2015 Proxy Statement. *See Braskem*, 246 F. Supp. 3d at 771–72. Stiehl did not sign either document, and neither document is attributed to him in any way. *See supra* page 2. In fact, even if the Complaint plausibly alleged that Stiehl "participated" in the alleged misstatements, that would also be insufficient under Section 20(a). *Floyd v. Liechtung*, No. 10 Civ. 4254, 2013 WL 1195114, at *6 (S.D.N.Y. Mar. 25, 2013) ("'[E]ven significant participation in [a primary violator's] scheme to defraud is not equivalent to directing [the primary violator] to engage in that scheme.'") (citing *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 646 (S.D.N.Y.2004)).

The Complaint alleges that Stiehl had "the power to influence and control" by "virtue of his executive position" and access to the Company's internal communications and public filings. ¶¶ 154–55. But "'officer or director status alone does not constitute control.'" *Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d at 167 (quoting *In re Glob. Crossing*, 2005 WL 1907005 at *12); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999) (collecting cases). Similar allegations have been routinely dismissed. *See, e.g.*, *Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d at 166–67 (dismissing claims that defendant was a control person "by virtue of his high-level positions, his awareness of [his company's] operations, and his intimate knowledge of the statements filed . . . with the SEC and disseminated to the investing public") (internal quotations omitted); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 274 (S.D.N.Y. 2004) (dismissing claims that defendants were control persons "[b]y reason of their positions as officers and/or directors of Flag" and their "power and authority to cause Flag to engage in the wrongful conduct") (internal quotations omitted); *In re Deutsche Telekom AG Sec. Litig.*, No. 00 Civ. 9475, 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002) (dismissing

8

claims that defendants were control persons because they "had the power to influence and control and did influence and control the decision-making . . ., including the content and dissemination of the public statements that plaintiffs contend are false and misleading").

The Complaint also alleges that Stiehl exercised control by virtue of his "share ownership." Cases in this district have consistently rejected similar allegations, even where the defendant owns a substantial proportion of the company's outstanding stock, which is not remotely the case here. *See, e.g.*, *Deutsche Telekom*, 2002 WL 244597, at *6 (allegations of 22 percent share ownership insufficient to infer control); *Flag Telecom*, 308 F. Supp. 2d at 274 (allegations of stock ownership insufficient to infer control). The Forms 4 cited by Plaintiffs, ¶ 37 n.1, indicate that Stiehl owned, at maximum, less than 50,000 shares of stock in Sealed Air—less than 0.03% of Sealed Air's approximately 160 million shares outstanding.[3] Berkovits Decl., Ex. 3 (Forms 4 showing "Amount of Securities Beneficially Owned" by Stiehl); *id.*, Ex. 4 (Sealed Air Form 10-Q for the second quarter of 2018, reflecting approximately 160 million shares outstanding). This miniscule level of share ownership is plainly inadequate to support an allegation that Stiehl controlled the company.

Likewise, the Complaint's allegations that Stiehl had the requisite control because he could "prevent the issuance of the statements or cause them to be corrected" are insufficient to state a claim. ¶ 155. *See, e.g.*, *Deutsche Telekom*, 2002 WL 244597, at *6 (dismissing control person claim where defendant was "provided with or had unlimited access to copies of the complained of statements prior to and/or shortly after these statements were issued and had the

---

[3] The Court may take judicial notice of the number of Sealed Air shares outstanding at the relevant time because the number is available in public filings with the Securities and Exchange Commission. *See Sudarsan v. Seventy Seven Energy Inc.,* No. 17 Civ. 2342, 2018 WL 1088004, at *3 n.4 (S.D.N.Y. Feb. 6, 2018) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991)).

ability to prevent the issuance of the statements or cause the statements to be corrected")

(internal quotations omitted).

### B.     The Complaint Fails to Allege Stiehl's Culpable Participation in the Misstatements

With respect to the third element, "the majority of judges in this district [hold] that

plaintiffs must plead culpable participation in order to state a claim under § 20(a)." *In re Lihua*

*Int'l, Inc. Sec. Litig.*, No. 14 Civ. 5037, 2016 WL 1312104, at *18 (S.D.N.Y. Mar. 31, 2016); *see*

*also, e.g.*, *In re ShengdaTech, Inc. Sec. Litig.*, No. 11 Civ. 1918, 2014 WL 3928606, at *10 n.1

(S.D.N.Y. Aug. 12, 2014) (labeling this "the most natural reading" of Second Circuit authority);

*In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15 CIV. 6369, 2018 WL 1449206, at *7 (S.D.N.Y.

Mar. 23, 2018).  "'Culpable participation'" must be pled "with the same particularity as

scienter." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F.

Supp. 3d 401, 438–39 (S.D.N.Y. 2014) ("Because Section 20(a) liability requires an

individualized determination . . . of the defendant [control person's] particular culpability, it

stands to reason that an allegation of culpable participation requires particularized facts of

the *controlling person's* conscious misbehavior or recklessness.") (collecting cases) (internal

quotations omitted, emphasis in original); *Lihua Int'l*, 2016 WL 1312104, at *18.  As such,

"'detailed allegations regarding the state of mind of the control person'" must be alleged in order

to survive dismissal, including "the who, what, when, where and how." *In re Glob. Crossing*,

2005 WL 1907005, at *12 (collecting cases); *see also In re Burlington Coat Factory Sec. Litig.*,

114 F.3d 1410, 1422 (3d Cir. 1997).

For the same reasons that Plaintiffs fail to plead Stiehl's scienter, *see* Sealed Air's Motion

to Dismiss, Section II, they also fail to plead Stiehl's culpable participation for purposes of

Section 20(a).  *See Lihua Int'l*, 2016 WL 1312104, at *18 ("Because the [c]omplaint fails to

plead even recklessness with the particularity required by the PSLRA . . . in the § 10(b) context, it also necessarily fails to do the same in the § 20(a) context.") (internal citations omitted).  The Complaint's allegations concerning Stiehl's "associations" with the Company, ¶¶ 111, 154, do not help, because claims of culpable participation cannot be supported solely by a defendant's corporate position.  *See, e.g.*, *Inv. Tech. Grp.*, 2018 WL 1449206, at *8.  And Plaintiffs' conclusory assertion that Stiehl was a "culpable participant" cannot survive the heightened pleading standard required here.  *See* ¶ 154; *see Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905, 1996 WL 494904, at *11 (S.D.N.Y. Aug. 30, 1996) ("A 'bare allegation of control does not suffice' . . . because the Court need not accept as true 'allegations which amount simply to legal conclusions.'") (internal citations omitted).

For the reasons above, Plaintiffs' claims under Count II against Stiehl must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint as against Stiehl.

Dated: September 4, 2020           COOLEY LLP
       New York, New York


                                    By:   _/s/ William J. Schwartz_____
                                          William J. Schwartz
                                          Michael J. Berkovits

                                    55 Hudson Yards
                                    New York, New York 10001
                                    Telephone: (212) 479-6000
                                    E-mail: wschwartz@cooley.com
                                            mberkovits@cooley.com

                                    *Attorneys for Defendant William G. Stiehl*

11