UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| UA LOCAL 13 PENSION FUND, UA LOCAL 13 & EMPLOYERS GROUP INSURANCE FUND, PLUMBERS & STEAMFITTERS LOCAL 267 PENSION FUND, and PLUMBERS & STEAMFITTERS LOCAL NO. 7 PENSION AND WELFARE FUNDS, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-10161-LLS |
| | |
| Plaintiffs, | HON. LOUIS L. STANTON |
| v. | |
| SEALED AIR CORPORATION and WILLIAM G. STIEHL, | |
| Defendants. | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## DEFENDANT SEALED AIR CORPORATION'S MOTION TO DISMISS

Vincent Levy
Peter J. Brody
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, New York  10017
(646) 837-5120
vlevy@hsgllp.com
*Attorneys for Defendant*
*Sealed Air Corporation*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.      The Complaint Does Not Allege Falsity With Particularity ................................... 3

        A.      Statements About The EY Retention Process Were Not False............................ 3

                1.      Mere Labels Of "Illegality" Are Inadequate............................................. 3

                2.      The Few Facts In The Complaint
                        Do Not Discharge Plaintiffs' Burden............................................. 5

                3.      Plaintiffs' Belated Effort To Introduce New Details Fails ........................ 6

        B.      Statements About Corporate Policies And Controls Are Not False ...................... 7

                1.      Sealed Air's Statements About Its Code of Conduct
                        and Code of Ethics Cannot Support Liability ............................................. 7

                2.      Sealed Air's Disclosure Controls Cannot Be A Basis For Liability........... 9

        C.      Items 303, 307 And 503 Did Not Require Any Disclosures................................. 10

II.     Plaintiffs Do Not Meet Their Burden to Plead Scienter With Particularity ..................... 11

        A.      Plaintiffs' Theories Of Scienter Fail Ass A Matter Of Law ................................. 11

                1.      Plaintiffs Have Abandoned Their
                        Policy-And-Controls Theories And Their
                        Required-Disclosures Theories.................................................... 12

                2.      Plaintiffs Do Not Adequately Plead Scienter
                        For The EY-Retention Statements ............................................. 13

        B.      Plaintiffs' Factual Allegations Are Inadequate...................................................... 16

III.    The Complaint Does Not Adequately Allege Materiality .............................................. 19

IV.     Further Leave to Amend Should Be Denied.................................................................. 21

CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .................................................................................... 3

*Barrett v. PJT Partners Inc.*,
  2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017)........................................................... 8

*Bellioff v. Eaton Vance Corp.*,
  481 F.3d 110 (2d Cir. 2007) ................................................................................ 22

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*,
  964 F. Supp. 2d 1128 (N.D. Cal. 2013) ............................................................ 8, 18

*Chien v. Skystar Bio Pharm. Co.*,
  566 F. Supp. 2d 108 (D. Conn. 2008)..................................................................... 3

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) ................................................................................ 22

*City of Roseville Empls. Ret. Sys. v. EnergySolutions, Inc.*,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................... 13

*Const'r Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
  433 F. Supp. 3d 515 (S.D.N.Y. 2020) ..................................................................... 7

*Copeland v. Fortis*,
  685 F. Supp. 2d 498 (S.D.N.Y. 2010) ................................................................... 22

*CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*,
  2019 WL 8165893 (S.D.N.Y. Oct. 9, 2019)........................................................... 22

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018) ................................................... 9, 10, 11,17

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.*,
  323 F. Supp. 3d 393 (S.D.N.Y. 2018) ................................................................... 13

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) .................................................................................. 1

*Finger v. Pearson PLC*,
  2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019)...................................................... 22

*Food Holdings, Ltd. v. Bank of Am. Corp.*,
  423 F. App'x 73 (2d Cir. 2011) ............................................................................ 22

*Gamm v. Sanderson Farms, Inc.*,
 944 F.3d 455 (2d Cir. 2019) .................................................................................. 3

*Godinez v. Alere Inc.*,
 272 F. Supp. 3d 201 (D. Mass. 2017) ..................................................................... 18

*Greenhouse v. MCG Cap. Corp.*,
 392 F.3d 650 (4th Cir. 2004) ................................................................................ 21

*Higginbotham v. Baxter Int'l, Inc.*,
 495 F.3d 753 (7th Cir. 2007) ................................................................................ 11

*Holwill v. AbbVie Inc.*,
 2020 WL 5235005 (N.D. Ill. Sept. 1, 2020) ........................................................... 7

*Hutchison v. Deutsche Bank Sec. Inc.*,
 647 F.3d 479 (2d Cir. 2011) ................................................................................. 11

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v.*
 *Royal Bank of Scotland Grp., PLC*,
 783 F.3d 383 (2d Cir. 2015) ................................................................................... 1

*In re Alstom SA Sec. Litig.*,
 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ................................................................ 6, 18

*In re Banco Bradesco S.A. Sec. Litig.*,
 277 F. Supp. 3d 600 (S.D.N.Y. 2017) .................................................................... 10

*In re Braskem S.A. Sec. Litig.*,
 246 F. Supp. 3d 731 (S.D.N.Y. 2017) ...................................................................... 8

*In re Crude Oil Commodity Litig.*,
 2007 WL 2589482 (S.D.N.Y. Sept. 8, 2007)........................................................... 22

*In re Eaton Vance Mut. Funds Litig.*,
 403 F. Supp. 2d 310 (S.D.N.Y. 2005) ..................................................................... 22

*In re Eletobras Sec. Litig.*,
 245 F. Supp. 3d 450 (S.D.N.Y. 2017) ....................................................................... 8

*In re Fairway Grp. Holding Corp. Sec. Litig.*,
 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015) ............................................................ 18

*In re Galena Biopharma, Inc. Sec. Litig.*,
 117 F. Supp. 3d 1145 (D. Or. 2015) ....................................................................... 17

*In re Gildan Activewear, Inc. Sec. Litig.*,
 2009 WL 4544287 (S.D.N.Y. Dec. 4, 2009) ........................................................... 22

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  2014 WL 2815571 (S.D.N.Y. June 23, 2014) ................................................................. 9

*In re Grupo Televisa Securities Litigation*,
  368 F. Supp. 3d 711 (S.D.N.Y. 2019) ....................................................................... 7

*In re Henry Schein, Inc. Sec. Litig.*,
  2019 WL 8638851 (E.D.N.Y. 2019) ........................................................................ 14

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................. 17

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
  423 F. Supp. 2d 364 (S.D.N.Y. 2006) ...................................................................... 22

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 622 (S.D.N.Y. 2014) ......................................................................... 17

*In re Proshares Tr. II Sec. Litig.*,
  2020 WL 71007 (S.D.N.Y. Jan. 3, 2020) ................................................................. 11

*In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*,
  2008 WL 4962985 (S.D.N.Y. Nov. 20, 2008).......................................................... 22

*In re Sanofi Sec. Litig.*,
  155 F. Supp. 3d 386 (S.D.N.Y. 2016) ........................................................................ 7

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001) ...................................................................................... 18

*In re Signet Jewelers Limited Sec. Litig.*,
  2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)............................................................ 7

*In re Tenaris S.A. Sec. Litig.*,
  2020 WL 6018919 (S.D.N.Y. Oct. 9, 2020)............................................................... 7

*In re Veon Ltd. Sec. Litig.*,
  2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018).......................................................... 5

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020) ................................................................................ 12, 13

*Kaltman v. Key Energy Servs., Inc.*,
  447 F. Supp. 2d 648 (W.D. Tex. 2006) ................................................................... 18

*Lopez v. Ctpartners Exec. Search Inc.*,
  173 F. Supp. 3d 12 (S.D.N.Y. 2016) .................................................................. 11, 21

iv

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
    797 F.3d 160 (2d Cir. 2015) ...................................................................... 14, 22, 23

*Luna v. Marvell Tech Grp.*,
    2017 WL 2171273 (N.D. Cal. May 17, 2017) .......................................................... 18

*Madu, Edozie, & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
    265 F.R.D. 106 (S.D.N.Y. 2010) ........................................................................ 6

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    513 F.3d 702 (7th Cir. 2008) ................................................................ 12, 13, 14

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ........................................................................... 4

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
    2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ......................................................... 6

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
    2013 WL 1831427 (E.D. Mo. Apr. 30, 2013) ........................................................ 18

*Richardson Greenshields Sec., Inc. v. Lau*,
    825 F.2d 647 (2d Cir. 1987) .......................................................................... 23

*Schiro v. Cemex*,
    438 F. Supp. 3d 194 (S.D.N.Y. 2020) ................................................................. 4

*Schwab v. E\*TRADE Financial Corporation*,
    258 F. Supp. 3d 418 (S.D.N.Y. 2017) ............................................................... 15

*Silvercreek Management, Inc. v. Citigroup, Inc.*,
    248 F. Supp. 3d 428 (S.D.N.Y. 2017) ........................................................... 15, 16

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d. Cir. 2019) ....................................................................... 8, 19

*Sokol Holdings, Inc. v. BMD Munai, Inc.*,
    2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009) ....................................................... 23

*Spielman v. Gen. Host Corp.*,
    402 F. Supp. 190 (S.D.N.Y. 1975) ................................................................... 21

*Stratte-McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) .......................................................................... 10

*Teamsters Allied Benefit Funds v. McGraw*,
    2010 WL 882883 (S.D.N.Y. Mar. 11, 2010) .......................................................... 4

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
   531 F.3d 190 (2d Cir. 2008) ............................................................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).................................................................................... 1, 16

*Van Dongen v. CNinsure Inc.*,
   951 F. Supp. 2d 457 (S.D.N.Y. 2013) ............................................................ 18

*Y-Gar Cap. LLC v. Credit Suisse Grp. AG*,
   2020 WL 71163 (S.D.N.Y. Jan. 2, 2020) ....................................................... 13

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................... 5

**PRELIMINARY STATEMENT**

Plaintiffs characterize this as "a straightforward case of securities fraud," but it is instead a failed effort to shoehorn an unsubstantiated complaint about allegedly-unethical corporate conduct into a securities-fraud claim. The securities laws impose a tall standard for pleading a Section 10(b) claim, requiring Plaintiffs to state, with particularity, (1) what statements were false and *why*, and (2) facts leading to a "strong inference" of scienter – one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Plaintiffs must also show that the supposedly-false statements were material to an investor purchasing or selling the company's stock – that is, there must be a "substantial likelihood" that "reasonable" investors weighing whether to buy or sell shares would have found any allegedly omitted information "important in deciding how to act." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009)). The operative complaint (Dkt. 32, "Compl.") does not meet these standards – as Plaintiffs' brief in opposition to Defendants' motions to dismiss (Dkt. 42, the "Opposition" or "Opp'n") confirms – and must be dismissed.

Plaintiffs seek to hold Sealed Air liable for two categories of public statements. First, Plaintiffs attack statements to the effect that Sealed Air retained Ernst & Young ("EY") after a "competitive" and "comprehensive" process involving several internationally recognized firms. Plaintiffs' challenge to these statements – to which they devote the bulk of their Opposition – fails at each of the falsity, scienter, and materiality steps. As to falsity, Plaintiffs present only conclusory labels, and have not adequately pleaded that "illegal" conduct took place and was undisclosed. Recognizing as much, Plaintiffs try to recast their theory by introducing new details

from a *Wall Street Journal* article published before the operative complaint was filed, a bid the Court should reject as untimely and futile. As to scienter, Plaintiffs have not linked any of the statements in issue to anyone with knowledge of their supposed falsity or an intent to commit securities fraud, and, in any event, have also not alleged facts supporting a "strong inference" that anyone committed securities fraud. And, Plaintiffs have no cogent explanation for why any investor would have considered Sealed Air's omissions material when made.

Second, Plaintiffs attack various of Sealed Air's statements about its corporate policies and controls. These related theories, which Plaintiffs treat as an afterthought in their Opposition, cannot stand. As to falsity: Many of the challenged statements are non-actionable puffery as a matter of law, and, in any event, Plaintiffs do not adequately allege that any omission they complain about rendered any of Sealed Air's statements untrue. Plaintiffs' effort also fails because they make no effort to defend their claim at the scienter stage (as they cannot). And, finally, Plaintiffs have no plausible explanation for why Sealed Air's statements were material – they don't even try – rendering them subject to dismissal.

Finally, Plaintiffs' bid to recast their omission claims as supposed violations of SEC rules mandating disclosure of certain contingencies (i.e., Items 303, 307, and 503) fails. Plaintiffs have identified no information that Sealed Air was required to disclose under the SEC rules Plaintiffs cite, and Plaintiffs have not established scienter (or materiality).

Because of these flaws, and because Plaintiffs cannot fix them, the Corrected Amended Complaint should be dismissed with prejudice, and leave to amend should be denied.

## **ARGUMENT**

### **I.     The Complaint Does Not Allege Falsity With Particularity**

#### **A.     Statements About The EY Retention Process Were Not False**

The gravamen of Plaintiffs' complaint is that Stiehl supposedly engaged in "illegal bid rigging" during the EY retention process – and that Sealed Air violated the securities laws by describing the EY retention process as "competitive" and "comprehensive" while failing to disclose Stiehl's supposedly "illegal" conduct.  Compl. ¶¶ 44, 45(a), 52, 54(a).  Plaintiffs' allegations fail to satisfy the PLSRA's standard for pleading falsity.

#### **1.     Mere Labels Of "Illegality" Are Inadequate**

To begin, Plaintiffs are wrong that the Court can assume the truth of the complaint's allegations that the EY search process was "illegal" and not "competitive."  Opp'n at 2.  Under established Circuit law, if a public statement is alleged to be false for failure to disclose "illegal acts"—as Plaintiffs have alleged here—then it is not enough to say that "illegal acts" were not disclosed; the "underlying illegal acts must also be pleaded with particularity, in accordance with the heightened pleading requirement of Rule 9(b) and the PLSRA."  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 465 (2d Cir. 2019); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  *Gamm* means Plaintiffs were required to describe what supposedly "illegal" acts took place, and to explain why those undisclosed acts rendered the company's statements false.  *See* Dkt. 34 ("Opening Br.") at 8-9 (collecting authority); *see also Chien v. Skystar Bio Pharm. Co.*, 566 F. Supp. 2d 108, 115 n.4 (D. Conn. 2008) ("adjectives" do not meet the Rule 9(b) standard).

The complaint does not do this.  Consider Paragraphs 44 and 52 of the complaint, which Plaintiffs put forward in their Opposition as the best evidence that they have satisfied the PSLRA.  Opp'n at 10.  Paragraph 45(a), which tries to explain why the Sealed Air statements

quoted in paragraph 44 are false, claims only that Sealed Air "did not follow a competitive search process . . . but rather followed an illegally manipulated process through which bids were rigged." Paragraph 54(a), which supposedly contradicts the Sealed Air statement set out in Paragraph 52, fares no better – there, Plaintiffs claim that Sealed Air "did not follow 'a comprehensive request for proposal process' or a 'competitive search process,'" but that EY's hiring "was the result of illegal bid rigging." In neither of these places – or anywhere else – does the complaint explain what Stiehl did, why it was "illegal," or why the alleged failure to disclose his supposedly "illegal" acts rendered the company's statements false. The complaint's allegations of illegality are without back-up or substance – and thus fail under Circuit law.

With no answer to the case law, Plaintiffs try to walk back their theory, asserting that, although the complaint repeatedly claimed Sealed Air should be liable for failure to disclose "illegal" conduct, "the falsity of Defendants' statements about the hiring of EY is ***not dependent*** on whether or not the conduct alleged [in the complaint] was illegal." Opp'n at 14 (emphasis added). It was Plaintiffs' burden to explain in their complaint *why* the EY retention statements were false, *see Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000), and they chose to do that by alleging that Sealed Air failed to disclose an "unlawful" or "illegal" scheme.[1] Thus, per *Gamm* and as in *Schiro v. Cemex, S.A.B. de C.V.*, Sealed Air's statements can be misleading for purposes of the complaint "only if" the underlying conduct was against the law. 438 F. Supp. 3d 194, 198 (S.D.N.Y. 2020). Plaintiffs have not made and cannot make such allegations – and they cannot change their case just because, during motion-to-dismiss briefing, they discovered that the

---

[1] *See, e.g.*, Compl. ¶¶ 45(a) ("an illegally manipulated process"); 45(b) ("unlawful bid rigging"); 51(a) ("illegal bid-rigging"); 54(a) (same); 62(a) (same); 100 (Stiehl's "unlawful acts"); 103(b) ("unlawful bid rigging by Stiehl"); 105 ("the process . . . was unlawful"); 107 ("Defendants were engaged in an unlawful manipulation").

4

allegations they chose to make in the complaint do not satisfy the standard for pleading falsity under Circuit law.[2] *See, e.g.*, *Teamsters Allied Benefit Funds v. McGraw*, 2010 WL 882883, at *8 (S.D.N.Y. Mar. 11, 2010) ("These alleged facts and this theory of liability are not pleaded in the complaint, however, and it is well-settled that a claim for relief may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks and alteration omitted)).

### 2. The Few Facts In The Complaint Do Not Discharge Plaintiffs' Burden

Given Plaintiffs' decision to abandon their "illegality" theory, Plaintiffs can point to only two facts to support their falsity assertions:  that (1) the government launched investigations and (2) Stiehl was fired "for cause."  These data points do not discharge Plaintiffs' burden to state "with particularity" the facts establishing that Sealed Air's statements about the EY retention process were false – and they also do not provide a way around *Gamm*'s clear instructions.

Neither the government investigations nor Stiehl's firing establish that the company made false statements when it said it had engaged in a "search process" that "involved several international registered public accounting firms."  Nor do Plaintiffs' two data points show Sealed Air misspoke when it said it solicited bids from multiple firms.  And, the investigation and firing do not show that any firm submitted a better, or more "competitive," bid than EY.

In short, the facts pleaded in the complaint are consistent with Sealed Air's statements, and none of the pleaded facts explains with particularity "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).  And the complaint does not contain facts that show, with particularity, *how* Defendants "affirmatively created an impression of a state of

---

[2] Perhaps in some hypothetical world, Sealed Air's statements could have been rendered false by the non-disclosure of *legal* activity.  Opp'n at 14.  But, having hitched their wagons to the theory that what Stiehl did was "illegal," Plaintiffs cannot now argue that his statements were false for other reasons. *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *19 (S.D.N.Y. Aug. 30, 2018).

affairs that differ[ed] in a material way from the one that actually existed." *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at \*7 (S.D.N.Y. Apr. 14, 2020) (quoting *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 453 (S.D.N.Y. 2005)).

### 3.      Plaintiffs' Belated Effort To Introduce New Details Fails

In the end, Plaintiffs all but concede that the allegations in their complaint are inadequate by quickly trying to pivot to a February 2020 article published in the *Wall Street Journal*, which reported that Stiehl allegedly "tipp[ed]" EY with unspecified "details" of KPMG's bid.  Dkt. 43-1; *see also* Opp'n at 11.  This single allegation – which the *Journal* published months before Plaintiffs filed their operative complaint – is one that Plaintiffs did not in fact plead, and it is thus not before the Court on this motion.[3]  The Court should ignore Plaintiffs' improper effort to shore up their complaint.

In any event, this new detail, even were it properly before the Court, could not save Plaintiffs' complaint, because it does not establish, with the requisite particularity, that the EY-retention process was neither "comprehensive" nor "competitive."  The article instead shows, just like Sealed Air disclosed, that Sealed Air employed a process that involved multiple international accounting firms: the *WSJ* article reports that KPMG and EY – both international accounting firms – submitted bids.  It follows that there was a process involving multiple firms. By the same token, the *WSJ* article does not show that the process was "not competitive."  Again, although the article suggests Stiehl provided EY with details about KPMG's bid, neither the complaint nor anything in the *WSJ* article explains what information Stiehl supposedly gave, or how any tip affected "competitiveness."  Thus, they do not suggest anyone submitted a better or

---

[3] "Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie, & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010).

more "competitive" bid than EY, that EY prevailed despite having an inferior bid because of its relationship with Stiehl, or that the tip made a difference. The *Wall Street Journal* article, in short, is entirely consistent with the notion that the prize went to the most "competitive" bid, so that Plaintiffs' complaint would properly be dismissed even with the detail set out in the *Journal*.

**B.** **Statements About Corporate Policies And Controls Are Not False**

**1.** **Sealed Air's Statements About Its Code of Conduct and Code of Ethics Cannot Support Liability**

Generally, statements about corporate codes of conduct are inactionable puffery under the securities laws, and are as a matter of law "incapable of forming the basis for a Section 10(b) claim." *Const'r Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 532 (S.D.N.Y. 2020); *see also, e.g.*, *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 401-02 (S.D.N.Y. 2016). Sealed Air's statements about its code of conduct and employee policies fall within this rule – and cannot support securities-law liability.

Not one of Plaintiffs' cases is to the contrary, or remotely in point. Plaintiffs cite *In re Grupo Televisa Securities Litigation*, but the case was about "statements" that "proclaimed the concrete steps Televisa was taking to ensure that its executives and employees did not violate the prohibition on bribery." 368 F. Supp. 3d 711, 721-22 (S.D.N.Y. 2019). *In re Tenaris S.A. Securities Litigation* – which involved a company subject to a deferred prosecution agreement – similarly addressed statements about concrete actions the company would take in particular scenarios (*i.e.*, the company "does not accept or forgive any instance of bribery"), not standards like those here. 2020 WL 6018919, at *7-8 (S.D.N.Y. Oct. 9, 2020). *In re Signet Jewelers Ltd. Securities Litigation* and *Construction Laborers Pension Trust* likewise involved statements about what the company would do in certain situations. 2018 WL 6167889, at *17 (S.D.N.Y. Nov. 26, 2018); 433 F. Supp. 3d at 533-34. So too *Holwill v. AbbVie Inc.*, which concerned the

7

statement that AbbVie "never offer[s] or provide[s] anything of value to healthcare professionals" in violation of the law.[4]  2020 WL 5235005, at *4 (N.D. Ill. Sept. 1, 2020).

There is nothing like that alleged here.  Plaintiffs recite and challenge generic statements about Sealed Air's code of conduct, such as the company's statements about its "reputation" for ethics, that its "standard of business ethics goes beyond compliance with law," that employees "must treat" confidential information as such, and that executives "should be scrupulous in avoiding a conflict of interest."  Compl. ¶¶ 49-50.  These are not falsifiable statements of fact that could support securities liability.  *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) ("[G]eneral statements about reputation . . . and compliance with ethical norms are inactionable 'puffery.'"); *Barrett v. PJT Partners Inc.*, 2017 WL 3995606, at *5-6 (S.D.N.Y. Sept. 8, 2017).

Finally, the claims would fail even if the statements Plaintiffs put in issue were capable of being false, because Plaintiffs have not explained how any of Sealed Air's statements about its corporate policies were actually untrue.  *See Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1142 (N.D. Cal. 2013) (no falsity alleged where plaintiff "point[ed] to a litany of ethical guidelines that state only what HP's ethical policies were, not whether HP's employees were in compliance with them at the time").  As Judge Engelmayer recognized in *In re Braskem S.A. Securities Litigation*, "[t]here is an important difference between a company's announcing rules . . . and its factually representing that no officer has engaged in . . . forbidden conduct."  246 F. Supp. 3d 731, 756 (S.D.N.Y.

---

[4] *In re Eletobras Sec. Litig.*, 245 F. Supp. 3d 450 (S.D.N.Y. 2017), is simply inapplicable.  That case involved a company that wielded its corporate compliance policies "in response to specific press reports" that a "money laundering investigation . . . had widened to include Eletobras projects."  *Id.* at 463.  Thus, the court reasoned that "repeated references made specifically in response to damaging media reports" could be interpreted as a representation that Eletobras was differently-positioned than the investigation's other targets.  *Id.*  Here, on the other hand, Sealed Air made the challenged statements in routine corporate filings, in response to nothing.

2017) (distinguishing cases where corporate statements "went beyond aspirational or general puffery, so as, for example, to falsely represent a record of past or present compliance with such policies"). Thus, the allegation that Stiehl engaged in wrongdoing in connection with EY's retention does not show that the company did not have the policies stated, or that any of the company's statements about its policies was untrue.

### 2.    Sealed Air's Disclosure Controls Cannot Be A Basis For Liability

Plaintiffs' allegations about Sealed Air's disclosure controls likewise fail. Plaintiffs challenge Sealed Air's assertion that the company's "Chief Executive Officer and Chief Financial Officer" evaluated the controls and procedures and "concluded that our disclosure controls and procedures were effective at the 'reasonable assurance' level." Compl. ¶ 47. This is false, Plaintiffs say, as Sealed Air "represented that such controls were operating effectively" even though it "did not follow a competitive search process" when hiring EY. Opp'n at 22.

Plaintiffs miss the mark for three reasons. *First*, the complaint does not allege (let alone with particularity) that the two Sealed Air executives who had evaluated the controls reached a different conclusion than the one they disclosed. *Second*, Plaintiffs do not plead Stiehl's allegedly "illegal" conduct with particularity (per *Gamm*). And *third*, Plaintiffs do not (and cannot) explain how one instance in which the controls allegedly failed (when misconduct was not detected) means the disclosure controls were not effective at the "reasonable assurance" level. *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 811-12 (S.D.N.Y. 2018) ("[A]n unlawful payment is not necessarily the result of faulty internal controls."); *cf. In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2014 WL 2815571, at *5 (S.D.N.Y. June 23, 2014) (statements about policies to address conflicts of interests could be false given allegations of repeated "clear and egregious conflicts of interest"). Nor have Plaintiffs substantiated with any factual assertions (or logical

9

explanations) their claim that the controls were "designed" to fail.  *See, e.g.*, Compl. ¶ 62(b); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 648 (S.D.N.Y. 2017).

Plaintiffs' disclosure controls theory must therefore be dismissed.  *See Das*, 332 F. Supp. 3d at 812 (dismissing where the plaintiff "offer[ed] no facts as to what internal controls were insufficient or not followed, how any internal controls may have been insufficient or not followed, or what actions could or should have been taken to avoid the alleged violation").[5]

### C.    Items 303, 307 And 503 Did Not Require Any Disclosures

Plaintiffs' assertions that Sealed Air violated Items 303, 307, and 503 by failing to make required disclosures, which are essentially the inverse of Plaintiffs' EY-retention and policies and controls theories and arise out of a failure to disclose the same (supposed) misconduct, likewise fail.  Besides being deficient because Plaintiffs fail to allege the other elements of a Section 10(b) violation, *see* Opening Br. at 13, neither theory Plaintiffs maintain is viable.

*Item 307*.  Sealed Air showed that Item 307 does not provide a basis for liability. Plaintiffs' brief in opposition does not dispute the point, meaning the claim is abandoned.

*Item 303*.  Plaintiffs' Item 303 claim is founded in speculation, and thus fails.  Item 303 requires a company to disclose information "the registrant believes to be necessary to an understanding of its financial condition," and applies only to facts "reasonably likely to have material effects on the registrant's financial conditions or results of operations."  *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015).  Plaintiffs, however, allege no facts (just conclusory assertions) showing that Stiehl's misconduct – which is not adequately pleaded in the complaint – was in any way likely to subject Sealed Air to liability.  Compl.

---

[5] Plaintiffs make much of the fact that Stiehl signed SOX certifications, but Stiehl's signature does not change the fact that the complaint does not allege a deficiency in controls at the "reasonable assurance" level.

¶ 103.  But, at the time the representations were made – well before any investigation began – it was speculative that any misconduct would come to light, much less that the company's financial condition would be damaged (and indeed there is no well-pleaded claim that even today the company's financial position might be damaged).  *See Das*, 332 F. Supp. 3d at 811 (finding that "the duty arose only when the investigation" into alleged misconduct "began"); *see also Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 33-34 (S.D.N.Y. 2016).  Item 303 does not require disclosure of remote possibilities – and even after the SEC subpoenaed Sealed Air, it was allowed time to investigate before a disclosure obligation arose.  *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 761 (7th Cir. 2007) ("Taking the time necessary to get things right is both proper and lawful. Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal.").

     ***Item 503.***  Plaintiffs' Item 503 claim fails for the same reason.  Item 503 requires a company to tell the market about "the most significant factors that make the offering speculative or risky."  *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 n.4 (2d Cir. 2011).  "Events that are not 'reasonably likely to be material under Item 303' are not among the 'most significant factors' rendering an offering speculative or risky under Item [503]."  *In re Proshares Tr. II Sec. Litig.*, 2020 WL 71007, at *9 (S.D.N.Y. Jan. 3, 2020) (quoting *Hutchison*, 647 F.3d at 484 n.4).

## II.   Plaintiffs Do Not Meet Their Burden to Plead Scienter With Particularity

### A.   Plaintiffs' Theories Of Scienter Fail As A Matter Of Law

     As just explained, Plaintiffs base their securities-fraud case on two categories of supposedly-false statements:  they contend that Sealed Air (1) allegedly made false statements in November 2014 and April 2015 when it described the EY retention process as "competitive" and "comprehensive," and (2) allegedly made false statements about its corporate policies during the

class period.  Then, in an effort to repackage those omission claims, Plaintiffs argue that Sealed Air violated Items 303 and 503 by failing to disclose certain risks.

To establish that Sealed Air violated the securities laws, Plaintiffs must plead (and ultimately prove) that a corporate employee who made the at-issue statements (or, in the case of Item 303 and 503, someone who failed to do so) acted with fraudulent intent to mislead investors.  *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 707-08 (7th Cir. 2008) ("To establish corporate liability … requires 'look[ing] to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.'").  This, they do not – and the complaint should be dismissed for this reason as well.

> **1.** **Plaintiffs Have Abandoned Their Policy-And-Controls Theories And Their Required-Disclosures Theories**

To begin, the Court should hold that Plaintiffs fail to plead scienter with respect to Sealed Air's statements about its corporate policies and controls, and as to Plaintiffs' required-disclosure theories.  Sealed Air moved to dismiss Plaintiffs' entire complaint for failure to properly plead scienter.  Opening Br. at 16.  In response, though, Plaintiffs defend only their first theory (the EY-retention theory).  Thus, Plaintiffs argue:

> Based on these allegations – which must be accepted as true – it is at least equally likely that Defendants engaged in conscious misbehavior or recklessness when falsely representing to investors that the auditor selection process was "competitive" and "comprehensive" when Stiehl himself rigged the process to ensure EY was retained.

Opp'n at 30.  Plaintiffs mention Sealed Air's statements about its policies and controls just *once* during their twelve-page discussion of scienter, consigning the only reference to a footnote (and

even there, Plaintiffs defense of their scienter allegations only amounts to wordplay based on the *Wall Street Journal* article, which is not part of the record on this motion).  Opp'n at 28-40. And, Plaintiffs do not reference Items 303 or 503 *at all*.  *See id.*

Scienter, as Plaintiffs are aware, must be pleaded with particularity as to each statement alleged to be false.  15 U.S.C. § 78u-4(b)(2).  Scienter must likewise be established for each violation of an SEC disclosure requirement challenged under Section 10(b).  *Y-Gar Cap. LLC v. Credit Suisse Grp. AG*, 2020 WL 71163, at *9 (S.D.N.Y. Jan. 2, 2020) ("Establishing a Section 10(b) claim on the basis of failure to comply with Item 503 also logically requires a showing of scienter.").  By failing to defend their allegations, Plaintiffs have abandoned their claims.  *See, e.g.*, *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018). The Court should therefore dismiss the policy-and-controls and the required-disclosures theories.

### 2.     Plaintiffs Do Not Adequately Plead Scienter For The EY-Retention Statements

Plaintiffs have also not adequately alleged scienter in support of their first theory (the EY-retention theory), because Plaintiffs have not alleged anyone at the company committed securities fraud.  *Jackson*, 960 F.3d at 98; *Makor*, 513 F.3d at 707-08.  The only individual featured in the complaint who might qualify is Stiehl, but Plaintiffs cannot attribute the EY-retention statements directly to Stiehl—and therefore cannot show that Stiehl ever *intended to mislead investors*—because Stiehl did not sign either of the filings in issue.[6]  *See City of Roseville Empls. Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 416-17 (S.D.N.Y. 2011) (finding that the "Individual Defendants who signed the Registration Statements 'made' the statements under *Janus*," but that two defendants who did not sign "cannot be held liable").

---

[6] Sealed Air joins in Defendant William G. Stiehl's argument regarding the inapplicability of the group pleading doctrine.

13

It is true, in some cases, that the knowledge of a senior employee can be imputed to a corporation, but that employee must, in some way, be "responsible for the statements made." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 197 (2d Cir. 2008).  It is not enough to identify an employee with knowledge of 'the truth' (on the one hand) and a misstatement (on the other) – the plaintiff's allegations must connect the employee and the misstatement, for otherwise a plaintiff would improperly "attribute to a corporation a state of mind [*i.e.*, an intent to mislead *investors*] that none of the employees" had.  *Makor*, 513 F.3d at 708.  Plaintiffs must plead facts leading to a "strong inference" that *someone* at the company acted with scienter – the intent to mislead investors – and if the *only* persons at the company alleged to have knowledge of the truth are *not* tied to any corporate statements alleged to be false, then there is no strong inference that *anybody* intended to mislead investors.  Mere knowledge that the statements of another are false does not "strongly" show securities fraud.

Here, the only evidence Plaintiffs cite for their implied-scienter claim is Stiehl's title when the 2014 and 2015 statements were made:  "Chief Accounting Officer."  Opp'n at 39 & n.26.  Although that title sounds impressive, Plaintiffs make no substantive allegations about what the duties of the "Chief Accounting Officer" were, nor do they bother to situate the role within Sealed Air's corporate hierarchy or to allege any actual facts showing that Stiehl had any role in preparing the specific statements challenged here.[7]  Compl. ¶ 24; *cf. In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *23 (E.D.N.Y. 2019) (concluding that the complaint

---

[7] Plaintiffs' reliance on *Loreley* is misplaced.  *Loreley* arose under New York law (rather than federal law), involved statements made by an individual that the court understood to have been involved in the transactions in issue, and contained far more detail about the executive's knowledge of the underlying facts than the complaint in this case.  *Cf. Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 177-79 (2d Cir. 2015) (describing the facts, including "email exchanges and circumstances" that "suffice[d] to create a strong inference" of scienter).

alleged an individual defendant was "management level," and imputing his knowledge to the corporation, based on allegations far more detailed than here).  Without that information, there is no well-pleaded, particular claim that Stiehl intended to mislead investors.

*Schwab v. E\*TRADE Financial Corporation*, 258 F. Supp. 3d 418 (S.D.N.Y. 2017), is instructive of Plaintiffs' pleading failures.  There, the plaintiff tried to charge E\*TRADE with the state of mind of its "General Counsel and Executive Vice President."[8]  *Id.* at 435.  But there – as here – the complaint set out no "particularized allegations" against him other than his job title.  *Id.* at 434; *see also* Compl. ¶ 24.  As Judge Koeltl explained, "[t]he plaintiff cannot allege scienter by merely pointing to [the defendant's] job title."  *Schwab*, 258 F. Supp. 3d at 434-35.  Without details about the defendant's duties, Judge Koeltl explained, an individual defendant "stands in the same position as any other unidentified employee within the corporate defendants who does not necessarily have ultimate authority over what the corporate defendants said."  *Id.* at 435.  Absent particularized allegations connecting him or her to any false statements, the court concluded, "the plaintiff cannot plausibly ascribe scienter" to any individual defendant, "let alone impute his intent to the corporate defendants."  *Id.*  So too here – Plaintiffs have set out no particularized facts as to what Stiehl supposedly did, and have not explained how he was involved in preparing or disseminating the challenged statements.

Consider also Judge Oetken's decision in *Silvercreek Management, Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428 (S.D.N.Y. 2017).  There, the plaintiff alleged "that there were individuals" working for the defendant corporation "who were likely aware of" the misconduct

---

[8] The plaintiff there apparently made much of the fact that the individual defendant eventually became CEO.  258 F. Supp. 3d at 434-35.  The court dismissed this allegation as irrelevant, because he was not in that role when the conduct in issue occurred.  *Id.*  The Court should ignore Plaintiffs' repeated references to Stiehl's eventual service as CFO for the same reason.

"and, separately, that there were individuals who recommended that [the plaintiff] purchase" the securities in issue. *Id.* at 440. Judge Oetken rejected the plaintiff's attempt to plead scienter through these two separate groups, because the plaintiff "d[id] not sufficiently connect any" of the identified individuals "to *both* knowledge of [the subject company's] wrongdoing and the dissemination of the misstatements at issue." *Id.* at 441. Some individuals, the court recognized "may have been aware of [the subject company's] financial reality," as Plaintiffs conclusorily allege that Stiehl was of the "bid-rigging." *Id.* Others "may have been involved in the publication" of the materials containing the misstatements. *Id.* "But absent a pleaded connection between these two discrete groups of employees," Judge Oetken held, the plaintiff "has not alleged a strong inference of scienter." *Id.*

This case is no different: even if the company's EY-retention statements were false, and even if Stiehl knew these statements were false, it does not follow that Stiehl intended to mislead investors buying or selling securities – unless he himself had something to do with the company's dissemination of the statements in issue. To properly allege that connection and state of mind, Plaintiffs were required to plead facts leading to a "strong inference" of scienter, but they allege no facts whatsoever alleging that anyone responsible for Sealed Air's disclosures knew and intended them to be false, and Stiehl's knowledge cannot be imputed to those who made statements on Sealed Air's behalf. In short, Plaintiffs failed to plead facts leading to an inference that is "at least as compelling as any opposing inference," *Tellabs*, 551 U.S. at 314, that *someone* intended to mislead investors. And without that, Sealed Air cannot be liable.

## B.     Plaintiffs' Factual Allegations Are Inadequate

These legal defects aside, dismissal is also appropriate because the facts pleaded about Stiehl's state of mind are insufficient. The few facts Plaintiffs include in their complaint – that

16

Stiehl was fired, the government opened investigations (one of which is now closed), and some insiders sold stock – do not come close to meeting the PSLRA's "strong inference" standard.

***For Cause Termination***.  In a bid to save their case, Plaintiffs misleadingly quote from their complaint to argue they alleged facts showing that Stiehl was fired because of misconduct in the EY-retention process.  Opp'n at 31 ("Sealed Air fired Stiehl 'for cause' precisely because of his conduct in connection with 'the process by which the Company selected its independent audit firm . . . .'" (emphasis omitted)).  But, standing alone, Stiehl's firing cannot establish an intent to mislead investors.  *Das*, 332 F. Supp. 3d at 815 ("[T]erminations alone are insufficient to satisfy" scienter "element."); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 632-33 & n.84 (S.D.N.Y. 2014) (collecting authority that resignation can support, but not establish, scienter).

And, in any event, Plaintiffs' incorrectly recite their own allegations.  Plaintiffs alleged first that the SEC opened an investigation into Sealed Air related to a range of topics, including "the Company's accounting for income taxes" and "its financial reporting."  Compl. ¶ 89 (emphasis omitted).  Then, Plaintiffs contend the SEC issued a subpoena related to "the process by which the Company selected its independent audit firm."  *Id.* ¶ 92.  Then, Plaintiffs allege Sealed Air opened an internal investigation, and "[a]s a result of *such examination*," Stiehl was terminated.  *Id.* ¶ 92 (emphasis added and omitted).  Thus, the complaint does not actually allege that Sealed Air fired Stiehl for "bid rigging" – which, in any event, would not show he intended to mislead investors.  *Id.* ¶ 127; *see also id.* ¶ 13 (alleging Stiehl was fired "following an internal review by the Audit Committee concerning the investigation by the SEC").[9]

---

[9] The cases Plaintiffs rely on for argument that Stiehl's "for cause" termination supports a strong inference of scienter are inapposite.  *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1167 (D. Or. 2015), recognized that the executive's resignation was "minimal" support for a showing of scienter.  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273-74

***SEC and DOJ Investigations.***  The SEC and DOJ investigations also do not bear the weight Plaintiffs assign them.  The DOJ investigation has now closed, with no charges filed.  Thus, it is hardly probative of an ill intent.  *See Godinez v. Alere Inc.*, 272 F. Supp. 3d 201, 219 (D. Mass. 2017).  That the SEC is still investigating and that Sealed Air later replaced EY likewise does not help Plaintiffs meet their obligation to allege a securities fraud, prior to discovery, with particularity, and to have the pleaded facts lead to a "strong inference" that Stiehl intended to mislead investors.

***Stock Sales.***  Plaintiffs' allegations about stock sales only *undermine* their fraud case.  Plaintiffs' call Stiehl's stock sales "unusually timed," but there is no fact behind their chosen adverb.  Opp'n at 36-37.  As explained in Sealed Air's opening brief, none of Stiehl's sales were close in time to any relevant public statement, the sales occurred at regular intervals, Stiehl retained substantial holdings, and there is no evidence about Stiehl's profits.  Opening Br. at 17-20.  And Plaintiffs' reliance on *Scholastic* is misplaced; there, the defendant sold "80 percent of his holdings within a matter of days for a not insignificant profit, after having sold no Scholastic stock" for two years.  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 75 (2d Cir. 2001).

In sum, Plaintiffs have not alleged facts, with particularity, leading to the required inference of securities fraud.  *See Cement & Concrete Workers*, 964 F. Supp. 2d at 1143

---

(N.D. Cal. 2000), *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 2013 WL 1831427, at *3 (E.D. Mo. Apr. 30, 2013), *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 506 (S.D.N.Y. 2005), and *Kaltman v. Key Energy Servs., Inc.*, 447 F. Supp. 2d 648, 664 (W.D. Tex. 2006), involved executives fired or suspended in statements explaining their misconduct – unlike this case.  In *Luna v. Marvell Tech Grp.*, 2017 WL 2171273, at *5 (N.D. Cal. May 17, 2017), the company implemented systemic reforms, something Plaintiffs do not allege.  *In re Fairway Grp. Holding Corp. Sec. Litig.*, 2015 WL 249508, at *14, *16 (S.D.N.Y. Jan. 20, 2015), involved a fired executive with a financial incentive in the fraud, something Plaintiffs have not shown for Stiehl.  *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 473-74 (S.D.N.Y. 2013), involved defendants aware of information contradicting *their own* statements to investors.

(distinguishing between an executive who "did not want his allegedly unethical conduct known" and one who had intent to mislead investors).  Not every alleged case of unethical executive conduct is a securities-fraud case.  Although Plaintiffs now say that Stiehl acted improperly and was fired for his conduct (which is not adequately pleaded) they do not connect the dots to plausibly allege a "strong inference" of *securities fraud* (as opposed to unspecified unethical conduct) consistent with the PSLRA.  The complaint should therefore be dismissed.

III.     **The Complaint Does Not Adequately Allege Materiality**

The complaint should also be dismissed because Plaintiffs fail to plausibly allege that the details of the EY-retention process (or any other omissions) were material to investors deciding whether to buy or sell stock.  As explained in our opening brief, Sealed Air hired a top-of-the-market firm, and Plaintiffs do not allege anyone submitted a better bid than EY, that EY made any errors, that EY lacked expertise or objectivity, that Sealed Air should have hired someone else, or that Sealed Air's results need restatement.  The securities laws care about disclosures affecting the overall mix of information securities investors consider when they buy or sell stock – not trivial matters of alleged mismanagement or corporate wrongdoing.

In the face of this, Plaintiffs assert that the details of the EY retention process must have been material because Sealed Air put the matter of EY's retention to a shareholder vote.  Opp'n at 23.  But the fact that shareholders voted on the ultimate decision of *whether to retain EY* – a fact not discussed anywhere in the complaint – is irrelevant, because that fact in no way establishes that there was "'a substantial likelihood that a reasonable person would consider'" the details of the EY retention bidding process "'important *in deciding whether to buy or sell shares of stock*.'"  *Singh*, 918 F.3d at 63 (emphasis added).  These are entirely different matters, and Plaintiffs supply no cogent explanation for why investors making *investment decisions* would

19

have cared about the fairness of the process by which EY was hired. And it is no answer to say that shareholders picked EY based on those disclosures.[10]

Plaintiffs also argue that prior accounting issues at Sealed Air rendered the details of EY's retention material. The assertion that Sealed Air had reasons to switch away from ***KPMG, a different auditor,*** has no bearing on whether an investor would have found the details of the process of ***EY's*** retention material to ***an investment decision***. Plaintiffs imply that the process by which EY was retained somehow affected its ability to do the job, but that claim is nowhere stated in the complaint, still less is it supported by any factual allegations (much less any fact). Again, there is nothing in the complaint that would even remotely suggest EY lacked the requisite skill or objectivity, and Plaintiffs' claim indeed is not focused on that issue at all.

Plaintiffs' attempt to rely on stock drops that followed allegedly "corrective" disclosures is likewise unavailing. Plaintiffs argue that the EY retention process was relevant because Sealed Air's stock fell after the company disclosed that Stiehl had been fired "for cause." Opp'n at 25. The fact that the company's shares fell on the news that, among other things, its CFO had been fired in 2019 for unspecified reasons allegedly associated with an internal investigation following an SEC investigation is scant evidence that the particular details of the EY retention process were material to an investor buying or selling securities – as those allegedly omitted details were not disclosed by the company at the time the stock price fell.

In the end, Plaintiffs' contention is just that the EY retention statements were material because they were untrue: the statements about the EY retention were important to investors,

---

[10] The ACAP report Plaintiffs cite does not support their claim that investors would have cared about the *process* of auditor selection. Instead, the report establishes that investors care about the *result*. As the report indicates, "[r]atification allows shareholders to voice a view on the audit committee's *work*" and to "ensure that the auditor is suitable for the company's size and financial reporting needs." Dkt. 43-3 at 5 (emphasis added).

Plaintiffs argue, because an investor would have cared about "Stiehl's misconduct."  Opp'n at 26.  This circular argument improperly collapses the materiality question into the falsity inquiry. For that reason, courts have long recognized that "[t]he determination of materiality is to be made upon all the facts as of the time of the transaction and not upon a 20-20 hindsight view long after the event."  *Spielman v. Gen. Host Corp.*, 402 F. Supp. 190, 194 (S.D.N.Y. 1975). That Sealed Air's search process was (in Plaintiffs' conclusory telling) not "competitive" or "comprehensive" does not mean the details of that search process mattered to investors buying or selling stock.  *Lopez*, 173 F. Supp. 3d at 29-30 (citing *Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 656 (4th Cir. 2004)).[11]

## IV.     Further Leave to Amend Should Be Denied

In a last-ditch bid to save their case, Plaintiffs seek leave to file a new consolidated amended complaint, which would be their third.[12]  The Court should decline Plaintiffs' request.

**A.**  Plaintiffs' request to amend – consigned to a footnote on the last page of their brief – is procedurally insufficient.  The Second Circuit and courts in this District have repeatedly rejected requests for leave to amend made cursorily, and particularly those without reference to the facts that might be added to save the plaintiffs' claims, as procedurally improper.  *See, e.g.*,

---

[11] Plaintiffs' theory based on Sealed Air's disclosures about its policies and controls – which merits only a sentence in Plaintiffs' materiality argument – likewise fails.  Opp'n at 26.  The statements are puffery, *see* Opening Br. at 11-12 and *supra* at Section I.B, which cannot be material.

[12] In actuality, it would be Plaintiffs' fourth pleading, but because one amendment corrected only technical errors, the Court should not consider it for purposes of this analysis.  Plaintiffs filed a first complaint on November 1, 2019.  Dkt. 1.  Following the Court's order appointing lead plaintiff, Dkt. 17, Plaintiffs amended their complaint by filing a Consolidated Amended Complaint, containing substantive revisions of their allegations, on June 4, 2020.  Dkt. 29.  Then, on July 13, 2020, Plaintiffs filed another pleading, the operative Corrected Amended Complaint, to fix 'technical' deficiencies in their Consolidated Amended Complaint but making no substantive changes to their factual allegations.  Dkt. 32.  As a result, any "First Amended Consolidated Amended Complaint" would be Plaintiffs' third try at stating a claim.

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014); *Food Holdings, Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011); *Finger v. Pearson PLC*, 2019 WL 10632904, at *15 (S.D.N.Y. Sept. 16, 2019) (Sullivan, J.); *In re Gildan Activewear, Inc. Sec. Litig.*, 2009 WL 4544287, at *4-5 (S.D.N.Y. Dec. 4, 2009); *In re Crude Oil Commodity Litig.*, 2007 WL 2589482, at *3 (S.D.N.Y. Sept. 8, 2007); *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 409 (S.D.N.Y. 2006).

"While pleading is not 'a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable claim emerges." *CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, 2019 WL 8165893, at *5 (S.D.N.Y. Oct. 9, 2019) (Sullivan, J.) (quoting *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) (Lynch, J.)).  Plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies." *Bellioff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (quoting *In re Eaton Vance Mut. Funds Litig.*, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005)).

"It is the plaintiffs' responsibility to plead their case adequately, and a court may deny a plaintiff leave to re-plead when that party has . . . been given ample prior opportunity to allege a claim." *Copeland v. Fortis*, 685 F. Supp. 2d 498, 507 (S.D.N.Y. 2010) (quoting *Refco*, 2008 WL 4962985, at *2) (rejecting bid to file second amended complaint where "plaintiffs should have been aware" of relevant settled law).  The Court should do so here.[13]

---

[13] Plaintiffs justify their request with a citation to *Loreley*, but that case is inapt.  There, the district court denied leave to amend after holding a pre-motion conference and, at the conference, required plaintiffs to decide whether to amend "to cure deficiencies not yet fully briefed and decided" or to proceed with the motion to dismiss, thereby "forfeit[ing] the opportunity to

**B.** In any event, Plaintiffs' request for leave is meritless. Leave to amend is properly denied when it would be futile to allow amendment. *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987). Likewise, a party's delay cuts against allowing leave. *Id.*

Here, leave to amend would be futile. The only new fact Plaintiffs have pointed to is the single detail disclosed in the *Wall Street Journal* article appended to their Opposition. But, as explained above, that would not get them over the hump as to falsity, nor would it correct Plaintiffs' flawed scienter and materiality allegations.

Moreover, Plaintiffs' request is too late. Plaintiffs were required to act with diligence. The *Wall Street Journal* article Plaintiffs cite was published in February 2020 – ***before*** Plaintiffs filed their Consolidated Amended Complaint. Plaintiffs therefore could have alleged the information it contains, but chose not to. The Court should not give them the opportunity now – after putting the Court and the parties to the task of fully briefing and deciding a motion to dismiss – for a do-over. *See, e.g.*, *Sokol Holdings, Inc. v. BMD Munai, Inc.*, 2009 WL 2524611, at *10 (S.D.N.Y. Aug. 14, 2009) (denying leave to amend; "Plaintiffs would be hard pressed to argue that any of the facts on which they now rely are new").

## CONCLUSION

The complaint should be dismissed with prejudice for failure to state a claim. Leave to amend should be denied as untimely and futile.

DATED:  New York, New York
        January 15, 2020

By:  /s/ Vincent Levy

---

replead." 797 F.3d at 190. The Circuit in *Loreley* court also held that a district court may deny leave to amend when the plaintiff does not explain how it would amend its claims. *See id.* Here, Plaintiffs have already amended their complaint, have seen a motion to dismiss identifying the flaws in their pleading, and do not spell out the facts they would add.

23

Vincent Levy
Peter J. Brody
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue, 14th Floor
New York, New York  10017
(646) 837-5120
vlevy@hsgllp.com
*Attorneys for Defendant*
*Sealed Air Corporation*

24