M2i3ualc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UA LOCAL 13 & EMPLOYERS GROUP
INSURANCE FUND,

                  Plaintiff,              New York, N.Y.

            v.                            19 CV 10161 (LLS)

SEALED AIR CORPORATION, et
al.,

                  Defendants.

------------------------------x          Conference

                                         February 18, 2022
                                         12:00 p.m.

Before:

                  HON. LOUIS L. STANTON,

                                         District Judge

                        APPEARANCES

ROBBINS GELLER RUDMAN & DOWD, LLP
     Attorneys for Plaintiff
BY:  ROBERT M. ROTHMAN
        ROBERT D. GERSON

HOLWELL SHUSTER & GOLDBERG, LLP
     Attorneys for Defendant Sealed Air
BY:  VINCENT G. LEVY
        MARGO HOPPIN
        JONATHON R. LA CHAPELLE

COOLEY, LLP
     Attorneys for Defendant William G. Stiehl
BY:  MICHAEL BERKOVITS

M2i3ualc

M2i3ualc

(In open court; case called)

MR. ROTHMAN:  Good afternoon, your Honor.  Robert Rothman from Robbins Geller Rudman & Dowd on behalf of the plaintiffs.

MR. GERSON:  Good afternoon, your Honor.  Robert Gerson from Robbins Geller Rudman & Dowd on behalf of the plaintiffs.

MR. LEVY:  Good afternoon, your Honor.  Vincent Levy on behalf of defendant Sealed Air from Holwell Shuster & Goldberg, and I am here with my colleagues Margo Hoppin and Jonathon La Chapelle.  Ms. Hoppin will be speaking primarily on our behalf today.

MR. BERKOVITS:  Good afternoon, your Honor, Michael Berkovits from Cooley.

THE COURT:  Who is going to be speaking for the plaintiffs?

MR. ROTHMAN:  I will, your Honor.  Robert Rothman from Robbins Geller Rudman & Dowd.

THE COURT:  Okay.  Good afternoon all of you.  Be seated unless you are speaking.

Mr. Rothman, the reason I thought that a conference might be useful is that it seemed to me that the case is rather at a turning point, and that is turning away from the case about Stiehl and turning towards its effect on the market and the connection to particular amounts of damages.

And the more I thought about that, the more I thought that I would like to hear you explain why, in light of the thorough SEC reports, which as far as I've heard so far are admissible in evidence, why you need the information you're seeking in your discovery request.

MR. ROTHMAN:  Your Honor --

THE COURT:  That's really what is the purpose of this meeting.

MR. ROTHMAN:  Your Honor, two responses.  First, there's no one --

THE COURT:  I think it better if you speak from the lectern.

MR. ROTHMAN:  The lectern is facing the wrong way.  I don't think that would help anyone.

THE COURT:  Well, if it is a toss up in terms of audibility for the reporter, then you can speak from wherever you want.

MR. ROTHMAN:  Your Honor --

THE COURT:  That's better audibility.

MR. ROTHMAN:  I have two responses to what your Honor just mentioned.

The first is, the defendants have not consented to the actual factual findings in the SEC reports in the SEC orders. They did not agree, or they did not admit or deny what is in there, but they have not admitted what is in there, in the SEC

M2i3ualc

orders.  In fact, with respect to the allegations that we raise in our complaint, they have denied those allegations in their answers.

The second thing is, eventually we're going to have to present this case to a jury.  And we would want to be able to do that the way we normally present a case to the jury, by showing them the documents and showing them the evidence that support our claim, not just an SEC finding about what someone else found.  We think the documents themselves are much more powerful in front of the jury.  And it will help the jury understand why this type of information did lead to damages to class members.

THE COURT:  Is the material that you're seeking material that was before the SEC?

MR. ROTHMAN:  Yes, your Honor.  The subject of this dispute is the material that the defendants themselves collected and produced to the SEC, as well as any statements they made to the SEC that we would obviously use as admissions of the party or statements of a party.

So all we're asking for in terms of this dispute is exactly what they gave to the SEC and the Department of Justice, which is conducting its own investigation.  There is no burden on the defendants to doing that, and there is nothing disproportionate about giving us the exact same information they've already given to another entity that's investigating

the same misconduct.

THE COURT:  Who's speaking for Sealed Air?

MS. HOPPIN:  Good afternoon, your Honor.  I'm Margo Hoppin representing Sealed Air.

As an initial matter, your Honor, the SEC orders, Sealed Air is actually not a party to either of those orders, so those are not admissible as to Sealed Air.

Secondly, plaintiffs' description of what they're demanding just now is inconsistent with what they said in their letter to your Honor and in their request to us.  If their requests are indeed limited to documents produced to the SEC, that is a useful limitation that we agree should be in place. But the SEC investigations and any other investigations are just far, far, far broader than the issues in this case.  So the idea that it is appropriate under Federal Rule 26(b) to get everything that was given to any government over a nine-year period when the case is about a four-month auditor selection process is not credible, your Honor.

THE COURT:  What about that, Mr. Rothman?

MR. ROTHMAN:  Not surprisingly, your Honor, I disagree with that.

The first is with respect to the broader investigation, the SEC issued two subpoenas and the Department of Justice issued one subpoena.  At the time the subpoenas were issued, Sealed Air issued reports to the shareholders telling

M2i3ualc

them what the subpoenas covered.  The first subpoena covered --

that was on June 25, 2018 -- accounting and financial reporting

and other matters.  The second SEC subpoena said the process by

which the company selected its independent auditor.  And the

grand jury subpoena that they received requested documents

relating to the termination of their prior CFO, Mr. Stiehl, and

relating to the process by which the company selected its

independent auditor.

        Those are the exact issues we have in our case here.

The company was not a party to those, as they just said.

They've not accepted responsibility for what happened in those

proceedings.  And the company very well may have made

admissions to the SEC regarding Mr. Stiehl's conduct.  And we

are entitled to that as well as all of the documents relating

to these issues.

        With respect to the overbroadness of the government's

subpoena, we offered to compromise and we said, show us the

actual subpoenas and we'll work with you to see whether or not

they are actually broader than what it is we are looking at

here.  They won't let us even see the subpoenas.  So that leads

me to believe that we have to go with what they told

shareholders at the time.

        THE COURT:  Excuse me.  That isn't what you said in

your letter.  In your letter you said it would help you

understand the scope of the case as the SEC saw it.

MR. ROTHMAN:  Your Honor, I don't believe that's exactly what we said.  What we said is it would help us understand the scope of the investigation.

THE COURT:  I'm sure it isn't exactly what you said.  But it is along the lines of the argument you are making.

MR. ROTHMAN:  I'm sorry, your Honor.  I didn't hear what you just said.

THE COURT:  I'm sorry.

I'm sure it isn't exactly what you said.  But it is the thrust of what your argument was.

MR. ROTHMAN:  Yes.  The thrust of our argument absolutely --

THE COURT:  Then let's not quibble about exactly what you said.

MR. ROTHMAN:  The thrust of our argument was absolutely we want the documents you gave to the SEC.  If you are telling us that the SEC investigation was broader, show us the subpoenas, we'll look at them, and we'll let you know whether we agree with that.

But we just can't take their word for it that the SEC was looking at our things and therefore they don't have to provide us with documents relevant to our case.

THE COURT:  Ms. Hoppin, is the subpoena you got from the SEC a matter of public record?

MS. HOPPIN:  No, your Honor.  It is not.

M2i3ualc

MR. ROTHMAN:  Your Honor, I believe I would be able to issue a FOIA request and get that subpoena.  It would just take an inordinate amount of time to get that from the SEC.  In fact, I believe I would be able to get most of the documents that they are withholding from the SEC, because the SEC's investigation is completed and they wouldn't have an ongoing investigation defense to a FOIA request.

But, under the time period we are under, I don't have the two or three years I've learned it takes for the SEC to respond to FOIA requests, and I shouldn't have to go through that burden, because the defendant is a defendant in this case. And as we said in our letter, we're willing to start with the subpoenas, and then if it is broader, limit it to certain categories in there.

But based upon what they told the shareholders at the times they received the subpoenas, this is the exact same issues we're investigating here.  The auditor selection process, the firing of Mr. Stiehl, the firing of the auditors. There is no distinction.

THE COURT:  It is the findings of the government report that are admissible under Rule 803.  If the findings of the SEC are admitted in evidence, why do you need more?  I understand that for jury purposes you'd like to have the fresh duplication.  But for purposes of limiting discovery, why doesn't that give you enough to take depositions at least and

M2i3ualc

get your information that way?

MR. ROTHMAN:  I would need the documents to ask the witnesses about.  If a witness tells me at a deposition, no, that didn't happen, the SEC got that wrong, I have nothing to cross-examine the witness about with.  I don't have the actual document that the SEC relied upon.  And there may be other documents that the SEC didn't rely upon.

Quite frankly, your Honor, the SEC sometimes doesn't have the resources that I may be willing to devote to a case to uncover certain evidence that may help my case, that the SEC may have been less interested in or didn't review.  I shouldn't be hamstrung by the SEC's investigation.

And again, there is no burden here, your Honor.  They have the documents.  They're on a disc.  They have been reviewed, they're not privileged because they were already produced to the SEC.  All they have to do is give me the disc.

THE COURT:  But the production of documents to the SEC is not the same as spreading them on the public record or giving them to an adversary in litigation.  The SEC has very broad powers, and it may have rested its report on only a small percentage of the material that was given to it.  And that is what makes your request for everything that was given to it to be susceptible to the response that's too broad.

MR. ROTHMAN:  Again, your Honor, we have no way of testing that until we see the subpoenas.  But nonetheless, we

M2i3ualc

issued our own requests --

THE COURT:  Testing it with a subpoena will not answer that question.  Because the material given in response to the subpoena may have been broader than this case requires.

MR. ROTHMAN:  Well, your Honor, we've also propounded our own requests, and with respect to those requests, this is the second issue that's before the Court, is the time period of our requests.

The auditor selection process, according to the SEC's report, began in February 2013.  Shortly thereafter, Mr. Stiehl was already colluding with the favored auditor to rig the process.  They don't want to give us documents until 17 months after the process began.  The SEC got documents from the very beginning.  They won't give us the documents from the beginning.  They won't give us documents to well after the process was already rigged and the rigged bids were sent out. They also want to cut us off before the end of the SEC investigation, when they very well may have been making statements to the SEC that I can use as statements of a party in my case.  I'm entitled to cross-examine witnesses with their statements, I'm entitled to cross-examine the company what statements they made to the SEC, if there are things they are saying that are inconsistent with what they're telling me.

THE COURT:  Well, that's mere rhetoric.  You're entitled to that as far as material relevant to this case is

M2i3ualc

concerned.  And that is the issue we're talking about.

MR. ROTHMAN:  Again, your Honor, I have no way of knowing what the SEC was looking at, other than what they told shareholders the SEC was looking at.  I have no way of knowing what the DoJ was looking at, other than what they told shareholders the DoJ was looking at, and they said the DoJ was looking for documents relating to the termination of our former CFO and relating to process by which the company selected its independent auditors.  That's what they told shareholders.  They didn't say it was any broader than that.

THE COURT:  Well, but that brings us right back to the question if the SEC digested that material and issued findings which are admissible evidence of facts, why do you need more than that in order to make a record which supports those facts?

MR. ROTHMAN:  As we earlier discussed, the jury issue and the second issue is that the company has not agreed to those facts by the SEC.  The company says they weren't a party to that proceeding, and therefore, these facts would not be admissible in their current form against the company.

THE COURT:  What?

MR. ROTHMAN:  That's what the company just said.

THE COURT:  Yes, I'm not sure I understand.  I wanted to come back to you, Ms. Hoppin, about why the report is not admissible as against you.

MR. LEVY:  Your Honor, perhaps I could take that.  It

is a settlement, so there are two issues with it.  One is we're not a party to it.  But the second issue is it is a settlement, and there's circuit law saying that a consent decree issued by the SEC is not admissible under 403.  I do not have the citation handy because I did not expect it to come up today.  But I believe there is circuit law saying a consent decree issued by the SEC is not admissible to prove the truth of the matters set forth in such a decree.

THE COURT:  What is your position on that going to be at trial?  How do you handle that procedurally?

MR. LEVY:  I believe it is not admissible under the rules of evidence, but I would need to confirm.  I want to let Ms. Hoppin address the balance of it but I --

THE COURT:  So you would be entitled to an instruction to the jury that that's only admissible against the other defendants?

MR. LEVY:  I believe our position --

THE COURT:  Is that correct?

MR. LEVY:  I believe our position would be it is not admissible as to anybody, so it would not come into evidence.  It is a settlement, so under 403, it is not admissible to prove the truth of the matters set forth therein.

THE COURT:  Against anybody?

MR. LEVY:  Against anybody, that's right.

THE COURT:  Well, I think --

M2i3ualc

MR. LEVY:  But --

THE COURT:  I think I've got to have these matters briefed.  They're interesting questions, and they're genuine questions which arise at the stage we're at in the litigation, and they're very interesting.  When the party has all he needs on one leg of the case, how far he can go reduplicating that for jury purposes.  And that's really the only reason that I think you've given so far for getting the material.

MR. ROTHMAN:  The SEC also did not --

THE COURT:  A lot of evidence is admissible without being consented to by the other side.  That's rather common in our cases.

MR. ROTHMAN:  Your Honor, the other issue is that we have alleged a number of false and misleading statements on a statement-by-statement basis as we must in our complaint.  The SEC's report doesn't go through statement by statement the way we're required to do so.

But, be that as it may, your Honor, we are happy to brief the issue if that's what your Honor prefers.  But what we've just heard from the defendants is, I can't use the SEC order against anyone.  And they're not going to give me the documents to recreate what the SEC did.  That puts me at a decided disadvantage.

THE COURT:  If it's correct.

MS. HOPPIN:  If I may, I'd love to respond to that.

M2i3ualc

THE COURT:  Sure.

MS. HOPPIN:  As an initial matter, I don't have the complete disclosure statements in front of me, but the representation, the quotes that plaintiff's counsel read are misleadingly narrow in terms of the scope described in the disclosures explaining the subpoenas had been served.

We have agreed, your Honor, to produce materials produced to the SEC that are actually relevant to plaintiff's claims.  We have agreed to produce and are in the process of producing anything relevant to the alleged disclosures that are still at issue in this case after your Honor's opinion on the motions to dismiss.  And there is just no basis in the federal rules for plaintiffs to have entitlement to this general scope of a much larger government investigation.  That is a prime example of a fishing expedition which 26(b) prohibits.

THE COURT:  Why is that unsatisfactory, Mr. Rothman?

MR. ROTHMAN:  Your Honor, for two reasons.  First is, as we discussed, the time period.  They are not giving me documents from the beginning of the period, they're not giving me documents from the end of the period.

The second is, at least from what they disclosed --

THE COURT:  That's a question we haven't come to yet, but since you mention it, why do you need those documents?

MR. ROTHMAN:  Well, in the SEC order, it talks about how Mr. Stiehl joined the company in 2013.  In February 2013,

M2i3ualc

he was beginning the auditor selection process.  Shortly thereafter, he was colluding with the favored auditor.  They won't give me documents from that earlier period.  They only want to give me documents after the rigged bids were sent out, 17 months after the process began.

THE COURT:  Now, let me repeat my question.  Why do you need that material?  If the offense was committed by the issuance of the statement, why do you need to go back to the history about its generation?

MR. ROTHMAN:  Because to prove that the statement was false and to prove it was made with scienter, a fraudulent state of mind, I have to explain what happened in 2013 when he was rigging the bids to prove that he knew what he was doing in the middle of 2014 was improper and his statements were improper.  I can't prove that unless I know what happened before that.  Otherwise, on the face of the statements, they appear accurate, unless you know that a year and a half before --

THE COURT:  The short answer is, you need it to prove the falsity of the statement.  Is that correct?

MR. ROTHMAN:  The falsity and the scienter of the person making the statement.  The state of mind of the person making the statement.  Which is an element of my claim.

THE COURT:  What about that, Ms. Hoppin?

MS. HOPPIN:  As I believe we wrote in our letter to

M2i3ualc

your Honor, we had not taken --

THE COURT:  Be patient with me.  Tell me again.

MS. HOPPIN:  Yes.  In our view, the plaintiff's letter to your Honor requesting a motion to compel was premature.  We were in the middle of a meet and confer process negotiating these very issues.  Plaintiffs request material going back to I think it's February of 2013 as to all 38 of their extraordinarily broad discovery requests.

THE COURT:  Ms. Hoppin.

MS. HOPPIN:  Yes.

THE COURT:  Mr. Rothman has just said he needs that material to prove that the statement was false and the state of mind of the author of the statement.

Now, could you address that?

MS. HOPPIN:  Yes, your Honor.  With respect to narrow questions like that one, maybe.  We were certainly open to a proposal from plaintiff's counsel about select discovery going back before July 1.

Our position is that the process, this whole case is about a selection process that began on July 1 of 2014.  So, our position would be that they do have all of the information they need from the documents that cover that four-month process.

That said, again, this letter motion was a little bit premature.  The idea that they need more than a year's worth of

M2i3ualc

documents going before that going across very broad requests is to us a non-starter.  But a narrower proposal was in the process of something we were meeting and conferring on.

I should note our position on going back to July 1, 2014 was itself a concession.  That's a number of months before the class period begins and, in fact, a little bit before the RFP went out that began the auditor selection process at issue in all of the alleged misstatements.

THE COURT:  Your offer to produce the material to the SEC -- to produce to the government what you considered the relevant documents that you produced to the SEC is still open, right?  And it hasn't been performed.  Is that correct?

MS. HOPPIN:  We've -- in our responses to their requests for documents, we've certainly agreed to produce those documents that were produced to the government that are responsive to their requests as we --

THE COURT:  Please answer the words of my question.

MS. HOPPIN:  I'm sorry.  Would your Honor repeat the question?

THE COURT:  Is that offer still open and has not been performed or accepted?  Or have you done it?

MS. HOPPIN:  We are partway through performance, your Honor.  We've made two document productions.  One was just insurance policies, so one document production that is responsive to their requests in this action, and another is

forthcoming, we hope quite soon.  So we are in the process of performing that exact offer.  We have also during our meet and confers suggested --

THE COURT:  So you are in the process, whether the government accepts it or not, of producing to the government those documents that you gave to the SEC which you think are relevant to this case.

MS. HOPPIN:  We are not currently producing anything to the government, your Honor.  But we are in the process of producing to plaintiffs --

THE COURT:  Have you produced those or have you not started the process?

MS. HOPPIN:  We have started the process, your Honor.

THE COURT:  You have started the process.

MS. HOPPIN:  Yes.

THE COURT:  Yeah.  When do you think you'll have it finished?

MS. HOPPIN:  We anticipate making our second production next week, your Honor.  We have proposed to plaintiffs that they --

THE COURT:  Ms. Hoppin.

MS. HOPPIN:  Yes.

THE COURT:  I'm sorry I'm not clear.  I was just asking when you think you'll finish it.

MS. HOPPIN:  That's tough to say, your Honor.

M2i3ualc

THE COURT:  Yes.  What's the answer?  If you don't know, you don't know.

MS. HOPPIN:  At this moment I don't know, your Honor.

THE COURT:  Does anybody speaking for the defendants have any idea?

MR. LEVY:  I'm sorry, your Honor, we don't know.  We are in the process of the review and we intend to provide documents as they are produced.  But, I don't know when we will be finished.

THE COURT:  Well, I'm really not asking you exactly when, and of course nobody knows.  What I really want is the best estimate.

MR. LEVY:  Your Honor, I'm hoping it is a matter of a few more weeks, but I hesitate to make that prediction.

THE COURT:  A few more weeks.

MR. LEVY:  I would imagine, your Honor.

THE COURT:  I was leading up to asking you why not await the end of that process, and then evaluate where you stand and what you need?

MR. ROTHMAN:  Well, we served our discovery requests last October.  The Court set a discovery cutoff for this June.  If I wait a few more weeks to figure out that they haven't produced, and even now they haven't agreed to produce from the beginning of the period, from when the auditor selection process was beginning.  So I know I am going to need more

M2i3ualc

information.

But, I couldn't wait any more, your Honor. You entered an order saying a June cutoff. It will be at least a few more weeks, and this is the first time I'm hearing a few more weeks. We've tried to press them on that issue and we haven't gotten an answer. So now I have to wait until March with a June cutoff and take all the depositions.

THE COURT: Mr. Rothman, we are speaking today. And what we decide today is going to be based on the situation as it is today. Recriminations about past delays do not strengthen your argument.

What I'm trying to get at is the right thing to do and the most practical thing to do today, not to listen to a history of non-performances and delays. Those can usually be found on both sides.

MR. ROTHMAN: Your Honor, I apologize if it came across that way. My point was there is a discovery cutoff coming up in less than four months, or in approximately four months.

THE COURT: Uh-huh.

MR. ROTHMAN: That's the only point I was making. If we have to wait a few more weeks, it will be very hard for us to complete discovery in the time.

THE COURT: Sure.

MR. ROTHMAN: I was not meaning to cast aspersions on

M2i3ualc

anyone.

THE COURT:  Well, if discovery is going well, but is necessarily taking longer than four months, that can always be extended.  It is a stroke of the pen made on an application showing reasonable behavior by the parties.

MR. ROTHMAN:  I didn't want to be presumptuous in that regard.  I was hoping that would be the case.  As of now there was an order outstanding, and I wanted to do everything we could do to comply with it.

I appreciate your Honor's guidance in that regard, and I have no doubt the parties will work cooperatively and effectively.  And in the event that we do need an extension, we will bring it to your Honor.  But I didn't want to be presumptuous and just assume the Court would grant an extension under these circumstances.

THE COURT:  Well, most of these kinds of disputes can be handled by more reasonableness on each side.  And it's usually worthwhile, because the time, effort, and expense of motions, bringing these things up for orders of productions that I could have confidence in would be much greater than the cost to either side of a sensible recognition of realities.

I would like, in any event, a brief from Ms. Hoppin on the point and the extent of admissibility of the SEC findings and what you envision as the proper management of that at trial.

M2i3ualc

MS. HOPPIN:  Gladly, your Honor.

THE COURT:  Because I used to do some trial work myself when I was practicing, and I never had much confidence in the instructions that evidence received in open court was accessible against only one of the parties.  If it made any real difference, the remedy was to seek a severance.  But, that's just old sea stories.

Let's proceed with the discovery, and with the option of either party seeking a further conference with the Court, moving in the direction of a submission of the whole conflict to the Court.  I would regard that from the litigants' standpoint as a last desperate measure.

All right.  Thank you very much.

MS. HOPPIN:  Thank you, your Honor.

THE COURT:  Does anybody want to say anything further? I don't mean to cut you off.

MR. ROTHMAN:  Nothing from the plaintiffs, your Honor.

MS. HOPPIN:  Nothing from Sealed Air.

THE COURT:  Have a good weekend.

(Adjourned)