UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————— x

UA LOCAL 13 & EMPLOYERS GROUP
INSURANCE FUND, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

    vs.

SEALED AIR CORPORATION and
WILLIAM G. STIEHL,

                   Defendants.

—————————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:19-cv-10161-LLS-RWL

<u>CLASS ACTION</u>

PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
SETTLEMENT, CERTIFICATION OF THE
CLASS, AND APPROVAL OF NOTICE TO
THE CLASS

4866-7621-2528.v2

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................................1

II.    SUMMARY OF THE ACTION.....................................................................3

III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................5

    A.     Terms of the Settlement ....................................................................5

    B.     The Standards for Preliminary Approval of a Proposed Settlement........................6

    C.     The Settlement Satisfies the Rule 23(e)(2) Factors ..................................8

        1.     Plaintiffs and Their Counsel Have Adequately Represented the Class.................8

        2.     The Proposed Settlement Was Negotiated at Arm's Length ..................10

        3.     The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal..................11

        4.     The Proposed Method for Distributing Relief Is Effective........................12

        5.     Attorneys' Fees and Expenses ....................................13

        6.     The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion .........................14

        7.     Class Members Are Treated Equitably.........................14

    D.     The Settlement Also Satisfies the Remaining *Grinnell* Factors ............14

        1.     The Stage of the Proceedings.........................14

        2.     The Risks of Maintaining the Class Action Through Trial.........................15

        3.     The Ability of Defendants to Withstand a Greater Judgment....................16

        4.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.........................16

IV.    THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE .........................17

V.     CERTIFICATION OF THE CLASS IS APPROPRIATE................................19

VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS................................21

4866-7621-2528.v2

**Page**

VII.    CONCLUSION..................................................................................................................22

4866-7621-2528.v2

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)..................................................................................................21

*Billhofer v. Flamel Techs., S.A.*,
    281 F.R.D. 150 (S.D.N.Y. 2012) ...................................................................................20, 21

*Butler v. Suffolk Cnty.*,
    2016 WL 11480705 (E.D.N.Y. June 15, 2016),
    *report and recommendation adopted sub nom. Lynch v. Suffolk Cnty.*,
    2016 WL 4508343 (E.D.N.Y. Aug. 29, 2016)........................................................................18

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
    310 F.R.D. 69 (S.D.N.Y. 2015) ...........................................................................................21

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992)........................................................................................15

*Christine Asia Co. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).........................................................................11

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)...............................................................................................10, 16

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................................................... *passim*

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ............................................................................................9

*Guevoura Fund Ltd. v. Sillerman*,
    2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................................................9

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*,
    No. 1:18-cv-00299-AJN, ECF 230 (S.D.N.Y. Feb. 14, 2022)...............................................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................................................20

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987).........................................................................................16

4866-7621-2528.v2

**Page**

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..................................................................17

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
    281 F.R.D. 134 (S.D.N.Y. 2012) ...............................................................................20

*In re BHP Billiton Ltd. Sec. Litig.*,
    2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)..........................................................13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018),
    *aff'd sub nom. In re Facebook, Inc.*,
    822 F. App'x 40 (2d Cir. 2020) ..................................................................................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................................................9, 11

*In re Genworth Fin., Inc. Sec. Litig.*,
    No. 1:14-cv-02392-AKH, ECF 178 (S.D.N.Y. Nov. 16, 2017) ..............................13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ...............................................................................16

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................................18

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ...............................................................................17

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998)..........................................................................................7

*In re Stock Exchs. Options Trading Antitrust Litig.*,
    2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ..........................................................18

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................................10

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
    2017 WL 2062985 (S.D.N.Y. May 15, 2017) ..........................................................20

*In re Vitamin C Antitrust Litig.*,
    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)..........................................................16

4866-7621-2528.v2

**Page**

*In re Vivendi Universal, S.A. Sec. Litig.*,
 242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................20

*In re Warner Chilcott Ltd. Sec. Litig.*,
 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) .............................................14

*Panther Partners Inc. v. Jianpu Tech. Inc., et al.*,
 No. 1:18-cv-09848-PGG, ECF 130 (S.D.N.Y. May 12, 2022) .....................13

*Villella v. Chem. & Mining Co. of Chile Inc.*,
 333 F.R.D. 39 (S.D.N.Y. 2019) ......................................................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)...............................................................................7

*Weinberger v. Kendrick*,
 698 F.2d 61 (2d Cir. 1982)..............................................................................18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 §78j(b)...............................................................................................................3
 §78t(a) ..............................................................................................................3
 §78u-4(a)(4) ............................................................................................3, 6, 13
 §78u-4(a)(7) .....................................................................................................2
 §78u-4(a)(7)(A)-(F) .......................................................................................18

Federal Rules of Civil Procedure
 Rule 23 .......................................................................................................2, 18
 Rule 23(a)...............................................................................................2, 8, 19
 Rule 23(a)(2)...................................................................................................20
 Rule 23(b) .........................................................................................................8
 Rule 23(b)(3).........................................................................................2, 19, 21
 Rule 23(c)......................................................................................................15|
 Rule 23(e).....................................................................................................6, 19
 Rule 23(e)(1)...................................................................................................2, 7
 Rule 23(e)(2) ...............................................................................................2, 7, 8
 Rule 23(e)(2)(A) ...............................................................................................8
 Rule 23(e)(2)(C)(i).........................................................................................11
 Rule 23(e)(2)(C)(ii)........................................................................................12
 Rule 23(e)(2)(C)(iii).......................................................................................13
 Rule 23(e)(2)(C)(iv).......................................................................................14

4866-7621-2528.v2

**Page**

Rule 23(e)(2)(D) ..................................................................................................14
Rule 23(e)(3)........................................................................................................7

## SECONDARY AUTHORITIES

Janeen McIntosh and Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
(NERA Economic Consulting Jan. 25, 2022)..........................................................17

4866-7621-2528.v2

Plaintiffs UA Local 13 Pension Fund, UA Local 13 & Employers Group Insurance Fund, Plumbers & Steamfitters Local 267 Pension Fund, and Plumbers and Steamfitters Local No. 7 Pension and Welfare Funds ("Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for: (i) preliminary approval of the proposed Settlement; (ii) certification of the proposed Class for purposes of the Settlement; (iii) approval of the form and manner of the settlement notices to Members of the Class; and (iv) the scheduling of a hearing ("Settlement Hearing"). The requested relief is set forth in the parties' agreed-upon form of [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") and exhibits thereto.

## I.    INTRODUCTION

The proposed Settlement, memorialized in the Stipulation filed concurrently herewith, provides a recovery of $12.5 million in cash, inclusive of attorneys' fees and expenses ("Settlement Amount"), to resolve all of Plaintiffs' claims against defendants Sealed Air Corporation ("Sealed Air" or the "Company") and William G. Stiehl (collectively, "Defendants").[1] The Settlement comes at an advanced stage of the Litigation after Lead Counsel largely overcame Defendants' motions to dismiss, conducted a significant amount of discovery, filed Plaintiffs' motion for class certification, and served on Defendants several expert reports. The Settlement is the result of a knowledgeable and comprehensive assessment of the strengths and weaknesses of the claims asserted in this Action, the costs and risks of proceeding with the Litigation, and the benefit to Class Members of receiving a substantial, immediate recovery.

The Settlement represents a favorable recovery for the Class, based on an estimate of Plaintiffs' reasonable recoverable damages, and was reached only after extensive negotiations with

---

[1]    Unless otherwise noted, all capitalized terms herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of September 9, 2022 ("Stipulation").

- 1 -

the assistance of David M. Murphy, Esq., a nationally-recognized mediator experienced in resolving complex securities class actions.  The Settlement will eliminate the risks and uncertainty of continued proceedings by ensuring that Class Members will receive compensation now – instead of many months or years from now, or perhaps never, if Defendants prevail at any stage of this Litigation.

The Settlement satisfies Rule 23(e)(1) of the Federal Rules of Civil Procedure for the issuance of the Notice, as well as each of the Rule 23(e)(2) factors and those identified in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which courts consider at the preliminary and final approval stages.[2]  Accordingly, Plaintiffs respectfully request preliminary approval of the Settlement so that notice may be provided to the Class pursuant to the proposed Preliminary Approval Order, submitted herewith as Exhibit A to the Stipulation, which will:

1.      Preliminarily approve the Settlement on the terms set forth in the Stipulation;

2.      Find that the Class satisfies each element of Rules 23(a) and 23(b)(3) and should be certified for settlement purposes;

3.      Approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Summary Notice, attached as Exhibits A-1 and A-3 to the Stipulation;

4.      Find that the procedures for distributing the Notice and publication of the Summary Notice, as set forth in the Preliminary Approval Order, constitute the best notice practicable under the circumstances and comply with the requirements of due process, Rule 23, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. §78u-

---

[2]   Citations, internal quotations, and footnotes omitted unless otherwise noted.

- 2 -

4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

5.  Establish a schedule and procedures for: (i) disseminating the Notice and publishing the Summary Notice; (ii) requesting exclusion from the Class; (iii) objecting to any aspect of the Settlement, Plan of Allocation, Lead Counsel's application for an award of attorneys' fees, charges, and expenses or Plaintiffs' application for awards pursuant to 15 U.S.C. §78u-4(a)(4); (iv) submitting papers in support of final approval of the Settlement; and (v) the Settlement Hearing.

## II.    SUMMARY OF THE ACTION

The initial complaint was filed in the United States District Court for the Southern District of New York (the "Court") on November 1, 2019.  On January 22, 2020, the Court appointed Plaintiffs UA Local 13 Pension Fund, UA Local 13 & Employers Group Insurance Fund and Plumbers & Steamfitters Local 267 Pension Fund lead plaintiffs and Robbins Geller Rudman & Dowd LLP lead counsel.

On July 13, 2020, Plaintiffs filed their Corrected Amended Complaint for Violations of the Federal Securities Laws (the "CAC").  The CAC alleges that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") arising from statements concerning the process by which the Company selected Ernst & Young to be its registered public accounting firm. Specifically, Defendants had represented that Ernst & Young was selected through a competitive process involving several international accounting firms.  Plaintiffs allege, however, that those statements, and others concerning the Company's internal controls, were materially false and misleading because Defendant Stiehl rigged the auditor selection process in favor of Ernst & Young.

4866-7621-2528.v2

On September 4, 2020, Defendants separately moved to dismiss the CAC. On June 1, 2021, the Court granted in part and denied in part Defendants' motions to dismiss. On July 15, 2021, Defendants filed answers to the CAC, and asserted defenses thereto.

During the course of the Litigation, the parties engaged in significant fact discovery, substantially completing document discovery. In addition, Plaintiffs have obtained, from the SEC, the sworn deposition testimony of the most critical witnesses in the case, including Stiehl, Carol Lowe (Sealed Air's former CFO), and the three Ernst & Young partners who were directly involved in Sealed Air's auditor selection process.

On May 17, 2022, the Settling Parties participated in a confidential mediation with David M. Murphy, Esq. The mediation was preceded by the submission and exchange of mediation statements by the Settling Parties who engaged in good faith, arm's-length negotiations, but could not reach a settlement. Accordingly, the parties continued to prosecute the case, including discovery and motion practice.

On July 15, 2022, Plaintiffs filed a motion for class certification and accompanying Declarations, including an expert report addressing issues of market efficiency and a class-wide damage model. The motion for class certification is currently pending.

On August 6, 2022, Plaintiffs served additional merits-based expert reports. One of Plaintiffs' experts opined on issues of loss causation, damages, and materiality. Plaintiffs' other expert, Harvey Pitt, provided his opinion on issues concerning practices and understandings with respect to audits, expected procedures and processes of auditor selection, and auditor independence.

The Settling Parties continued good faith settlement negotiations. On August 9, 2022, following the service of Plaintiffs' expert reports, the mediator made a mediator's recommendation that the case be settled for $12,500,000. On August 11, 2022, the parties agreed to accept the

- 4 -

4866-7621-2528.v2

mediator's recommendation. That day, the parties informed the Court that they had reached an agreement in principle, subject to final documentation of the Settlement's terms.

## III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Terms of the Settlement

The Settlement resolves all of the Class's claims against Defendants. The Stipulation provides that Sealed Air will pay or cause to be paid the Settlement Amount ($12.5 million) within 5 calendar days following the execution of the Stipulation. Stipulation, ¶2.1. For the Class's benefit, the Settlement Amount will be invested in instruments backed by the Full Faith & Credit of the U.S. Government or an Agency thereof, or fully insured by the U.S. Government or an Agency thereof, and reinvested as those instruments mature in similar instruments at their then-current market rates. *Id.*, ¶¶1.9, 2.3.

The recovery to individual Class Members will depend on variables outlined in the proposed Plan of Allocation (set forth in the Notice), including the number and aggregate amount of claims submitted by eligible Class Members, as well as the timing and amount of their purchases and sales of Sealed Air common stock.

The Settlement Amount, plus accrued interest, comprises the Settlement Fund. The cost of Settlement administration – including the costs of notice to the Class, Taxes, and Tax Expenses – will be funded by the Settlement Fund. Stipulation, ¶¶2.5, 2.7. Plaintiffs propose an experienced and nationally-recognized class-action settlement administrator, Gilardi & Co. LLC ("Gilardi"), to disseminate notice to the Class in accordance with the process set forth in the Preliminary Approval Order. *Id.*, ¶1.2. If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim (Exhibits A-1 and A-2 to the Stipulation) to Class Members who can be identified with reasonable effort. Stipulation, Ex. A, ¶11. The Claims Administrator will also cause

the Summary Notice (Exhibit A-3 to the Stipulation) to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. *Id.*, Ex. A, ¶12.

The Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members, who submit valid and timely Proofs of Claim, under the Plan of Allocation and subject to this Court's approval; there will be no reversion to Defendants. *See generally* Stipulation, Ex. A-1. The Notice also describes: (i) Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' application for an award pursuant to 15 U.S.C. §78u-4(a)(4); (ii) the procedures for requesting exclusion from the Class or objecting to the Settlement, the Plan of Allocation, or Lead Counsel's or Plaintiffs' requests; and (iii) the date and time for the Settlement Hearing.[3] *See* Stipulation, Ex. A-1.

In exchange for the benefits provided by the Settlement, Class Members will release any and all claims against Defendants concerning, based on, arising out of, or in connection with both: (i) "the purchase or acquisition of the common stock of Sealed Air between November 17, 2014 and June 20, 2019, inclusive"; and (ii) "any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in this Action, or which could have been alleged in this Action." Stipulation, ¶1.21.

As detailed herein, the proposed Settlement is a favorable result for the Class and provides a significant cash recovery now without the risks and delays of further litigation.

**B.      The Standards for Preliminary Approval of a Proposed Settlement**

Rule 23(e) requires judicial approval for settling claims brought as a class action. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of

---

[3]   The Stipulation describes the general terms of Sealed Air's termination option – that Sealed Air may withdraw from and terminate the Settlement if Class Members who purchased or acquired in excess of a certain amount of common stock opt out of the Class. Stipulation, ¶7.3.

4866-7621-2528.v2

settlement – may be settled . . . only with the court's approval."). The settlement of class-action litigation is favored and encouraged. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (recognizing a "strong judicial policy in favor of settlements, particularly in the class action context"); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (same, citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

Under Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)    the class representatives and class counsel have adequately represented the class;
>>
>> (B)    the proposal was negotiated at arm's length;
>>
>> (C)    the relief provided for the class is adequate, taking into account:
>>
>>> (i)    the costs, risks, and delay of trial and appeal;
>>>
>>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D)    the proposal treats class members equitably relative to each other.

These factors largely overlap with the *Grinnell* factors, which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

- 7 -

4866-7621-2528.v2

establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. As discussed below, the proposed Settlement satisfies each of the factors identified in Rule 23(e)(2), as well as each of the *Grinnell* factors. In addition, each of the Rule 23(a) and (b) factors are met for certification of the Class for settlement purposes. Accordingly, Notice of the proposed Settlement should be sent to the Class.

### C.    The Settlement Satisfies the Rule 23(e)(2) Factors

#### 1.    Plaintiffs and Their Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel satisfy the adequacy requirements of Rule 23(e)(2)(A), because they have diligently litigated this case throughout on behalf of the Class. They thoroughly investigated the facts prior to filing their initial complaint in November 2019. These efforts continued and resulted in the preparation of the CAC, which substantially augmented Plaintiffs' initial claims. Lead Counsel largely overcame Defendants' motions to dismiss which the Court granted in part and denied in part. Plaintiffs also conducted significant fact discovery which was nearly completed when the proposed Settlement was reached. Plaintiffs' discovery included the substantial completion of document discovery and the review of sworn testimony given to the SEC by five witnesses on the issues underlying the case. These witnesses include Stiehl, Carol Lowe (Sealed Air's former CFO), and the three Ernst & Young partners who were directly involved in Sealed Air's auditor selection process.

Lead Counsel filed Plaintiffs' motion for class certification together with an expert report on market efficiency and other issues, and that motion remains pending. Lead Counsel also served two merits-based expert reports. The first included opinions on issues of loss causation, damages, and

- 8 -

4866-7621-2528.v2

materiality.  The second expert report was authored by Harvey Pitt and presented his opinions on practices and understandings with respect to audits, expected procedures and processes of auditor selection, and auditor independence.  These efforts also provided Plaintiffs with a thorough understanding of potential strengths and weaknesses of the theories of liability asserted.  This understanding positioned Plaintiffs to propose mediation, prepare an effective mediation statement and presentation to Mr. Murphy, and successfully resolve this Action.

Lead Counsel has substantial experience in prosecuting complex securities class actions, and that experience directly led to the favorable result here.  *See, e.g.*, *In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-0040-AKH, Transcript at 184 (S.D.N.Y. Jan. 23, 2020) ("I believe that, in this case, as I said before, the services delivered by the Robbins Geller firm were outstanding . . . .") (excerpt of Transcript attached as Exhibit A hereto); *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 59 (S.D.N.Y. 2019) (finding that Robbins Geller "has extensive experience in securities class actions and complex litigation," which reflect "its ability to manage this litigation"); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 135 (S.D.N.Y. 2014) ("The Court finds that Robbins Geller . . . is experienced in securities class action litigation and qualified to conduct this lawsuit" and "has previously been deemed qualified in similar litigation."); *see also* www.rgrdlaw.com.

Bringing this experience and knowledge to bear, and given the unique challenges present in this case, Lead Counsel believes that the Settlement is in the best interests of the Class.  *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (recognizing that "great weight is accorded to counsel's recommendation" if a settlement is reached by experienced counsel after arm's-length negotiations); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *13

4866-7621-2528.v2

(S.D.N.Y. Nov. 8, 2010) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 2.   The Proposed Settlement Was Negotiated at Arm's Length

The Settlement is the result of extensive, arm's-length negotiations with sophisticated counsel conducted through an experienced and neutral mediator. The parties worked on developing a thorough understanding of the strengths and weaknesses of their claims and defenses and balanced those considerations against the risks of continued litigation. Here, the mediator was instrumental in separately working with the parties to achieve a reasonable result.

The parties attended an all-day mediation on May 17, 2022, preceded by the Settling Parties' submission and exchange of detailed mediation statements. Although the Settling Parties negotiated in good faith, the mediation was not successful. For weeks thereafter, the Settling Parties continued to litigate the Action while further discussions and negotiations took place with the mediator, who on August 9, 2022, following the service of Plaintiffs' expert reports, submitted to the parties a mediator's recommendation intended to resolve the Action. On August 11, 2022, the parties accepted the mediator's recommendation.

In short, negotiations were hard-fought, extensive, lengthy, well-informed, and facilitated by a neutral, third-party mediator experienced in evaluating and resolving litigation of this nature. A strong initial presumption of fairness attaches to a settlement reached by experienced counsel after arm's-length negotiations assisted by a knowledgeable mediator, because the process ensures that the settlement is "free of collusion and undue pressure." *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575-76 (S.D.N.Y. 2008) (recognizing that "a class action settlement enjoys a presumption of correctness" and also "a strong presumption of fairness" when it results from "arm's-length negotiations" by experienced counsel).

4866-7621-2528.v2

**3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal**

Assessing a settlement even at preliminary approval requires balancing the benefits offered to the class against the costs, risks, and delay of continued litigation.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor overlaps with the first (the complexity, expense, and likely duration of the litigation), fourth (the risks of establishing liability), and fifth (the risks of establishing liability) *Grinnell* factors.

Securities class actions are notoriously complex and present numerous hurdles to proving liability and damages.  *See, e.g.*, *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."); *Flag Telecom*, 2010 WL 4537550, at *15 (recognizing that complex securities class actions are "notably difficult and notoriously uncertain").

While Plaintiffs believe that evidentiary support exists for the allegations, they recognize that significant hurdles stand in the way of continuing to develop evidence, proving liability, and proceeding to – and prevailing at – trial.  Indeed, although Plaintiffs believe their case is strong, they acknowledge that Defendants have put forth substantial arguments concerning the materiality and loss causation elements of their Section 10(b) claim.  For example, Defendants argued that Plaintiffs could not establish the materiality of the alleged misstatements because the auditor retention process itself is unimportant to investors – in particular because here Sealed Air hired a major accounting firm in Ernst & Young and the Company's financial statements were never in need of correction or restatement. Further, Defendants argued that Plaintiffs could not establish loss causation for the first alleged corrective disclosure, in which Sealed Air announced the receipt of an SEC subpoena, because the subpoena did not reference the process through which the Company retained Ernst & Young as its

4866-7621-2528.v2

auditor and, therefore, Plaintiffs' allegations were not sufficiently tied to a subsequent drop in the Company's stock price. As a result, Defendants indicated that they planned to file a motion for summary judgment supported by expert testimony on the issue of loss causation. Moreover, Defendants have consistently argued that the alleged misrepresentations and omissions were neither false, nor otherwise actionable. Defendants also challenged any notion that scienter could be satisfied.

As with contested liability issues, issues relating to loss causation and damages would have come down to an unpredictable and hotly disputed "battle of the experts." Defendants would no doubt argue that Plaintiffs' damages methodology is unreliable and does not accurately account for the effect that confounding factors or market factors had on the price of Sealed Air common stock. They would have further argued that damages, if any, are zero or, at best, significantly less than Plaintiffs had estimated.

Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the Settlement Amount (or nothing at all). The $12.5 million, all cash, recovery now weighs heavily in favor of preliminary approval of the Settlement, particularly when viewed against the risks, costs, delay, and uncertainty of further proceedings.

### 4.	The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective. The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service. Stipulation, Ex. A, ¶12. In addition, a Settlement-specific website will be created where Settlement-related and other

4866-7621-2528.v2

key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.*, ¶11.

The Settlement also contemplates a comprehensive claims administration process, which requests information necessary to calculate a claimant's recognized loss amount under the Plan of Allocation. The Claims Administrator will process the claims, calculate recognized losses under the Plan of Allocation and, ultimately, distribute the Net Settlement Fund to Authorized Claimants.

### 5. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The proposed Notice states that Lead Counsel intends to seek an award of attorneys' fees of up to 27% of the Settlement Amount and litigation expenses not to exceed $625,000, plus interest on these amounts at the same rate as earned by the Settlement Fund. *See* Stipulation, Ex. A-1 at 4. In addition, Plaintiffs will each seek awards of no more than $7,500 each ($30,000 in total) pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class. *Id*. The anticipated fee request is in line with, if not below, awards in other securities settlements recently approved in this District. *See, e.g.*, *Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No. 1:18-cv-09848-PGG, ECF 130 (S.D.N.Y. May 12, 2022) (awarding one-third of $7.5 million recovery); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc., et al.*, No. 1:18-cv-00299-AJN, ECF 230 (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million recovery); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million recovery); *In re Genworth Fin., Inc. Sec. Litig.*, No. 1:14-cv-02392-AKH, ECF 178 (S.D.N.Y. Nov. 16, 2017) (awarding 30% of $20 million recovery).

4866-7621-2528.v2

With respect to the timing of payment, the Stipulation provides that any attorneys' fees and expenses awarded shall be paid to Lead Counsel after the Court executes the Judgment and an order awarding such fees and expenses.  Stipulation, ¶6.2.

### 6. The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires disclosure of any other agreement.  The parties have entered into a standard supplemental agreement which provides Sealed Air with the option to terminate the Settlement if Class Members with a certain amount of purchases or acquisitions of Sealed Air common stock request exclusion from the Class.  *See* Stipulation, ¶7.3.

### 7. Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), considers whether Class Members are treated equitably. As reflected in the Plan of Allocation set forth in the Notice (Stipulation, Ex. A-1), the Settlement treats Class Members equitably relative to each other, based on the timing of their purchases and sales of stock: Authorized Claimants will receive their respective *pro rata* shares of the Net Settlement Fund based on their recognized losses under the Plan of Allocation.

### D. The Settlement Also Satisfies the Remaining *Grinnell* Factors[4]

#### 1. The Stage of the Proceedings

The Settlement was reached at an advanced stage of the Litigation.  Plaintiffs and Lead Counsel approached settlement negotiations with a deep understanding and knowledge of the merits, and the strengths and weaknesses of their claims.  This knowledge is based on a prolonged, in-depth, and extensive investigation, drafting the CAC, largely defeating Defendants' motions to dismiss,

---

[4]   As to the second *Grinnell* factor – the reaction of the class – the Notice has not yet been mailed or otherwise distributed.  *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").  If any objections are received after the Notice is disseminated, Lead Counsel will address them in connection with Plaintiffs' motion for final approval of the Settlement and in the reply in further support thereof.

4866-7621-2528.v2

engaging in significant fact discovery, filing a motion for class certification and accompanying declarations, including an expert report, and serving expert reports on issues of loss causation, damages, materiality, and audit practices and auditor independence. All this work provided the foundation for a productive mediation and ultimately successful negotiations.

Lead Counsel also extensively consulted its experts, who provided useful guidance in evaluating and valuing the claims based on the facts alleged and established through discovery. This insight was indispensable. It allowed Plaintiffs and Lead Counsel to realistically assess the prospect of establishing liability and damages, while enabling them to develop an effective plan to negotiate an eventual resolution. The mediator's involvement was also indispensable. Mr. Murphy provided guidance based on his candid assessment of the strengths and weaknesses of the claims and defenses and interfaced with each side to drill down on potential points of compromise.

This process allowed Plaintiffs and Lead Counsel to develop adequate information about the claims to negotiate a favorable resolution.

### 2. The Risks of Maintaining the Class Action Through Trial

On July 15, 2022, Plaintiffs moved for class certification. The Settlement was reached before briefing was completed. While Plaintiffs are confident that the Class would be certified, there are certainly no guarantees. Further, if Plaintiffs were successful in achieving class certification, Defendants could have moved at any time to decertify the Class or to shorten the Class Period. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992); Fed. R. Civ. P. 23(c) (authorizing decertification at any time). This factor therefore supports preliminary approval of the Settlement.

4866-7621-2528.v2

### 3.    The Ability of Defendants to Withstand a Greater Judgment

Another factor – albeit not typically determinative – is a defendant's ability to withstand a judgment greater than the amount offered in the settlement.  *See D'Amato*, 236 F.3d at 86.  Here, while Sealed Air could have withstood a judgment above the Settlement Amount, that possibility does not necessarily count against approval and many other factors favor the Settlement.  *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and . . . this fact alone does not undermine the reasonableness of the instant settlement").

### 4.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged not "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent" in taking any litigation to completion.  *Giant Interactive*, 279 F.R.D. at 162.

The Settlement represents a favorable result for the Class.  Plaintiffs have estimated reasonably recoverable damages could be no more than $147.2 million, but could otherwise be less depending on various scenarios.  Thus, the Settlement falls well within the range of reasonableness and supports

- 16 -

preliminary approval.  Indeed, the recovery here is multiples above the 1.8% median percentage recovery for losses in securities class actions in 2021.[5]

An additional compelling consideration that militates in favor of the reasonableness of the Settlement is that the Settlement provides for payment to the Class now, rather than the speculative possibility of payment years later.  *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

## IV.  THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement.  Rather, when measuring the adequacy of notice under the Due Process Clause or Federal Rules, a court will look to its reasonableness.  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007).  "Notice need not be perfect, but need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*.

The proposed Preliminary Approval Order (Stipulation, Ex. A) provides that the Claims Administrator will mail the Notice and Proof of Claim to all Class Members who can be identified with reasonable effort.  Stipulation, Ex. A, ¶11.  This includes mailing to all Class Members identified by Sealed Air's transfer agent and brokers and other nominees who purchased or acquired Sealed Air common stock on behalf of others. *Id.*, ¶14.  The Claims Administrator will also publish

---

[5]   https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 24, fig. 22 (NERA Economic Consulting Jan. 25, 2022)).

4866-7621-2528.v2

the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.  *Id.*, ¶12.  Additionally, the Claims Administrator will establish and maintain a Settlement-related website at which the Notice and other relevant materials will be available to Class Members.  *Id.*, ¶11.

Courts have approved similar notice programs in a multitude of cases.  *See Butler v. Suffolk Cnty.*, 2016 WL 11480705, at *4 (E.D.N.Y. June 15, 2016) ("The distribution of the Notice packets by first class mail is a standard method of disseminating Notice.") (collecting cases), *report and recommendation adopted sub nom. Lynch v. Suffolk Cnty.*, 2016 WL 4508343 (E.D.N.Y. Aug. 29, 2016); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 184-85 (S.D.N.Y. 2012) (mailed notice to 1,813 banks, brokerage companies, and institutional investors and notice via publishing an approved form of summary notice through newspapers and via electronic newswires found adequate).

The proposed form of Notice also comports with the requirements of due process, the PSLRA, and Rule 23, and is similar to that routinely approved in other cases.  Notice is reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder."  *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings") (alteration in original).

The proposed Notice contains all of the information required under the PSLRA.[6]  15 U.S.C. §78u-4(a)(7)(A)-(F).  *See* Stipulation, Ex. A-1.  It advises recipients that they have the right to

---

[6]    The PSLRA requires that the settlement notice include the following: (1) the amount of the settlement proposed for distribution, determined in the aggregate and on an average per share basis; (2) if the parties do not agree on the average amount of damages per share recoverable in the event

- 18 -

request exclusion from the Class or to object to any aspect of the Settlement, the Plan of Allocation, Lead Counsel's fee and expense application, or Plaintiffs' requested awards. It provides recipients with the contact information for the Claims Administrator (Gilardi) and Lead Counsel, and directs recipients to the Settlement website for further information (including electronic copies of the Notice and Proof of Claim). And it advises Class Members of the date, time, and location of the Settlement Hearing. This information is also presented in a way that is accessible to the reader and is in a format similar to notices approved in other cases.

## V.    CERTIFICATION OF THE CLASS IS APPROPRIATE

Under the terms of the Stipulation, the Settling Parties have agreed, for the purposes of the Settlement only, to the certification of the Class. The Class is defined as:

> [A]ll persons and entities who purchased or otherwise acquired Sealed Air common stock during the period November 17, 2014 through June 20, 2019, inclusive, and were damaged thereby. Excluded from the Class are Defendants and their immediate families, the officers and directors at all relevant times, as well as their immediate families, Defendants' legal representatives, heirs, successors or assigns and any entity in which any Defendant has a controlling interest. Also excluded from the Class are any Persons who timely and validly request exclusion from the Class as ordered by the Court. [Stipulation, ¶1.3.]

The proposed Class satisfies the requirements of Federal Rules 23(a), 23(b)(3), and 23(e), and should be certified for settlement purposes. In addition, Plaintiffs should be appointed Class representatives and Lead Counsel should be appointed Class counsel.

*First*, according to Plaintiffs' market efficiency expert, Sealed Air had an average of over 186 million shares of common stock outstanding during the Class Period. *See* ECF 83 at 13. Class

---

plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (3) a statement indicating which parties or counsel intend to apply for an award of fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (4) the name, telephone number, and address of a representative of counsel for the class who will be reasonably available to answer questions about any matter contained in the notice of settlement; (5) a brief statement explaining the reasons why the parties are proposing the settlement; and (6) such other information as may be required by the court.

4866-7621-2528.v2

Members purchased a substantial amount of stock during the Class Period. Thus, the Class easily consists of more than 40 members and numerosity is satisfied. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period").

***Second***, because the Class's claims arise from the same alleged misstatements and omissions and rely on the same theories of liability, questions of law and fact are common to the Class. *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) ("[c]ommon questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("Securities-fraud cases generally meet Rule 23(a)(2)'s commonality requirement."). The facts here raise common questions as to whether: (1) Defendants' conduct violated the Exchange Act; (2) Defendants publicly misrepresented material facts or omitted material facts they were required to disclose; (3) Defendants knowingly or recklessly disregarded that the alleged misstatements and omissions were false and/or misleading; (4) the price of Sealed Air common stock was artificially inflated as a result of Defendants' alleged misconduct; and (5) the Class suffered damages when the artificial inflation of Sealed Air common stock's price dissipated upon revelation of the truth. *See* ECF 83 at 14. These common questions readily establish commonality. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *2 (S.D.N.Y. May 15, 2017) (commonality satisfied in securities case involving similar questions).

***Third***, Plaintiffs' claims are typical of the Class's because they share the same factual and legal underpinnings. ECF 83 at 14-15; *see In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) ("[i]n a securities class action . . . the claims and nature of evidence are generally considered sufficient to satisfy the typicality requirement").

- 20 -

4866-7621-2528.v2

*Fourth*, Plaintiffs are adequate class representatives because their interests are aligned with, and not antagonistic to, those of other Class Members, and Lead Counsel is "qualified, experienced and able to conduct the litigation." *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiffs purchased their common stock at market prices during the Class Period and were allegedly injured by the same material misrepresentations and omissions and subsequent stock price declines that injured all Class Members. *See* ECF 83 at 15-17. They also "actively supervised and monitored the progress of this [L]itigation . . . ." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015).

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to separate and disjointed individual adjudications. *See* ECF 83 at 18-19. Because the elements of Plaintiffs' claims present common questions of law and fact that predominate over individualized ones, the predominance requirement is "readily met" here. *See Billhofer*, 281 F.R.D. at 158. Superiority is also readily met because adjudicating individual claims would significantly waste judicial resources. Plaintiffs are unaware of any other related litigation, and no management difficulties preclude this Action from being maintained as a class action for settlement purposes. *See* ECF 83 at 29-30.

Accordingly, class certification is appropriate here for purposes of the Settlement.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, Plaintiffs respectfully request approval of the following schedule for the Court's review:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Deadline to commence mailing the Notice and Proof of Claim ("Notice Date") | 14 calendar days after entry of the Preliminary Approval Order |

4866-7621-2528.v2

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over a national newswire service | 7 calendar days after the Notice Date |
| Posting and filing of Plaintiffs' motion for final approval of the Settlement and Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses, and awards to Plaintiffs | 35 calendar days before the Settlement Hearing |
| Deadline for opting out or submitting an objection | 21 calendar days before the Settlement Hearing |
| Deadline for submitting Proofs of Claim | 90 calendar days after the Notice Date |
| Posting and filing of Plaintiffs' reply in further support of final approval of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses, and awards to Plaintiffs | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |

## VII.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the proposed form and manner of providing notice to the Class; (iii) certification of the Class for settlement purposes; and (iv) a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

4866-7621-2528.v2

DATED:  September 9, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
MARK T. MILLKEY
ROBERT D. GERSON
MAGDALENE ECONOMOU


*/s/ Robert M. Rothman*
ROBERT M. ROTHMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
rrothman@rgrdlaw.com
mmillkey@rgrdlaw.com
rgerson@rgrdlaw.com
meconomou@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

ASHERKELLY
MICHAEL J. ASHER
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
248/747-2809 (fax)
masher@asherkellylaw.com

BLITMAN & KING LLP
DANIEL R. BRICE
4443 North Franklin Street
Syracuse, NY  13204-5412
Telephone:  315/422-7111
315/471-2623 (fax)
dbrice@bklawyers.com

Additional Counsel for Lead Plaintiffs

4866-7621-2528.v2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 9, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

/s/ *Robert M. Rothman*
ROBERT M. ROTHMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
rrothman@rgrdlaw.com