UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

UA LOCAL 13 & EMPLOYERS GROUP
INSURANCE FUND, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

    vs.

SEALED AIR CORPORATION and
WILLIAM G. STIEHL,

               Defendants.

———————————————————— x

: Civil Action No. 1:19-cv-10161-LLS-RWL
:
: <u>CLASS ACTION</u>
:
: MEMORANDUM OF LAW IN SUPPORT
: OF PLAINTIFFS' MOTION FOR (1) FINAL
: APPROVAL OF CLASS ACTION
: SETTLEMENT, (2) APPROVAL OF PLAN
: OF ALLOCATION, AND (3) LEAD
: COUNSEL'S APPLICATION FOR AN
: AWARD OF ATTORNEYS' FEES AND
: EXPENSES AND AWARDS TO
: PLAINTIFFS PURSUANT TO 15 U.S.C.
: §78u-4(a)(4)

4872-2367-9553.v2

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................................4

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
        SETTLEMENTS........................................................................................................6

        A.      The Law Favors and Encourages Settlements ............................................6

        B.      The Settlement Must Be Procedurally and Substantively Fair, Adequate,
                and Reasonable .........................................................................................6

        C.      The Proposed Settlement Is Procedurally and Substantively Fair,
                Adequate, and Reasonable ..........................................................................7

                1.      The Settlement Satisfies the Requirements of Rule 23(e)(2).......................7

                        a.      Plaintiffs and Lead Counsel Adequately Represented the
                                Class........................................................................................8

                        b.      The Settlement Resulted from Extensive Arm's-Length
                                Negotiations ...........................................................................9

                        c.      The Proposed Settlement Is Adequate in Light of the Costs,
                                Risks, and Delays of Trial and Appeal ........................................9

                                (1)     The Risks of Establishing Liability at Trial........................9

                                (2)     The Risks of Establishing Damages at Trial.....................11

                                (3)     The Settlement Eliminates the Additional Costs and
                                        Delay of Continued Litigation .........................................11

                        d.      The Proposed Method for Distributing Relief Is Effective............12

                        e.      Counsel's Fees Are Reasonable.....................................................12

                        f.      The Parties Have No Other Agreements Except for a
                                Standard Supplemental Agreement................................................13

                        g.      Class Members Are Treated Equitably .........................................13

                2.      The Settlement Satisfies the Remaining *Grinnell* Factors........................14

                        a.      The Lack of Objections to Date Supports Final Approval ............14

4872-2367-9553.v2

**Page**

        b.     Plaintiffs Had Sufficient Information to Resolve the Case............14

        c.     Maintaining Class Action Status Through Trial Presents Substantial Risk ...................................................................................15

        d.     Defendants' Ability to Withstand a Greater Judgment..................15

        e.     The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation ..............................15

IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE .......................................16

V.     THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT ...................................................................17

VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS .....................................................................................................18

VII.   AWARD OF ATTORNEYS' FEES......................................................................................19

      A.     Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund Achieved in the Settlement ..............................................19

      B.     The Court Should Award a Reasonable Percentage of the Common Fund...........20

      C.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method....................................................................................................21

      D.     The Relevant Factors Confirm that the Requested Fee Is Reasonable ..................21

           1.     The Time and Labor Expended by Counsel ..............................................22

           2.     The Magnitude and Complexity of the Litigation ....................................23

           3.     The Risks of the Litigation Support the Requested Fee ...........................23

           4.     The Quality of Representation and Public Policy Support the Requested Fee ............................................................................................25

           5.     Plaintiffs' Approval and the Class's Reaction to Date Support the Requested Fee ..........................................................................................26

VIII.  COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION...............................26

4872-2367-9553.v2

**Page**

IX.    PLAINTIFFS SHOULD RECEIVE A REASONABLE AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) ...................................................................................27

X.    CONCLUSION.................................................................................................28

4872-2367-9553.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Aponte v. Comprehensive Health Mgmt.*,
2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)..........................................................................22

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)..........................................................................14

*Blum v. Stenson*,
465 U.S. 886 (1984)...........................................................................................................20, 21

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................................................................19

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ................................................................................................20

*Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) ..........................................................................15

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992).........................................................................................15

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)....................................................................19, 28

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..........................................................................19

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................................................. *passim*

*Erlandson v. Triterras, Inc., et al.*,
No. 7:20-cv-10795-CS, ECF 82 (S.D.N.Y. Sept. 8, 2022)....................................................21

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................................... *passim*

*Gottlieb v. Barry*,
43 F.3d 474 (10th Cir. 1994) ..................................................................................................20

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ..................................................................................................20

4872-2367-9553.v2

**Page**

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022)......................................................................21

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).....................................................................11

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ........................................................................................24

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ......................................................................6, 11, 15, 16

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987)....................................................................................15

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010)................................................................................24

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................................................10, 16

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006)............................................................................................20

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................................14

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ....................................................................26

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prod. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019).......................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...............................................................20, 23

*In re Deutsche Bank AG Sec. Litig.*,
2020 WL 3162980 (S.D.N.Y. June 11, 2020) .....................................................................28

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................................9, 23, 25, 26

4872-2367-9553.v2

**Page**

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................7

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................................................14

*In re Intercloud Systems, Inc. Sec. Litig.*,
No. 3:14-cv-01982-PGS-DEA, ECF 135 (D.N.J. Dec. 5, 2017) ....................................28

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...............................................................24

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................25

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ....................................................................................18

*In re PPDAI Grp. Inc. Sec. Litig.*,
2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ...................................................................21

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................................................................27

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ...............................................................................10, 23

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................................21, 23

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) ............................................................................................20

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..............................................................24, 28

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..............................................................14, 17

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................................16, 21

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) .............................................................................24

- vi -

**Page**

*Machniewicz v. Uxin Ltd.*,
2021 WL 9409860 (E.D.N.Y. Sept. 8, 2021) ............................................................21

*Missouri v. Jenkins by Agyei*,
491 U.S. 274 (1989)...................................................................................................21

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
2019 WL 13150344 (S.D.N.Y. Mar. 8, 2019),
*aff'd as modified sub nom.*
*N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*,
28 F.4th 357 (2d Cir. 2022) ..........................................................................................9

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)........................................................................................16

*Panther Partners Inc. v. Jianpu Tech. Inc., et al.*,
No. 1:18-cv-09848-PGG, ECF 130 (S.D.N.Y. May 12, 2022) .................................21

*Parker v. Time Warner Entm't Co., L.P.*,
631 F. Supp. 2d 242 (E.D.N.Y. 2009) ........................................................................23

*Pelzer v. Vassalle*,
655 Fed. Appx. 352 (6th Cir. 2016)............................................................................13

*Petrovic v. AMOCO Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ....................................................................................20

*Rawlings v. Prudential-Bache Props.*,
9 F.3d 513 (6th Cir. 1993) ..........................................................................................20

*Robbins v. Koger Props. Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..................................................................................24

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999)........................................................................................20

*Silverman v. Motorola Solutions, Inc.*,
739 F.3d 956 (7th Cir. 2013) ......................................................................................24

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)..........................................................................11

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993)......................................................................................20

4872-2367-9553.v2

**Page**

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ...........................................................................7

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) .............................................................................20

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...........................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)........................................................................6, 7, 9, 20

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)....................................................25

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b)..............................................................................................................4, 23
§78t(a)..............................................................................................................4, 23
§78u-4(a)(4) ...................................................................................................1, 3, 27
§78u-4(a)(6) ........................................................................................................20
§78u-4(a)(7) ........................................................................................................19

Federal Rules of Civil Procedure
Rule 23 ...............................................................................................................18
Rule 23(a)........................................................................................................17, 18
Rule 23(b)(3)....................................................................................................17, 18
Rule 23(c).............................................................................................................15
Rule 23(c)(2)(B)...................................................................................................18
Rule 23(e)..............................................................................................................1
Rule 23(e)(1)(B)...................................................................................................18
Rule 23(e)(2) ................................................................................................1, 6, 7, 8
Rule 23(e)(2)(A) ....................................................................................................8
Rule 23(e)(2)(A)-(B)..............................................................................................6
Rule 23(e)(2)(C)....................................................................................................6
Rule 23(e)(2)(C)(i).............................................................................................9, 12
Rule 23(e)(2)(C)(ii)..............................................................................................12
Rule 23(e)(2)(C)(iv)..............................................................................................13
Rule 23(e)(2)(D) ................................................................................................6, 13
Rule 23(e)(3).....................................................................................................6, 13
Rule 23(f)............................................................................................................15

4872-2367-9553.v2

**Page**

## SECONDARY AUTHORITIES

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
    (NERA Economic Consulting Jan. 25, 2022).........................................................................16

4872-2367-9553.v2

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs UA Local 13 Pension Fund, UA Local 13 & Employers Group Insurance Fund ("Local 13 Funds"), Plumbers & Steamfitters Local 267 Pension Fund ("Local 267 Fund"), and Plumbers and Steamfitters Local No. 7 Pension and Welfare Funds ("Local 7 Funds") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for approval of (1) the $12.5 million all-cash Settlement; (2) the proposed Plan of Allocation; and (3) Lead Counsel's application for an award of attorneys' fees and expenses and for awards to Plaintiffs Local 13 Funds, Local 267 Fund, and Local 7 Funds of $3,150, $4,800 and $4,800, respectively, pursuant to 15 U.S.C. §78u-4(a)(4).[1]

## I. PRELIMINARY STATEMENT

The proposed $12.5 million recovery is the product of hard-fought litigation, together with arm's-length settlement negotiations among experienced and knowledgeable counsel, supervised by an experienced mediator, David M. Murphy, Esq. of Phillips ADR.  The Settlement is a very good result for the Class and satisfies each of the Rule 23(e)(2) and *Grinnell*[2] factors.  It is particularly beneficial to the Class in light of the many risks Plaintiffs faced, including that: (1) the Court could deny Plaintiffs' pending motion to certify the Class; (2) Defendants could prevail on their motion for summary judgment at the conclusion of discovery; and (3) protracted, expensive, and contested litigation, including trial and likely appeals, could ultimately lead to no recovery, or a far smaller recovery.

---

[1]    All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and Agreement of Settlement, dated September 9, 2022 ("Stipulation") (ECF 100), and the Declaration of Robert M. Rothman in Support of Plaintiffs' Motion for (1) Final Approval of Class Action Settlement, (2) Approval of Plan of Allocation, and (3) Lead Counsel's Application for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Rothman Decl."), submitted herewith.  All emphasis is added and internal citations are omitted, unless otherwise stated.

[2]    *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

- 1 -

Lead Counsel developed a firm understanding of the strengths and weaknesses of this case based on its extensive factual investigation and analysis before and after filing the Corrected Amended Complaint ("CAC"). This included Lead Counsel's review of relevant SEC filings, news reports, analyst reports, and other information. Rothman Decl., ¶¶5, 107. In addition, Lead Counsel opposed Defendants' motions to dismiss, which the Court largely denied, substantially completed document discovery, reviewed sworn deposition testimony from the key witnesses in the case, filed Plaintiffs' motion for class certification, litigated several discovery disputes with Defendants, consulted with experts and served merits-based expert reports, prepared detailed mediation statements addressing issues of liability and damages, and prepared for and participated in a full-day mediation session, as well as subsequent negotiations. *Id.*, ¶107. The result was an agreement to resolve the litigation for $12.5 million.

Members of the Class have reacted positively to the Settlement. Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), dated September 14, 2022 (ECF 102), copies of the Notice were sent to over 226,000 potential Class Members and nominees beginning on September 28, 2022, and notice was published in *The Wall Street Journal* and transmitted over *Business Wire* on October 5, 2022. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶4-12, submitted herewith. Notice was also provided via a website created for the Settlement. *Id.*, ¶14. To date, not a single objection to the Settlement has been submitted and only one request for exclusion from the Class has been received. *Id.*, ¶16.

Plaintiffs also request that the Court approve the proposed Plan of Allocation ("Plan"), set forth in the Notice, which governs how claims will be calculated and Settlement proceeds will be distributed. The Plan was prepared in consultation with Plaintiffs' damages expert and is based on

- 2 -

the difference between what Class Members paid for their Sealed Air common stock during the Class Period and what they would have paid had the alleged misstatements not been made or the omitted information been disclosed.  Under the Plan, Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on their recognized losses.

Lead Counsel, which has substantial experience prosecuting securities class actions, has concluded that the Settlement is fair, reasonable, and adequate and in the best interests of the Class, and Plaintiffs agree.[3]  Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation as fair and reasonable.

Lead Counsel also respectfully requests an award of attorneys' fees of 25% of the Settlement Amount and $455,832.33 in expenses and charges reasonably and necessarily incurred in the Litigation, plus interest on both amounts.  This request has the full support of Plaintiffs,[4] who are institutional investors with meaningful losses, and is within the range of, if not below, fees often awarded in comparable securities class action settlements in this District and across the country.  The requested fee is also warranted in light of the favorable result achieved and the contingent nature of counsel's representation.  Separately, pursuant to 15 U.S.C. §78u-4(a)(4), Plaintiffs Local 13 Funds, Local 267 Fund, and Local 7 Funds seek awards in the amount of $3,150, $4,800 and $4,800, respectively, for their efforts in representing the Class.  As explained below, the factors articulated in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), support these awards.

---

[3]  *See* Declaration of Michael Nanno in Support of Final Approval ("Nanno Decl."), ¶5; Declaration of Ryan Heimroth in Support of Final Approval ("Heimroth Decl."), ¶5; Declaration of Steven Ostrander in Support of Final Approval ("Ostrander Decl."), ¶5.

[4]  *See* Nanno Decl., ¶6; Heimroth Decl., ¶6; Ostrander Decl., ¶6.

4872-2367-9553.v2

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The initial complaint was filed in this Court on November 1, 2019.  On January 22, 2020, the Court appointed Plaintiffs UA Local 13 Pension Fund, UA Local 13 & Employers Group Insurance Fund, and Plumbers & Steamfitters Local 267 Pension Fund lead plaintiffs and Robbins Geller Rudman & Dowd LLP lead counsel.

On July 13, 2020, Plaintiffs filed the CAC.  The CAC alleges that Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") arising from statements concerning the process by which the Company selected Ernst & Young LLP ("EY") to be its registered public accounting firm.  Specifically, Defendants had represented that EY was selected through a competitive process involving several international accounting firms.  Plaintiffs allege, however, that those statements, and others concerning the Company's internal controls, were materially false and misleading because Defendant Stiehl rigged the auditor selection process in favor of EY.  During discovery, Plaintiffs were unable to uncover details about Stiehl's actions, including that he provided EY with confidential information from the Audit Committee, forwarded competitor's bids to EY, and personally altered EY's bid.

On September 4, 2020, Defendants separately moved to dismiss the CAC.  On June 1, 2021, the Court granted in part and denied in part Defendants' motions to dismiss.  On July 15, 2021, Defendants filed answers to the CAC, and asserted defenses thereto.

During the course of the Litigation, the parties engaged in significant fact discovery, substantially completing document discovery.  In addition, Plaintiffs have obtained from the SEC, the sworn deposition testimony of the most critical witnesses in the case, including Stiehl, Carol Lowe (Sealed Air's former CFO), and the three EY partners who were directly involved in Sealed Air's auditor selection process.

- 4 -

On May 17, 2022, the Settling Parties participated in a confidential mediation with David M. Murphy, Esq. The mediation was preceded by the submission and exchange of mediation statements by the Settling Parties who engaged in good faith, arm's-length negotiations, but could not reach a settlement. Accordingly, the parties continued to prosecute the case, including discovery and motion practice.

On July 15, 2022, Plaintiffs filed a motion for class certification and accompanying Declarations, including an expert report by Professor Steven P. Feinstein, Ph.D., CFA, addressing issues of market efficiency and a class-wide damage model. The motion for class certification is currently pending.

On August 6, 2022, Plaintiffs served additional merits-based expert reports. Professor Feinstein opined on issues of loss causation, damages, and materiality. Plaintiffs' other expert, Harvey Pitt, provided his opinions on issues concerning practices and understandings with respect to audits, expected procedures and processes of auditor selection, and auditor independence.

The Settling Parties continued good faith settlement negotiations. On August 9, 2022, following the service of Plaintiffs' expert reports, the mediator made a mediator's recommendation that the case be settled for $12,500,000. On August 11, 2022, the parties agreed to accept the mediator's recommendation. That day, the parties informed the Court that they had reached an agreement in principle, subject to final documentation of the Settlement's terms.

On September 9, 2022, Plaintiffs filed their motion for preliminary approval (ECF 98), which the Court granted on September 14, 2022. ECF 102.

### III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

#### A.    The Law Favors and Encourages Settlements

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014).  Therefore, when exercising discretion to approve a settlement, courts are "mindful of the strong judicial policy in favor of settlements." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Thus, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *Grinnell*, 495 F.2d at 462.

#### B.    The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable

Rule 23(e)(2) sets forth the relevant factors as to whether a settlement "is fair, reasonable, and adequate . . . ."  These factors include whether "the class representatives and class counsel have adequately represented the class" and "the [settlement] proposal was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B).  They also require a court to determine whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) . . . ."  Fed. R. Civ. P. 23(e)(2)(C).  Finally, a court will consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).

The *Grinnell* factors, some of which overlap with Rule 23(e)(2)'s factors, also guide a court's

4872-2367-9553.v2

consideration of whether to approve a class action settlement.  They concern:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463).

In finding that a settlement is fair, reasonable, and adequate, a court need not find that every factor is satisfied but "should consider the[ir] totality" in light of the circumstances.  *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).  In making that determination, a court may not substitute its "business judgment for that of counsel, absent evidence of fraud or overreaching." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004).  Here, Plaintiffs respectfully submit that the proposed Settlement fully satisfies Rule 23(e)(2) and all of the *Grinnell* factors and is therefore fair, reasonable, and adequate.

### C.  The Proposed Settlement Is Procedurally and Substantively Fair, Adequate, and Reasonable

#### 1.  The Settlement Satisfies the Requirements of Rule 23(e)(2)

As explained in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement, Certification of the Class, and Approval of Notice to the Class (at 8-16) ("Preliminary Approval Brief") (ECF 99), the Settlement meets all of the requirements imposed by Rule 23(e)(2) and the Second Circuit in *Grinnell*.  That nothing has changed since preliminary approval "counsel[s] equally in favor of final approval now." *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019).

4872-2367-9553.v2

### a.    Plaintiffs and Lead Counsel Adequately Represented the Class

The first factor of Rule 23(e)(2) is satisfied because Plaintiffs and Lead Counsel adequately represented the Class.  The Settlement is the product of a thorough factual investigation and effective litigation and negotiation strategy, bolstered by an extensive analysis of damages and an understanding of the strengths and weaknesses of the claims.  Rothman Decl., ¶¶5, 6, 8, 11.  Lead Counsel conducted an extensive factual investigation and analysis that involved Lead Counsel analyzing documents filed with the SEC, two orders issued by the SEC concerning the facts alleged herein, press releases, news articles, analyst research reports, and other public statements issued by or concerning Sealed Air.  Rothman Decl., ¶5.  Lead Counsel carefully evaluated this information and drafted the detailed, 157-paragraph CAC, successfully opposed Defendants' motions to dismiss, conducted a substantial amount of fact discovery, including substantial completion of document discovery, moved for class certification, served two merits-based expert reports, prepared detailed mediation statements, and was able to negotiate the all-cash, $12.5 million Settlement, a favorable resolution which fairly values the claims and provides an immediate benefit to Class Members.

Further, in actively overseeing and participating in this Litigation, each Plaintiff, working with Lead Counsel, made voluminous document productions, submitted affidavits in support of class certification, and prepared for and sat for a deposition.  Rothman Decl., ¶¶55, 56; ECF 84-5; 84-6; 84-7; 84-8.  Plaintiffs also retained highly-experienced and well-respected counsel, who not only zealously prosecuted the Litigation from investigation through negotiations, but who were able to secure a very favorable settlement.  *See id.*, ¶¶76, 77, 112.  This diligent and adequate representation of the Class supports final approval.  *See* Fed. R. Civ. P. 23(e)(2)(A).

4872-2367-9553.v2

**b.      The Settlement Resulted from Extensive Arm's-Length Negotiations**

The Settlement is also the result of extensive, arm's-length negotiations with no hint of collusion.  The parties engaged Mr. Murphy of Phillips ADR, an experienced securities class action mediator.  Rothman Decl., ¶¶69-72.  As the Stipulation confirms, Defendants are represented by experienced and respected law firms: Holwell Shuster & Goldberg LLP and Cooley LLP.  During this process, Plaintiffs further developed their understanding of the strengths and weaknesses of their case and extensively consulted their damages expert.  *Id.*, ¶¶5, 8, 68.

The arm's-length nature of this mediation process provides compelling evidence that the Settlement is not a product of collusion and gives rise to a strong presumption of fairness.  *See Wal-Mart*, 396 F.3d at 116; *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 2019 WL 13150344, at *2 (S.D.N.Y. Mar. 8, 2019), *aff'd as modified sub nom. N.J. Carpenters Health Fund v. NovaStar Mortg., Inc.*, 28 F.4th 357 (2d Cir. 2022) (participation in mediation is evidence of arm's-length negotiations).

**c.      The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delays of Trial and Appeal**

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* factors concern the substantive adequacy of the Settlement.  Rule 23(e)(2)(C)(i) advises district courts to consider "the costs, risks and delay of trial and appeal," while the relevant *Grinnell* factors overlap and address the risks of establishing liability and damages.

**(1)      The Risks of Establishing Liability at Trial**

Securities class actions present numerous hurdles for plaintiffs to meet and these risks weigh in favor of final settlement approval.  Indeed, courts in this district "'have long recognized that [securities] litigation is notably difficult and notoriously uncertain.'"  *In re FLAG Telecom Holdings,*

4872-2367-9553.v2

*Ltd. Sec. Litig.*, 2010 WL 4537550, at \*15 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at \*11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."). Although Plaintiffs and Lead Counsel believe that the claims asserted in the Action are meritorious, continued litigation posed substantial risks that made any recovery uncertain.

While Plaintiffs believe their claims would be borne out by the evidence, Defendants have articulated certain defenses throughout the pendency of the Action that they no doubt would have asserted, at summary judgment and/or at trial. Indeed, Sealed Air maintains that statements about E&Y's retention process and corporate procedure are not material or otherwise actionable. ECF 34 at 7-13, 23-25. Sealed Air also maintains that it lacked scienter because no facts tie its senior executives who made the challenged statements to the retention process. *Id.* at 16-17. Likewise, Sealed Air would likely argue on summary judgment and at trial that Plaintiffs cannot prove scienter because Defendant Stiehl's conduct was not disclosed to senior management at the time. Rothman Decl., ¶81. Further, Defendant Stiehl was poised to argue that he did not make the false statements regarding the retention of E&Y, and therefore these statements could not lead to liability. *Id.* If Defendants prevailed on any one of these grounds, the Class would recover nothing, let alone the certainty of the $12.5 million Settlement.

Moreover, to prove their case at trial, Plaintiffs would need to rely extensively on several expert witnesses for analysis of key issues. Each expert's testimony would be critical to demonstrating the validity of Plaintiffs' claims to the jury, as well as loss causation and damages, and the conclusions of each expert would be hotly contested at trial. Thus, Plaintiffs' case was particularly susceptible to a danger inherent in reliance on expert witness testimony, including that

- 10 -

the experts will be subject to a *Daubert* challenge.  If, for some reason, the Court determined that even one of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become much more difficult to prove.

### (2) The Risks of Establishing Damages at Trial

Plaintiffs also faced risks in establishing loss causation and damages at trial.  Defendants, for example, argued that loss causation could not be established in connection with the August 6, 2018 disclosure, when the Company announced receipt of the SEC subpoena, because their description of that subpoena did not contradict earlier assurances regarding the E&Y selection process.  Rothman Decl., ¶82.  Defendants likely would have also argued and presented expert opinions that Plaintiffs' damages methodology is inherently unreliable and does not account for disaggregation of losses caused by factors, unrelated to the claims asserted in the case.  Rothman Decl., ¶84.  Defendants further would have argued that damages, if any, are zero or, at best, significantly less than Plaintiffs had estimated.  *Id.*, ¶83.  As with contested liability issues, issues relating to loss causation and damages would have likely come down to an unpredictable and hotly disputed "battle of the experts."  *Id.*, ¶85.

### (3) The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The anticipated complexity, cost, and duration of the Litigation would be considerable.  *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"); *see also Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *6

4872-2367-9553.v2

(S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

If not for this Settlement, the Litigation would have continued to be vigorously contested. The parties would complete both fact and expert discovery and brief motions for summary judgment as well as prepare for a likely multi-week trial. Post-trial motions and appeals could last for years. A prolonged period of pretrial proceedings and a lengthy and uncertain trial and appeals process would inject additional risk to achieving a favorable recovery, which runs counter to the interests of the Class compared to the immediate monetary benefits of the Settlement.

Accordingly, the Rule 23(e)(2)(C)(i) factor and the first, fourth and fifth *Grinnell* factors weigh in favor of final approval of the Settlement.

### d.    The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Plaintiffs and Lead Counsel have taken customary steps to ensure that the Class is notified about the Settlement. More than 226,000 copies of the Notice and Proof of Claim were mailed and the Summary Notice was published. Murray Decl., ¶¶11-12. The claims process is similar to that commonly used in securities class action settlements, and provides for straightforward cash payments based on trading information provided. Although Class Members have until December 30, 2022 to object to the Settlement or request exclusion from the Class, no Class Members have thus far objected and only one Class Member has requested exclusion. *Id.*, ¶16.

### e.    Counsel's Fees Are Reasonable

Consistent with the Notice, and as discussed further below, Lead Counsel seeks an award of attorneys' fees in the amount of 25% of the Settlement Amount and expenses and charges in an amount of $455,832.33, plus interest on both amounts. Counsel's fee request is reasonable in light

- 12 -

4872-2367-9553.v2

of the efforts of Lead Counsel, fee awards in similar securities class actions in this District, the

contingent nature of its representation, and the risks of the litigation.  Moreover, since this is not a

"claims made" settlement, the entire Net Settlement Fund will be distributed to Class Members until

it is no longer economically feasible, so there is no risk that counsel will be paid but Class Members

will not.[5]

### f.    The Parties Have No Other Agreements Except for a Standard Supplemental Agreement

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement covered by Rule 23(e)(3),

which requires "a statement identifying any agreement made in connection with the proposal."  As

Plaintiffs disclosed when seeking preliminary approval, the parties have a standard supplemental

agreement which allows Sealed Air to terminate the Stipulation if Class Members with a certain

aggregate amount of Recognized Claims opt out of the Settlement.[6]

### g.    Class Members Are Treated Equitably

Finally, Rule 23(e)(2)(D) concerns whether class members are treated equitably.  The

Settlement is designed to do precisely that.  The Plan of Allocation treats Class Members equitably

relative to each other, based on the timing of their securities purchases, acquisitions and sales, and by

providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net

Settlement Fund based on their recognized losses.  In this way, all Class Members are situated and

treated similarly.

---

[5]    The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and an order awarding such fees and expenses.  *See Pelzer v. Vassalle*, 655 Fed. Appx. 352, 365 (6th Cir. 2016) (approving a similar provision finding that it "does not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

[6]    Upon request, Plaintiffs will provide a copy of the supplemental agreement to the Court for *in camera* review.

- 13 -

### 2.    The Settlement Satisfies the Remaining *Grinnell* Factors

### a.    The Lack of Objections to Date Supports Final Approval

The reaction of the Class to the Settlement is "perhaps the most significant" indicator of its adequacy. *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at \*7 (S.D.N.Y. Nov. 7, 2007). "A favorable reception by the class constitutes strong evidence of the fairness of a proposed settlement and supports judicial approval." *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at \*3 (S.D.N.Y. Aug. 6, 2010). To date, no Class Member has objected to the Settlement and only one has requested exclusion from the Class. *See* Murray Decl., ¶16. The positive reaction of the Class to date further supports approval of the Settlement.

### b.    Plaintiffs Had Sufficient Information to Resolve the Case

To support approval of a settlement, the parties must have been able to "intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). "To satisfy this factor," however, "formal or extensive discovery" is not required. *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*7 (S.D.N.Y. Dec. 19, 2014). Here, Plaintiffs had more than sufficient information to make an informed decision on the Settlement as the case settled at the tail-end of fact discovery. As discussed above (§III.C.1.a.), Lead Counsel conducted an extensive investigation, filed a detailed CAC, overcame Defendants' motions to dismiss, conducted significant fact discovery, litigated several discovery disputes with Defendants, filed a motion to certify the Class, consulted with experts, served two expert reports, and drafted opening and reply mediation statements. Rothman Decl., ¶108. Mr. Murphy also provided a candid, meaningful assessment of the strengths and weaknesses of the claims and defenses

4872-2367-9553.v2

throughout the mediation and negotiation process. *Id.*, ¶¶69-72. Thus, Plaintiffs and Lead Counsel were "knowledgeable with respect to possible outcomes and risks" and well-equipped "to recommend the Settlement." *See Advanced Battery*, 298 F.R.D. at 177.

### c. Maintaining Class Action Status Through Trial Presents Substantial Risk

While Plaintiffs believe they would have prevailed on their motion to certify the Class, Defendants were poised to vigorously litigate that issue. Even if they lost, Defendants may have filed a Rule 23(f) petition or moved to decertify the Class or shorten the Class Period, presenting additional risk to a favorable outcome for the Class. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992); *see also* Fed. R. Civ. P. 23(c) (authorizing decertification at any time).

### d. Defendants' Ability to Withstand a Greater Judgment

A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011). Indeed, even if Defendants could satisfy – and Plaintiffs could enforce – a larger judgment, all other factors support final approval.

### e. The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The last two *Grinnell* factors are also satisfied here. The adequacy of the settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). For this reason, a settlement need only fall within a "range of reasonableness" which "recognizes the

4872-2367-9553.v2

uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the $12.5 million Settlement is a substantial result for the Class. As explained previously (ECF 99 at 16-17), Plaintiffs estimate reasonably recoverable damages of approximately $147.2 million, but it could be less depending on various scenarios. For instance, Defendants maintained that even if liability could be established, Plaintiffs suffered no damages. In fact, Defendants claimed investors actually benefitted from any alleged bid-rigging because it resulted in a lower bid from EY, which saved the Company money. Rothman Decl., ¶83. Thus, the Settlement represents a recovery of at least 8.5% and perhaps much more, if Defendants' arguments were ultimately accepted. This percentage far exceeds the median recovery of 1.8% in securities class actions settled in 2021. Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2022) ("NERA Study"), Fig. 22 at 24.

This is a particularly good result given the unique legal and factual issues involved here. In these circumstances, offering relief to the Class now, rather than a speculative payment possibly years later, undoubtedly favors the Class. *See AOL Time Warner*, 2006 WL 903236, at *13 (noting "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

## IV.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approving a Plan of Allocation is the same as for approving the Settlement as a whole: "it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced class counsel," a plan of allocation "need have only a reasonable, rational basis." *Advanced Battery*, 298 F.R.D. at 180. Here, the Plan (set forth in the Notice) was prepared with the assistance of Plaintiffs' damages expert

4872-2367-9553.v2

and is based on the same methodology underlying Plaintiffs' damages, *i.e.*, the amount of artificial inflation in the price of Sealed Air common stock during the Class Period due to the alleged misstatements and omissions.  It is a fair means to apportion the Net Settlement Fund among Authorized Claimants based on, and consistent with, the claims alleged.  *See* Rothman Decl., ¶¶98, 101.

The Net Settlement Fund will be distributed to Authorized Claimants, *i.e.*, Class Members who submit timely and valid Proofs of Claim that are approved for payment from the Net Settlement Fund.  The Plan treats all Class Members, including Plaintiffs, in a similar manner: everyone who does not request exclusion and whose submission is valid and timely will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants (so long as payment is $10 or more, as is customary).  Accordingly, the Plan is fair and reasonable – a conclusion supported by the complete absence of objections to date.  *See Veeco*, 2007 WL 4115809, at *7.

## V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In the Preliminary Approval Order, the Court found that Plaintiffs had met the requirements to certify the Class under Rules 23(a) and 23(b)(3) and preliminarily certified the following Class for settlement purposes:

> [A]ll persons and entities who purchased or otherwise acquired Sealed Air common stock from November 17, 2014 to June 20, 2019, inclusive, and were damaged thereby.  Excluded from the Class are Defendants and their immediate families, Sealed Air's officers and directors at all relevant times, as well as their immediate families, Defendants' legal representatives, heirs, successors or assigns and any entity in which any Defendant has a controlling interest.  Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the requirements described below and in the Notice of Pendency and Proposed Settlement of Class Action ("Notice") to be sent to Class Members pursuant to this Order.

- 17 -

4872-2367-9553.v2

ECF 102, ¶¶2-3.  In addition, the Court preliminarily certified Plaintiffs as Class representatives and Lead Counsel as Class counsel.  *Id.*, ¶5.  Since entry of the Preliminary Approval Order, nothing has occurred that would alter the reasonableness of those rulings.  Thus, for all the reasons stated in the preliminary approval brief (incorporated herein by reference), Plaintiffs respectfully request that the Court affirm its preliminary certification, finally certify the Class under Rules 23(a) and 23(b)(3) for purposes of effectuating the Settlement, appoint Plaintiffs as Class representatives, and designate Lead Counsel as Class counsel.

## VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

At the preliminary approval stage, Plaintiffs established that the Notice comports with Rule 23 and settled law.  Specifically, Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" (Fed. R. Civ. P. 23(c)(2)(B)), and that it be directed to class members in a "reasonable manner."  Fed. R. Civ. P. 23(e)(1)(B).  "Notice need not be perfect" or received by every class member, but must instead be reasonable under the circumstances.  *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder."  *Id*.

The Notice and the means used to disseminate it to potential Class Members readily satisfy these standards.  The Notice apprises Class Members of all of the information they would need to decide whether to participate in the Settlement.  It describes: (1) the Litigation and the Class's claims; (2) the terms of the Settlement; (3) the proposed Plan; (4) the right to request exclusion from the Class or object to any aspect of the Settlement, the Plan, or the requested awards, and the procedure by which to do so; (5) the scope of the release and binding effect of a judgment; (6) Lead

- 18 -

4872-2367-9553.v2

Counsel's application for an award of attorneys' fees and expenses and Plaintiffs' requested awards; and (7) the date, time, and place of the Settlement Hearing. *See* Murray Decl., Ex. A (Notice). The Notice also directs Class Members to the Claims Administrator, Lead Counsel, and the Settlement website for further information. And the Notice contains the information required by the PSLRA. *See* 15 U.S.C. §78u-4(a)(7).

In accordance with the Preliminary Approval Order, Gilardi, as the Claims Administrator, commenced mailing the Notice and Proof of Claim by first-class mail to potential Class Members, brokers, and nominees on September 28, 2022. Murray Decl., ¶¶5-11. Gilardi also published the Summary Notice in *The Wall Street Journal* and transmitted it over *Business Wire* on October 5, 2022. *Id.*, ¶12. Additionally, Gilardi posted the Notice and other Settlement-related materials, including the Stipulation, on the Settlement website, which also allows for the electronic submission of claims. *Id.*, ¶14. These methods of notice are common in securities class actions. *See, e.g.*, *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *16 (S.D.N.Y. Oct. 16, 2019) (approving similar means of disseminating notice).

## VII.    AWARD OF ATTORNEYS' FEES

### A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund Achieved in the Settlement

The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Goldberger*, 209 F.3d at 47. Such awards are important and serve a salutary purpose because they "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons" and "discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10-*11 (S.D.N.Y. May 9, 2014).

4872-2367-9553.v2

### B.    The Court Should Award a Reasonable Percentage of the Common Fund

The Supreme Court has indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (noting "a reasonable fee is based on a percentage of the fund bestowed on the class").  The Second Circuit has approved the percentage method, recognizing that the lodestar method, although acceptable, "proved vexing" and resulted in "an inevitable waste of judicial resources."  *Goldberger*, 209 F.3d at 48-50; *see also Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (noting the percentage method "has been deemed a solution to certain problems that may arise when the lodestar method is used").  In fact, the Second Circuit has acknowledged that the "trend in this Circuit is toward the percentage method."  *Wal-Mart*, 396 F.3d at 121; *accord In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010).

Importantly, all Courts of Appeal to consider the matter have approved use of the percentage method.[7]  The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. §78u-4(a)(6).  Several courts have concluded that Congress, in using this language, expressed a preference for the percentage method when determining attorneys'

---

[7]    *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305-07 (1st Cir. 1995); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).  The Eleventh and District of Columbia Circuits have required the use of the percentage method in common fund cases.  *See Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

4872-2367-9553.v2

fees in securities class actions. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008); *WorldCom*, 388 F. Supp. 2d at 355.

**C.     The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285-86 (1989). If this were a non-class action, the customary fee arrangement would be contingent and in the range of one-third of the recovery. *See Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

The requested 25% fee is well below the range of percentage fees awarded by other courts in this Circuit in recent comparable securities cases. *See, e.g.*, *Erlandson v. Triterras, Inc., et al.*, No. 7:20-cv-10795-CS, ECF 82 at 1 (¶4) (S.D.N.Y. Sept. 8, 2022) (awarding one-third of $9 million settlement); *Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No. 1:18-cv-09848-PGG, ECF 130 at 1 (¶4) (S.D.N.Y. May 12, 2022) (awarding one-third of $7.5 million settlement); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million settlement); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *16-*17 (E.D.N.Y. Jan. 21, 2022) (noting a one-third fee "constitutes a proportion routinely approved as reasonable"); *Machniewicz v. Uxin Ltd.*, 2021 WL 9409860, at *4 (E.D.N.Y. Sept. 8, 2021) (awarding 33.33% of settlement).

**D.     The Relevant Factors Confirm that the Requested Fee Is Reasonable**

When considering whether a request for attorneys' fees in a common-fund or lodestar case is reasonable, a court will consider the following *Goldberger* factors:

- 21 -

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.  These factors also support approval of the requested fee.

### 1.     The Time and Labor Expended by Counsel

Lead Counsel has expended substantial time and effort pursuing the Litigation on behalf of the Class for over three years without receiving any compensation.  Robbins Geller conducted a considerable pre-filing investigation, as well as considerable work during the Litigation, including: (i) analyzing a massive amount of information, including Sealed Air SEC filings, conference call transcripts, analyst reports, and materials generated in connection with governmental investigations, and thoroughly researching the law pertinent to the claims and defenses asserted; (ii) drafting the CAC; (iii) opposing Defendants' motions to dismiss; (iv) moving for class certification; (v) litigating several discovery disputes with counsel for Defendants; (vi) substantially completing document discovery from Defendants and third parties; (vii) reviewing deposition transcripts from key witnesses; (viii) consulting with internal and external experts; (ix) drafting opening and reply mediation statements; (x) serving three expert reports upon Defendants; and (xi) preparing for and participating in a full-day mediation session, as well as subsequent negotiations.  *See* Rothman Decl., ¶107.  It will no doubt expend additional time and resources assisting Class Members with claims, responding to Class Member inquiries, and monitoring the Claims Administrator and claims process. *See Aponte v. Comprehensive Health Mgmt.*, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013). Lead Counsel's substantial work in securing the $12.5 million Settlement, coupled with its continuing commitment, supports the reasonableness of the requested fee.

4872-2367-9553.v2

### 2.      The Magnitude and Complexity of the Litigation

Securities actions are "'notably difficult and notoriously uncertain.'" *FLAG Telecom*, 2010 WL 4537550, at *27 (quoting *Sumitomo*, 189 F.R.D. at 281).  This Litigation was no exception.  It raised complex and novel legal issues under §§10(b) and 20(a) of the Exchange Act, as well as unique factual issues surrounding Sealed Air's auditor retention process, which issues magnified the difficulty of proving liability.  Indeed, Plaintiffs faced challenges in overcoming Defendants' motions to dismiss which raised complex and challenging arguments regarding materiality, scienter, and loss causation, issues which were sure to be presented again on summary judgment and at trial. The magnitude (damages were up to $147 million) and complexity of this Litigation support the fairness and reasonableness of the requested fee.

### 3.      The Risks of the Litigation Support the Requested Fee

The risk undertaken in an action is often considered the most important *Goldberger* factor. *See, e.g.*, *Comverse*, 2010 WL 2653354, at *5; *Telik*, 576 F. Supp. 2d at 592.  The risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Grinnell*, 495 F.2d at 470.  When considering the reasonableness of attorneys' fees in a contingency action, the Court should consider the risks of the litigation at the time the suit was brought.  *See Goldberger*, 209 F.3d at 54-55; *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 276 (E.D.N.Y. 2009) (the court should consider "the contingent nature of the expected compensation" and the "risk of non-payment viewed as of the time of the filing of the suit").

- 23 -

Unlike counsel for Defendants, who are paid an hourly rate and paid for their expenses on a regular basis, Lead Counsel undertook this case on a contingent basis, knowing that the Litigation could last for years and would require substantial attorney time and significant expenses with no guarantee of compensation. Rothman Decl., ¶114. Although the case was brought to a successful conclusion, this was far from guaranteed at the outset. This Litigation was a particularly challenging and risky proposition in light of Defendants' materiality and scienter arguments. As just discussed in the previous section, securities actions are "notoriously uncertain" and this was particularly true here, as there was no way to know whether Lead Counsel would be able to prove each of the elements under §10(b) at trial.

"There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at \*6 (S.D.N.Y. Nov. 7, 2007). Securities cases have been dismissed at the pleading stage, dismissed on summary judgment, lost at trial, and even reversed after plaintiffs prevailed at trial, as the law is complex and continually evolving. *See, e.g.*, *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at \*1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants after lengthy trial); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (claims based on purchases on foreign exchanges eliminated by the "new 'transactional' rule" enunciated by the Supreme Court).[8] Quite simply, "Defendants prevail outright in many securities suits." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).

---

[8] In fact, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversal of jury verdict of $81 million).

4872-2367-9553.v2

Lead Counsel's assumption of a contingency-fee risk in this case strongly supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 4. The Quality of Representation and Public Policy Support the Requested Fee

Lead Counsel litigated this case efficiently and diligently, beginning with its research and investigation of the facts to support a pleading that could withstand a motion to dismiss, to obtain an exceptional result for the Class. Indeed, the quality of Lead Counsel's representation is best evidenced by the result achieved. The Settlement represents a recovery that is multiples above the median 1.8% percentage recovery in securities class actions settled in 2021. NERA Study, Fig. 22 at 24. Here, Lead Counsel demonstrated a great deal of effectiveness in achieving a settlement at this level, at this juncture, in this particular case.

The result is all the more impressive in light of the quality of defense counsel. *See Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further provides the caliber of representation that was necessary to achieve the Settlement."). Here, defense counsel are two large law firms with securities litigation experience. They did not and would not settle without serious deliberation.

Finally, strong public policy favors rewarding firms for bringing successful securities actions. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (noting a fee award was "appropriate, and not excessive, to encourage further securities class actions"); *FLAG Telecom*, 2010 WL 4537550, at *29 (recognizing that if the "important public

- 25 -

policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

### 5. Plaintiffs' Approval and the Class's Reaction to Date Support the Requested Fee

Plaintiffs were actively involved in prosecuting and resolving this Litigation and approve the requested fee and expense award, which they understand is contingent on this Court's approval. *See* Nanno Decl., ¶6; Heimroth Decl., ¶6; Ostrander Decl., ¶6. Additionally, the Notice advised Class Members that counsel would apply to the Court for an award of attorneys' fees in an amount up to 27% of the Settlement Fund, as discussed above, the reaction of the Class to date supports the Settlement as no Class Member has objected to that amount, much less the requested fee award of 25% or, for that matter, any aspect of the Settlement. These factors further support the reasonableness of the fee request.

## VIII. COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION

Lead Counsel also respectfully requests an award of $455,832.33 in expenses and charges related to this Litigation, plus interest at the same rate as that earned by the Settlement Fund. Lead Counsel was aware that it might not recover any of these expenses unless the case was successfully resolved. It therefore took steps to minimize expenses where it could while still vigorously litigating the Action. Rothman Decl., ¶117. Lead Counsel has carefully detailed these expenses, which are properly recovered by counsel. *See id.*, ¶¶116-120; *see, e.g.*, *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (noting counsel is compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation"); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is

- 26 -

well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

These expenses reflect routine and typical expenditures in securities cases and cover, for example, expert and mediation fees and were necessarily incurred, and are of a type routinely charged to clients billed by the hour.

These expenses were approved by Plaintiffs,[9] and no other Class Member has objected to them to date.  Each of these expenses is reasonable and therefore should be approved.

## IX. PLAINTIFFS SHOULD RECEIVE A REASONABLE AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4)

Plaintiffs Local 13 Funds, Local 267 Fund, and Local 7 Funds seek awards of $3,150, $4,800 and $4,800, respectively, for their efforts in representing the Class.  The PSLRA provides an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of the class."  15 U.S.C. §78u-4(a)(4).  This type of an award "provide[s] an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *22 (S.D.N.Y. July 21, 2020).

As their declarations demonstrate, Plaintiffs dedicated significant time and attention to this Litigation by reviewing drafts and final versions of case-related documents before and after filing (as necessary), reviewing case updates, interfacing with counsel, providing relevant information during the discovery process, including having their depositions taken and otherwise consulting on the Litigation, and supervising the mediation process and negotiations leading to the Settlement.  *See* Nanno Decl., ¶¶3-4; Heimroth Decl., ¶¶3-4; Ostrander Decl., ¶¶3-4.  In short, Plaintiffs' involvement

---

[9]  *See* Nanno Decl., ¶6; Heimroth Decl., ¶6; Ostrander Decl., ¶6.

4872-2367-9553.v2

on behalf of the Class advanced the Litigation.  The requested award to each Plaintiff would satisfy the sound policy of incentivizing investors to assist in meritorious securities class actions.  Notably, Class Members received notice of these requested awards and, to date, no objections have been received.

Many courts have approved awards well above this level.  *See, e.g.*, *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *2 (S.D.N.Y. June 11, 2020) (awarding total of $20,000 to two plaintiffs); *Christine Asia*, 2019 WL 5257534, at *1 (approving $12,500 to each of five plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding $15,900 for time spent supervising litigation and characterizing such awards as "routine"); *see also In re Intercloud Systems, Inc. Sec. Litig.*, No. 3:14-cv-01982-PGS-DEA, ECF 135 at 4 (¶8) (D.N.J. Dec. 5, 2017) (awarding $15,400).  The modest awards requested are equally appropriate here.

## X.    CONCLUSION

Based on the foregoing and the entire record, Plaintiffs and Lead Counsel respectfully request that the Court approve: (1) the Settlement and Plan of Allocation; (2) Lead Counsel's request for an award of attorneys' fees of 25% of the Settlement Amount and $455,832.33 in litigation expenses and charges; and (3) awards of $3,150, $4,800 and $4,800 to Plaintiffs.

DATED:  December 16, 2022            Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
MARK T. MILLKEY
ROBERT D. GERSON
MAGDALENE ECONOMOU

*/s/ Robert M. Rothman*
ROBERT M. ROTHMAN

- 28 -

4872-2367-9553.v2

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
rrothman@rgrdlaw.com
mmillkey@rgrdlaw.com
rgerson@rgrdlaw.com
meconomou@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

ASHERKELLY
MICHAEL J. ASHER
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
248/747-2809 (fax)
masher@asherkellylaw.com

BLITMAN & KING LLP
DANIEL R. BRICE
4443 North Franklin Street
Syracuse, NY  13204-5412
Telephone:  315/422-7111
315/471-2623 (fax)
dbrice@bklawyers.com

Additional Counsel for Lead Plaintiffs

- 29 -

4872-2367-9553.v2

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 16, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Robert M. Rothman*
ROBERT M. ROTHMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
Email: rrothman@rgrdlaw.com
